IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

SAN ANTONIO DIVISION

| | |
|---|---|
| LOGAN PAUL,<br><br>        *Plaintiff*,<br>v.<br><br>STEPHEN FINDEISEN AND COFFEE BREAK PRODUCTIONS LLC D/B/A COFFEEZILLA,<br><br>        *Defendants*. | Civil Action No. 5:24-cv-00717 |

**MOTION TO COMPEL PRODUCTION OF COMMUNICATIONS RELEVANT TO DEFENDANTS' ACTUAL MALICE**

Plaintiff Logan Paul moves this Court to compel Defendants to produce all communications between Paul and others, regarding Paul's involvement with the CryptoZoo project, that Defendants possessed when they published the libels at issue in this case.

**BACKGROUND**

Paul filed this libel action after Defendants repeatedly accused him of perpetrating a financial scam in connection with a troubled blockchain project called CryptoZoo. (Compl. at 1 (Dkt. 1).) In YouTube videos and Twitter posts, Defendants charged that Paul had scammed and swindled his own fans in connection with the project. In actuality, and as Defendants knew, Paul had been enthusiastic and deeply committed to the project's success. (*Id.* ¶¶ 2, 8, 56, 57, 100, 141, 155.) Although the venture was ultimately unsuccessful—due largely to incompetence and worse by those that Paul entrusted with the project's technical aspects—Paul never made a dime from it. (*Id.* ¶¶ 56, 150.) In fact, he lost hundreds of thousands of dollars that he invested in it, and over a million dollars more when he voluntarily chose to commit his personal funds to a "buyback" program to make whole the purchasers of CryptoZoo NFTs. (*Id.* ¶¶ 56, 150.)

1

Because Paul is a public figure, to prevail in this action, he must show that Defendants published their false charges with actual malice—that is, with a high degree of awareness of their probable falsity. *See Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989). Paul's Complaint alleges that Defendants were aware of Paul's true intentions and actions with respect to CryptoZoo, but that they nevertheless chose to repeatedly label him as a scammer in order to profit off his celebrity; that contemporaneous communications between Paul and others involved in the CryptoZoo project conclusively show the venture was legitimate and not conceived of as a scam, and that Paul in particular acted in good faith; and that Defendants indisputably possessed at least *some* of those contemporaneous communications, because parts of them were excerpted and referenced in Defendants' YouTube videos—albeit often divorced of crucial context. (Dkt. 1 ¶¶ 7-8, 77, 84, 88, 98-120; *see also* Phillips Decl. ¶ 5, Ex. 3.) Paul, however, has no way of knowing precisely which of those communications Defendants possessed at the time of publication or, with respect to the ones they did have, whether they possessed the entire communication or only snippets of it. Only Defendants can answer that question. The answer is crucial to Paul's ability to make the required showing of actual malice in this case, since actual malice depends on the publisher's subjective knowledge at the time defamatory material was published.

Paul has repeatedly asked Defendants to produce whatever communications they possessed—at the time they published their libelous statements—between Paul and others regarding his involvement with the CryptoZoo project (collectively the "Subject Communications"). On August 29, 2024, for instance, he served Defendants with a set of requests for production ("RFPs"), the first of which asked for "[a]ll documents and communications relating to Mr. Paul," and the second of which asked for "[a]ll documents and communications

2

relating to CryptoZoo and [their] investigation into CryptoZoo." (Phillips Decl. ¶ 2, Ex. 1 at 1-2.) Defendants declined to produce responsive communications, asserting Texas's journalist's privilege and the First Amendment reporter's privilege. (*Id.*) Paul's counsel conferred with Defendants' counsel via emails and conference calls to negotiate production of communications involving Paul. (*See* Decl. of A. Phillips ¶¶ 3, 4.) Defendants have declined to produce the Subject Communications on the basis of a qualified journalist privilege.

## **LEGAL STANDARD**

A party seeking discovery "bears the initial burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence." *Camoco, LLC v. Leyva*, 333 F.R.D. 603, 606 (W.D. Tex. 2019). If the party seeking discovery "establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the discovery… should not be permitted." *Id.*

## **ARGUMENT**

Actual malice is a central and contested issue in this action. (*See* Answer at 1 [Dkt. 9].) And because the defamatory statements at issue in this case all involve variations on the factual assertion that Paul conceived of and operated CryptoZoo as a "scam," proof of actual malice necessarily depends on what Defendants knew about Paul's intentions and actions with respect to his involvement in CryptoZoo—and when they knew it. The best evidence of such is Paul's contemporaneous communications detailing his involvement in the project, and Paul's Complaint *alleges* that Defendants possessed many such communications belying their published accusations. But to ultimately *prove* his allegation, Paul must know exactly which CryptoZoo-related communications Defendants possessed at the time of publication. He has no way to obtain that information other than from Defendants. Because understanding the full universe of

contemporaneous Paul communications that Defendants possessed is plainly relevant in this case, Defendants must produce them absent a valid reason for objecting to their production.

As to these Subject Communications, Defendants' asserted objections lack merit. Defendants' invocation of Texas's qualified journalistic privilege is unavailing because Paul satisfies the statutorily specified conditions for overcoming that privilege. And Defendants' invocation of a First Amendment privilege to refuse to disclose confidential informants' identities also fails, both because Paul is not (at this time) insisting that Defendants disclose the identity of whoever provided Defendants with particular communications, and because Paul satisfies the criteria for overcoming any qualified First Amendment privilege that might otherwise apply.

**A.    The Subject Communications Bear Directly on the Issue of Actual Malice.**

Paul's burden here is to show that the Subject Communications bear on, or reasonably could lead to other matter bearing on, an issue that is or may be in this case. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Paul can carry that burden, since the Subject Communications bear directly on the actual malice element of his libel claims.

As a public figure, Paul can only prevail in this action by proving that Defendants published their libels with actual malice. *Block v. Tanenhaus*, 867 F.3d 585, 592 (5th Cir. 2017). The actual malice inquiry focuses on the publisher's subjective state of mind at the time of publication, not the publication's objective truth. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 334 n.6 (1974). So, what matters in this case is what Defendants subjectively understood about Paul's intentions and actions with respect to the CryptoZoo project at the time Defendants published their libels.

Because libel defendants "are prone to assert their good-faith belief in the truth of their publications," *Herbert v. Lando*, 441 U.S. 153, 170 (1979), the law authorizes libel plaintiffs "to prove the defendant's state of mind through circumstantial evidence." *Harte-Hanks Commc'ns*, 491 U.S. at 668. That can include evidence showing that, when the libel was published, the

defendant possessed or knew of information contradicting it. If, for instance, the Subject Communications contain information squarely contradicting Defendants' libels about Paul, or it appears Defendants selectively omitted certain communications from their YouTube videos for the purpose of casting Paul in a defamatory light, that would be strong circumstantial evidence of actual malice. *See Brown v. Petrolite Corp.*, 965 F.2d 38, 47 (5th Cir. 1992); *Zerangue v. TSP Newspapers, Inc.*, 814 F.2d 1066, 1070 (5th Cir. 1987); *Golden Bear Distrib. Sys. of Tex., Inc. v. Chase Revel, Inc.*, 708 F.2d 944, 950 (5th Cir. 1983); *Huckabee v. Time Warner Ent. Co.*, 19 S.W.3d 413, 426 (Tex. 2000); *Palin v. N.Y. Times Co.*, 940 F.3d 804, 814-15 (2d Cir. 2019); *Lemelson v. Bloomberg, L.P.*, 903 F.3d 19, 25 (1st Cir. 2018). For that reason, the Subject Communications are highly relevant to a core disputed issue in this litigation.

**B.      Defendants' Reasons for Withholding the Subject Communications Lack Merit.**

Because Paul can readily carry his burden of showing that the Subject Communications are relevant to this action, Defendants must produce them unless they can articulate a valid objection to doing so. None of the objections Defendants rely upon qualifies.

First, Defendants have objected to production on the ground that Texas's journalist's privilege, codified at Tex. Civ. Prac. & Rem. Code. Ann. § 22.023, permits them to withhold the Subject Communications. But § 22.024 of Texas's Civil Practice and Remedies Code states that the *qualified* journalist's privilege recognized in § 22.023 yields where six statutorily established criteria are satisfied. Because all six of those criteria are satisfied here, Texas's journalist's privilege does not authorize Defendants to withhold the Subject Communications.

Second, Defendants have objected to producing the Subject Communications on the ground that the First Amendment creates a privilege that sometimes protects reporters from having to divulge their confidential sources' identities. But Paul is not asking that Defendants divulge the identities of whoever shared the Subject Communications, so, on its face, the First-Amendment

5

privilege does not apply here. And even if Paul were seeking the identities of Defendants' sources, the same Fifth Circuit decision Defendants cite to show the existence of the First-Amendment privilege also shows that the privilege must yield in cases like this one, where the plaintiff has a compelling need for the requested information, the defendant is the only one who can provide it, and the plaintiff has supplied evidence that the defendant's alleged libels were false.

### 1. Texas's journalist's privilege does not shield Defendants from producing the Subject Communications.

Defendants have asserted that Texas's journalist's privilege—codified at Tex. Civ. Prac. & Rem. Code. Ann. § 22.023—authorizes them to withhold the Subject Communications. They are wrong. Section 22.023 creates only a qualified privilege, one carefully delimited to preserve public-figure plaintiffs' ability to pursue libel claims. *See Abraham v. Greer*, 509 S.W.3d 609, 616 (Tex. App.—Amarillo 2016, pet. denied). In particular, Section 22.024 of the Texas Civil Practices and Remedies Code sets six criteria which, if satisfied, overcome the journalist privilege. With respect to the Subject Communications, Paul can readily satisfy each of the six criteria.

*Paul has exhausted all reasonable efforts to obtain the information from alternative sources.* Only Defendants know which communications between Paul and CryptoZoo team members they had seen when they published their libels. No one else could know that. Assuming various communications were provided by sources, no single source would know the full universe of communications Defendants possessed, and in any event, Defendants have refused to identify their sources, stymieing Paul's ability to learn what Defendants knew via third-party discovery.

*Paul's request for the Subject Communications is not overbroad, unreasonable, or oppressive, and is limited to information bearing directly on the circumstances surrounding the accuracy of Defendants' statements.* The Subject Communications are not just relevant to actual malice; they are among the most straightforward ways of proving that element of Paul's claim.

Without them, it will be practically impossible for Paul to discern whether Defendants were on notice of the falsity of their libels. Given the Subject Communications' importance to an element of this action, asking Defendants to produce them—is not overbroad, unreasonable, or oppressive. Generally, for example, a request is "oppressive" if it "involve[s] an abuse of power that harms the rights or interests of another person or persons and disserves the purpose for which the power is authorized." *Ritchie v. Rupe*, 443 S.W.3d 856, 866-67 (Tex. 2014). Compelling production of the Subject Communications, by contrast, directly serves "[t]he whole purpose of discovery," which "is to allow the parties to obtain the fullest knowledge of issues and facts prior to trial." *Gutierrez v. Dallas Indep. Sch. Dist.*, 729 S.W.2d 691, 693 (Tex. 1987).

***Paul gave Defendants reasonable and timely notice of his demand for the Subject Communications.*** Paul has repeatedly asked Defendants to produce the Subject Communications—in RFPs sent August 29, 2024; in emails sent on December 10, 2024 and December 19, 2024; and in conference calls with Defendants on December 4 and December 18, 2024. (Phillips Decl. ¶¶2-4, Ex. 1 at 2 (Requests Nos. 1 and 2) & Ex. 2.) Defendants have throughout maintained their refusal to produce the Subject Communications.

***Paul's interest in obtaining the Subject Communications outweighs any interest in Defendants' being allowed to withhold them.*** Paul's interest in obtaining the Subject Communications is considerable, since "[t]o the extent that the disclosure [of the purported source for a defendant's libels] might illuminate the defendant's state of mind, it goes to the heart of the plaintiff's case, and it is evidence that is not likely to be available elsewhere." Marc A. Franklin et al., *Mass Media Law* 659 (6th ed. 2000). Proving actual malice can be difficult, and the Subject Communications are among the strongest pieces of evidence available to Paul for that purpose. They are also uniquely within Defendants' power to produce.

Defendants' interest in withholding the Subject Communications, by contrast, is negligible. While the public and journalists have a generalized interest in gathering news free of unreasonable burdens, courts routinely hold that interest is outweighed by citizens' general obligation to provide information pursuant to routine legal processes. *E.g.*, *Branzburg v. Hayes*, 408 U.S. 665, 686 (1972); *Miller v. Transamerican Press, Inc.*, 621 F.2d 721, 726-27, *supplemented on denial of reh'g*, 628 F.2d 932 (5th Cir. 1980). And Defendants' generalized interest is less compelling here because: (1) they already selectively disclosed excerpts of the Subject Communications in their YouTube videos, making it hard to credit claims that those communications are inherently too sensitive to share; and (2) this motion relates solely to communications to which Paul was a party, meaning none of them are confidential as to Paul.

***Paul is not seeking peripheral, nonessential, or speculative information.*** As explained above, the Subject Communications are central to Paul's case because they go squarely to an element of his claim. Without them, it will be impossible to fully understand what Defendants knew, when publishing their libels, about Paul's intentions regarding the CryptoZoo project.

***The Subject Communications are vital to proving actual malice.*** As explained above, the Subject Communications go directly to actual malice, which is an element of Paul's libel claims. Without them, his ability to prove actual malice in this case will be severely diminished.

Because Paul's request satisfies all six criteria in Section 22.024, Texas's journalist's privilege does not shield Defendants from producing the Subject Communications.

### 2. The First Amendment does not authorize Defendants to withhold highly relevant documents that no one else can produce.

Defendants have also asserted a First Amendment right to withhold the Subject Communications. They are again mistaken. In cases like this one, the First Amendment does not give self-identified journalists a special right to opt out of ordinary discovery processes.

8

Defendants point to *Miller v. Transamerican Press, Inc.*, as proof that they have a First Amendment right to withhold the Subject Communications. But *Miller* is an odd case for Defendants to rely on. For one thing, the First Amendment right at issue there was the right to avoid disclosing a confidential source's identity, not a privilege against discovery of material that had informed a journalist's thought processes or mental impressions. As the *Miller* panel observed, compelled disclosure of a confidential source's identity could "deter informants from giving their stories to newsmen," a burden on newsgathering warranting at least a qualified measure of First Amendment protection. 621 F.2d at 725. In contrast, merely "requiring disclosure of journalists' thought processes would have no chilling effect on the editorial process; the only effect would be to deter recklessness." *Id.* That is precisely what the United States Supreme Court had decided in *Herbert v. Lando*, where it "held that the press had no First Amendment privilege against discovery of mental processes where the discovery was for the purpose of determining whether malice existed." *Id.* (summarizing *Herbert*).

Here, Paul is not asking for the identity of a confidential source; he is asking Defendants to produce evidence of their thought processes and mental impressions—evidence already excerpted in their YouTube videos. The privilege Defendants have invoked in refusing to produce that evidence is thus not the one recognized in *Miller*, but rather the one rejected in *Herbert* and distinguished in *Miller*. In short, *Miller* itself makes clear that the First Amendment does not give Defendants the right to withhold documentary evidence bearing directly on actual malice.

Another reason *Miller* is an odd case for Defendants to rely on is that the Fifth Circuit there affirmed the district court's order compelling disclosure of information the defendants asserted they could withhold under a First Amendment privilege. As the *Miller* court explained, "the privilege is not absolute and in a libel case as is here presented, the privilege must yield." *Id.* at

725. Under the test set out in *Miller*—which the plaintiff there easily satisfied—the privilege is overcome whenever a libel plaintiff shows that: (1) the challenged statement was published, factually untrue, and defamatory; (2) he made reasonable efforts to discover the information from other sources, but no such source is available; and (3) knowing the informant's identity is necessary to the proper preparation and presentation of the case. 628 F.2d at 932 (mem. op.).

Even if that test properly applied in a case where the plaintiff is not seeking an informant's identity, Paul could satisfy it. He has met the first requirement by averring in his complaint—here and also in a separate proceeding (*see* Dkt. 1 ¶ 141)—that he had a good-faith and sincere belief in the CryptoZoo project and did not undertake it with the aim of defrauding or scamming anyone. (*See id.* ¶¶ 2, 8, 56, 57, 100, 141, 155.) He has met the second *Miller* requirement because no one besides Defendants can disclose which of his CryptoZoo-related communications Defendants themselves had seen or heard about when they published their libels. Thus, there is no "alternative source" from which Paul might obtain the Subject Communications. And he has met the third *Miller* requirement by showing that the Subject Communications are vital to the proper preparation and presentation of the case. As explained above, Paul will almost certainly have to prove actual malice with circumstantial evidence. And the strongest circumstantial evidence available to him is evidence—most notably the Subject Communications—showing what Defendants understood, when they published their libels, about his expectations regarding the CryptoZoo project. Without that, Paul's ability to prove actual malice is severely hamstrung.

For all those reasons, the First Amendment right recognized in *Miller* does not authorize Defendants to withhold the Subject Communications.

## **CONCLUSION**

This Court should compel Defendants to promptly produce the Subject Communications.

| | |
|---|---|
| January 17, 2025 | */s/ Ricardo G. Cedillo* |

                                Ricardo G. Cedillo (Additional Counsel)
Texas State Bar No. 04043600
DAVIS, CEDILLO & MENDOZA, INC.
755 E. Mulberry Ave, Ste. 250
San Antonio, TX 78212
Telephone: (210) 822-6666
Facsimile: (210) 660-3795
Email: rcedillo@lawdcm.com

Andrew C. Phillips (*Pro Hac Vice*)
Shannon B. Timmann (*Pro Hac Vice*)
MEIER WATKINS PHILLIPS PUSCH LLP
919 18th Street NW, Suite 650
Washington, DC 20006
(202) 318-3655
Email: andy.phillips@mwpp.com
Email: shannon.timmann@mwpp.com

Jeffrey A. Neiman (*Pro Hac Vice*)
Jason L. Mays (*Pro Hac Vice*)
MARCUS NEIMAN RASHBAUM & PINEIRO LLP
100 SE 3rd Ave., Suite 805
Ft. Lauderdale, Florida 33394
(954) 462-1200
Email: jneiman@mnrlawfirm.com
Email: jmays@mnrlawfirm.com

Shelby O'Brien
BUTLER SNOW LLP
1400 Lavaca Street, Suite 1000
Austin, Texas 78701
(512) 615-1225
Email: shelby.obrien@butlersnow.com

*Counsel for Plaintiff Logan Paul*

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(G), I certify that Plaintiff has repeatedly sought from Defendants the communications that are the subject of Plaintiff's Motion to Compel Production of Communications Relevant to Defendants' Actual Malice. Plaintiff requested that Defendants produce those communications in requests for production he served on Defendants on August 29, 2024; in emails Plaintiff's counsel sent to Defendants' counsel on December 10, 2024, and December 19, 2024; and in conference calls between Plaintiff's counsel and Defendants' counsel on December 4, 2024, and December 18, 2024. Despite those efforts and conferrals, Defendants have not agreed to produce the requested communications.

/s *Andrew C. Phillips*

## CERTIFICATE OF SERVICE

I hereby certify that, on the January 17, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record who are deemed to have consented to electronic service.

*/s/ Ricardo G. Cedillo*