IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| **LOGAN PAUL,**  *Plaintiff,*  v.  **STEPHEN FINDEISEN AND COFFEE BREAK PRODUCTIONS, LLC d/b/a COFFEEZILLA,**  *Defendants.* | Civil Action No.: 5:24-cv-00717-OLG |

## DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF COMMUNICATIONS RELEVANT TO DEFENDANTS' ACTUAL MALICE

TO THE HONORABLE COURT:

Defendants Stephen Findeisen and Coffee Break Productions, LLC d/b/a Coffeezilla submit this Response to Plaintiff's Motion to Compel Production of Communications Relevant to Defendants' Actual Malice (ECF No. 26, the "**Motion**"), and in support would respectfully show:[1]

### INTRODUCTION

1. Logan Paul brought this defamation action against Findeisen (known professionally as "Coffeezilla," along with his company of the same name) for exposing Paul's central role in running an online cryptocurrency scam that cost his fans, including

---

[1] Defendants filed a motion for extension of time until February 14, 2025 to respond to the Motion. *See* ECF No. 30. Plaintiff opposed the motion, despite lead counsel being set for a two-week jury trial in another matter and undersigned counsel being out of the country. *See* ECF No. 31. The filing of this response will moot Defendants' motion for extension and address any concerns Plaintiff has about delay.

1

children to whom the scam was marketed, millions of dollars. Paul publicly thanked Coffeezilla for his work, apologized for the so-called "CryptoZoo" scam, and promised to partially refund victims—*if* they agreed not to sue him.

2.  One of those victims, a Texas police officer, filed a class action lawsuit against Paul and his co-conspirators.[2] In response, Paul pointed the finger at his co-conspirators, claiming it was actually they who scammed him and lamenting (like a bank robber who found the vault empty) that he did not even profit from CryptoZoo. *See* ECF No. 1 ¶ 56. Paul brought cross-claims against those individuals in the class action case, which remains pending.[3]

3.  Doubling down on the dubious claim that he was just another victim in the crypto-scam he co-founded and relentlessly marketed to his fans, Paul brought this suit against Coffeezilla to attempt to force him to turn over communications revealing the inside sources who blew the whistle on the scam. For example, Paul seeks screenshots of group text message conversations, which by their nature reveal the person who took and shared them with Coffeezilla.

4.  These communications are protected by Texas' broad statutory journalist's privilege and the First Amendment privilege against forced disclosure of journalists' confidential sources. As the Fifth Circuit has long recognized, "forced disclosure of journalists' sources might deter informants from giving their stories to newsmen," particularly in civil defamation cases where "a defamed plaintiff might relish an opportunity to retaliate against the informant." *Miller v. Transamerican Press, Inc. ("Miller I")*, 621 F.2d 721, 735 (5th Cir. 1980), *modified on reh'g*, 628 F.2d 932 (5th Cir. 1980), *cert. denied*, 450 U.S. 1041 (1981).

---

[2] *See Don Holland, et al. v. Cryptozoo, Inc., et al.*, Case No. 1:23-cv-00110, filed Feb. 2, 2023 in the Western District of Texas, Austin Division, at ECF No. 1.

[3] *See* Case No. 1:23-cv-00110 ECF No. 55.

5. Indeed, Paul admits the whole purpose of his Motion is to find out "what [Coffeezilla] knew . . . and when [Coffeezilla] knew it." ECF No. 26 at 3. In other words—who snitched?

6. The *Washington Post* has described Coffeezilla as a "powerful independent news source[ ], cataloguing and exposing some of the biggest instances of alleged fraud in the crypto industry," including Sam Bankman-Fried's FTX.[4] Although Paul's Complaint fleetingly suggests Coffeezilla is an amateur unworthy of journalistic protections, it also recognizes *The New Yorker* magazine has described Paul as a "investigative journalist." ECF No. 1 ¶ 64. Regardless, Paul's Motion appears to concede the journalist's privilege applies to the communications he is seeking.

7. Further, as Paul's Motion acknowledges, counsel for the parties have had extensive discussions related to Paul's demand for these materials. ECF No. 26 at 2–3. Defendants proposed a simple solution that preserves the privilege: Paul can ask Coffeezilla in a deposition whether he has certain documents or information Paul believes support his claim that Coffeezilla acted with actual malice. Defendants also offered to review Paul's production and identify which documents Coffeezilla also has.

8. Rather than pursue either alternative, Paul filed this Motion. In so doing, he elected to subject himself to a stringent burden of showing his need for the privileged materials outweighs not only Coffeezilla's interest in keeping those materials confidential but also the public's interest in journalism unencumbered by lawsuits, like this one, designed to terrorize and discourage potential whistleblowers from coming forward.

---

[4] *See* Taylor Lorenz, *Influencers Outshine Traditional Media on Coverage of FTX Implosion*, WASH. POST (Jan. 5, 2023), https://www.washingtonpost.com/technology/2023/01/05/ftx-citizen-journalism/.

9. It is this interest that has led courts in this circuit to recognize: "The law is clear that compulsory disclosure of a reporter's confidential sources should be *the last resort* for obtaining information" after "all other means . . . [have been] exhausted." *Lenhart v. Thomas*, 944 F. Supp. 525, 530 (S.D. Tex. 1996) (emphasis added) (compiling authorities). Paul has attempted *no* other means of obtaining the confidential information, such as through deposing Findeisen or serving interrogatories or requests for admission that identify certain communications and asking Coffeezilla whether he possessed them at the relevant time.

10. Under both Fifth Circuit and Texas standards, Paul's burden is high—and rightfully so given the important interest at issue. Paul has utterly failed to meet that burden. The Court should deny his Motion in its entirety.

## ARGUMENT AND AUTHORITIES

**A.** **Applicable legal standards**

11. The discovery Paul demands is protected by Texas' statutory journalist's privilege and the First Amendment, both of which place a steep burden on the party seeking discovery.[5]

**i.** **Scope of discovery generally**

12. The party seeking discovery bears the burden of showing its necessity. *Freeman v. United States*, 556 F. 3d 326, 341 (5th Cir. 2009) (citing *SEC v. Spence & Green Chem. Co.*, 612 F.2d 896, 901 (5th Cir. 1980)). The court must limit discovery that "is unreasonably cumulative or duplicative or can be obtained from some other source that is more convenient,

---

[5] As a preliminary matter, Paul's Motion does inform the Court that Defendants served an over 500-page privilege log for, among other things, Coffeezilla's communications with confidential sources and communications with Paul that were provided by those sources. *See* Decl. of Caroline Newman Small at ¶ 3 Ex A. The Motion was filed just two days after the log was served. Because Paul did not confer with Defendants after they served this privilege log, Defendants are unclear which privilege log items Paul is contesting.

4

less burdensome, or less expensive" or "outside the scope permitted by Rule 26(b)(1)." FED. R. CIV. P. 26(b)(2)(C).

13. Rule 26(b)(1) expressly does not permit discovery of privileged matters. *Id.* 26(b)(1). Relevant here, both the United States Constitution and Texas law specifically protect disclosure of discovery that might reveal a journalist's sources.

### ii. Journalist's privilege under the Texas Free Flow of Information Act

14. The availability of a privilege in a diversity case like this one is governed by the law of the forum state. *Miller I*, 621 F.2d at 724 (citing FED. R. EVID. 501).

15. In 2009, Texas enacted the Free Flow of Information Act (the "**Texas Act**"), located at Texas Civil Practice and Remedies Code §§ 22.021–22.027. The Texas Act provides a court may only compel a journalist to produce or disclose information revealing his sources if the person seeking disclosure "makes a clear and specific showing":

   a) all reasonable efforts to obtain the information from alternative sources have been exhausted;

   b) the request is not overbroad, unreasonable, or oppressive, and, where appropriate, is limited to verify published information and surrounding circumstances related to its accuracy;

   c) reasonable and timely notice;

   d) the party seeking disclosure's interest in the information outweighs the public interest in gathering and dissemination of news, including the journalist's concerns;

   e) the request is not being used to obtain peripheral, nonessential, or speculative information; ***and***

   f) the information, document, or items is relevant and material to the proper administration of the official proceeding and is essential to the maintenance of a claim or defense of the party seeking it.

TEX. CIV. PRAC. & REM. CODE § 22.024.

5

### iii. Journalist's privilege under the First Amendment

16. In a case decided long before Texas adopted the Texas Act, the Fifth Circuit considered whether to apply the journalist's privilege in a diversity case filed in Texas. *See Miller I*, 621 F.2d at 724–25. Noting that Texas had no statute at the time and the Supreme Court of Texas had not yet considered the issue, the court instead considered whether the identity of a reporter's confidential source was protected by the First Amendment. *Id.*

17. The court concluded the First Amendment "shields a reporter from being required to disclose the identity of persons who have imparted information to him in confidence." *In re Selcraig*, 705 F.2d 789, 792 (5th Cir. 1983) (citing *Miller I*, 621 F.2d at 725). On denial of rehearing, the court supplemented its opinion to clarify that the First Amendment privilege may be overcome in a civil defamation case only if the party seeking disclosure establishes by "substantial evidence":

   a) the statement attributed to the confidential source was published and is both factually untrue and defamatory;

   b) reasonable efforts have been made to obtain the information by alternative means;

   c) no other reasonable means is available; ***and***

   d) the information sought is necessary to properly prepare and present the case.

*Id.* (citing *Miller v. Transamerican Press ("Miller II")*, 628 F.2d 932, 932 (5th Cir. 1980)).

18. Paul argues this test does not apply here, since *Miller I* and *Miller II* involved a reporter's privilege to refuse to testify as to the identity of a source, rather than produce documents that would reveal that identity. That is, of course, a distinction without a difference. It is also simply wrong.

19. The Fifth Circuit adapted the *Miller* test from the test first articulated by the Second Circuit in *Garland v. Torre*, 259 F.2d 545 (2d Cir. 1958), *cert. denied*, 358 U.S. 910 (1958). *Miller I*, 621 F.2d at 726 ("(1) [I]s the information relevant, (2) can the information be obtained by alternative means, and (3) is there a compelling interest in the information?"). Since then, the Second Circuit has applied this test to protect reporters from being compelled to produce documents that would reveal their confidential sources. *E.g.*, *McGraw-Hill, Inc. v. Arizona (In re Petroleum Prods. Antitrust Litig.)*, 680 F.2d 5, 6–7 (2d Cir. 1982). Having concluded the Second Circuit's approach is worthy and not having held to the contrary, nothing suggests the Fifth Circuit would limit the *Miller* test to testimony alone.

B. **The journalist's privilege applies here.**

   i. **Coffeezilla is a journalist/reporter.**

20. Paul's Motion does not challenge Coffeezilla's status as a "reporter" or "journalist" under either the Fifth Circuit standard or the Texas Act. To the extent there is any debate, Coffeezilla is both.

21. A "reporter" is generally defined as "[a] person responsible for making and publishing a report," which is "[a] formal oral or written presentation of the results of an investigation[.]" *Reporter*, BLACK'S LAW DICTIONARY (12th ed. 2024); *Report*, BLACK'S LAW DICTIONARY (12th ed. 2024).

22. Similarly, the Texas Act specifically defines "journalist" as a person who, "for a substantial portion of [his] livelihood or for substantial financial gain, gathers, compiles, prepares, collects, photographs, records, writes, edits, reports, investigates, processes, or publishes news or information that is disseminated by a news medium or communication service provider[.]" TEX. CIV. PRAC. & REM. CODE § 22.021(2). Texas courts have recognized

7

that whether the Texas Act applies to a publisher is not dependent on whether he "fits some historic concept of journalism." *See Abraham v. Greer*, 509 S.W.3d 609, 614 (Tex. App.—Amarillo 2016, pet. denied).

23. Coffeezilla's entire business is based on "uncover[ing] scams, fraudsters and fake gurus that are preying on desperate people with deceptive advertising." COFFEEZILLA, youtube.com/@Coffeezilla (last visited Feb. 3, 2025); *see also* Decl. of Stephen Findeisen ¶¶ 3–5. Coffeezilla investigates scammers like Paul and publishes the results of his investigations on his popular YouTube channel. *Id.* ¶¶ 3–6.

24. In this case, Coffeezilla investigated CryptoZoo and Paul by, among other things, communicating with people who had firsthand knowledge of the scam and Paul's direct involvement in it. *Id.* ¶ 7. Coffeezilla published the results of that investigation in wide-reaching public media, including YouTube. *Id.*; *see also* ECF No. 1 ¶ 133 ("To date, Findeisen's June 29, 2023 X post has been viewed more than 6.5 million times."). Making and publishing videos about scams like the CryptoZoo/Paul scam is Coffeezilla's primary source of income. Decl. of Stephen Findeisen ¶ 3; *see also* ECF No. 1 at p. 16 ("**Findeisen Builds a Profitable Personal Brand as an Expert in Ferreting Out Supposed Scams**" (emphasis in original)).

    ii.    **Disclosure of the communications would reveal Coffeezilla's confidential sources.**

25. Paul also does not appear to dispute that the communications identified on Defendants' privilege log are subject to the journalist's privilege, since he does not explicitly argue to the contrary.[6]

---

[6] As mentioned, Paul's Motion does not identify which communications on Coffeezilla's privilege log he seeks to compel, nor did he confer with Defendants about the privilege log prior to

26. In late 2002, Coffeezilla obtained the subject communications from sources with knowledge of the inner workings of CryptoZoo for use in Coffeezilla's series investigating CryptoZoo. Decl. of Stephen Findeisen ¶ 6. Production of the communications would reveal Coffeezilla's sources. *Id*. ¶¶ 7–8. For example, screenshots of group text messages identify the person who saved them. *Id*. Further, the limited number of individuals included in the Subject Communications will reveal or, at the very least, strongly suggest Coffeezilla's sources. *Id*.

27. Paul argues, rather incredibly, that he is not actually seeking the identity of Coffeezilla's confidential sources despite seeking communications that would inevitably reveal them. Citing *Herbert v. Lando*, 441 U.S. 153 (1979), Paul instead claims to be seeking evidence only of Coffeezilla's thought processes and mental impressions.

28. But in *Herbert*, the plaintiff did not demand that the journalist-defendants identify their confidential sources like Paul does here. Rather, the privilege issue arose when one journalist refused to answer deposition questions on the basis that they intruded upon the state of mind of those who edit, produce, or publish and the editorial process itself. *Herbert*, 441 U.S. at 157. The Supreme Court held the editorial process itself is not privileged under the First Amendment, although the Texas legislature has since codified this privilege in the Texas Act. *Id.* at 175.

29. Here, as in *Herbert*, nothing is preventing Paul from investigating the subject of actual malice by, for instance, deposing Coffeezilla. The fact that Paul refuses to do so is

---

filing this motion. Instead, Paul refers to the unidentified communications simply as the "Subject Communications." ECF No. 26 at 2. For the Court's convenience, Defendants will adopt the same shorthand in this Response, notwithstanding the fact that the precise communications at issue remain unidentified.

9

damning evidence that he is not as interested in Coffeezilla's motives as in the identity of his sources.

30. Having effectively conceded the applicability of the privilege, Paul launches immediately into a discussion of whether the Subject Communications are relevant to the issue of actual malice. In doing so, however, Paul tellingly avoids any attempt to meet the rest of his burden.

C. **Paul provides *zero*—much less substantial or clear and specific—evidence supporting his motion.**

31. As an initial matter, the Fifth Circuit test to overcome the privilege requires the party seeking privileged information to produce "substantial evidence" in support. "The Supreme Court has defined 'substantial evidence' as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Air Prods. & Chems., Inc. v. FERC*, 650 F.2d 687, 695 (5th Cir. 1981) (cleaned up). Although not drawn from the context of assessing whether to disregard a privilege, this general definition makes clear that "substantial evidence" means *evidence*, not mere argument of counsel.

32. Similarly, the Texas Act requires a "clear and specific showing." TEX. CIV. PRAC. & REM. CODE § 22.024. Due to its recent enactment, there is little authority interpreting the Texas Act. The Supreme Court of Texas, however, has construed "clear" and "specific" in the context of a "clear and specific showing" to mean, respectively, "unambiguous," "sure," or "free from doubt" and "explicit" or "relating to a particular named thing." *In re Lipsky*, 460 S.W.3d 579, 589–90 & n.8 (Tex. 2015) (interpreting the phrase in the Texas Citizens' Participation Act and noting the same phrase also appears in section 22.024 of the Texas Act). For example, "[b]are, baseless opinions" are not "a sufficient substitute" for clear and specific evidence. *Id.* at 592.

33. Here, Paul's Motion does not attach or identify *any* evidence. Instead, Paul's Motion relies entirely on argument of counsel. That is even less than Paul's or another witness' bare, baseless opinions—it is nothing at all.

34. Having identified not a single shred of evidence, much less substantial or clear and specific evidence, Paul's Motion is fatally deficient. The Court must deny it on this basis alone.

**D.    Paul cannot overcome the privilege.**

35. Even if Paul's failure to submit or identify any evidence in support of his Motion were not fatal (it is), he still has not identified any basis to disregard the privilege under the relevant tests. Paul fails to address several elements of his burden and does not present either evidence or argument to justify disclosure.

   **i.    No evidence of falsity**

36. First, and perhaps most importantly, the Fifth Circuit test requires the movant to establish by substantial evidence that the statement attributed to the informant was published and is factually untrue and defamatory. *In re Selcraig*, 705 F.2d at 792 (citing *Miller I*, 621 F.2d at 725). In *Miller I*, for instance, the plaintiff identified specific evidence that the published statement was factually untrue and defamatory. 621 F.2d at 726–27.

37. Paul makes no attempt to meet this burden or even identify any published statements by Coffeezilla's confidential sources that were untrue and defamatory. Assuming Paul meant to argue Coffeezilla's sources stated Paul enthusiastically promoted what he knew was a scam, Paul does not identify a shred of evidence indicating such statements (if they exist) were untrue. Paul does not even provide his own declaration to that effect.

### ii. No evidence of lack of alternative means

38. Second, both the Fifth Circuit test and the Texas Act require Paul to present evidence that he made reasonable efforts and exhausted all alternative means to obtain the information he is seeking from Coffeezilla. *In re Selcraig*, 705 F.2d at 792 (citing *Miller I*, 621 F.2d at 725); TEX. CIV. PRAC. & REM. CODE § 22.024. While Paul's Motion baldly states that is the case, he presents no evidence in support.

39. Further, Paul's unsupported allegation that there are no alternative means to obtain the information is demonstrably false. Paul claims he needs Defendants to produce copies of Paul's own communications with third parties to prove Coffeezilla published its allegedly defamatory statements with actual malice. Although Paul already has all his own communications, he does not identify or attach any of them to show whether or how they demonstrate his purported innocence in the CryptoZoo scam.

40. Defendants offered to identify which of the communications in Paul's production Coffeezilla also possesses—just one of multiple reasonable alternatives to busting the privilege. *See* Decl. of Caroline Newman Small ¶ 4, Ex. B. Paul declined that offer and pursued this Motion without even noticing either of Defendants' depositions. *Id.* ¶ 5.

41. In addition, courts in this circuit have long recognized "the identify of a source of information may be ferreted out without direct disclosure by the press." *Mize v. McGraw-Hill, Inc.*, 86 F.R.D. 1, 3 (S.D. Tex. 1980). Where, as here, "the plaintiff is aware who knew about the transaction or event as to which the allegedly libelous statement refers, his task of pinpointing the source is simplified." *Id.* In such case, his need for disclosure of privileged materials will be less. *Id.*

12

### iii. No evidence of necessity

42. Third, both the Fifth Circuit test and the Texas Act require Paul to present evidence that the documents he is seeking are essential to his claim that Coffeezilla acted with actual malice. *In re Selcraig*, 705 F.2d at 792 (citing *Miller I*, 621 F.2d at 725); TEX. CIV. PRAC. & REM. CODE § 22.024.

43. Paul argues the communications identifying Coffeezilla's confidential sources will somehow be circumstantial evidence that Coffeezilla knew Paul was innocent. *See* ECF No. 26 at 4 (citing *Harte-Hanks Commc'ns. v. Connaughton*, 491 U.S. 657, 668 (1989)). Again, Paul does not identify any such communications (which are already in his possession) or explain how they demonstrate his purported innocence.

44. Regardless, Paul's own complaint demonstrates it is, at best, debatable whether Paul's communications might exculpate him. Paul's complaint acknowledges Coffeezilla reported on the extent to which Paul's team members contributed to Paul's own failure. *See, e.g.,* ECF No. 1 ¶¶ 92–95. Paul also admits Coffeezilla reported Paul is not innocent because "he was the face of CryptoZoo and ultimately failed to deliver a viable game." *Id*. ¶ 96. Since Paul does not dispute either that he was the face of CryptoZoo or that the promised product was never delivered, Paul's internal communications could not completely obviate the basis for Coffeezilla's claim that Paul is not innocent in the scam.

45. But in any event, Paul's internal communications will do nothing to show malice, since "[d]ifference of opinion as to the truth of a matter . . . does not alone constitute clear and convincing evidence that the defendant acted with a knowledge of falsity or with a 'high degree of awareness of . . . probable falsity,'" which is Paul's burden to clear. *See Harte-Hanks Commc'ns.*, 491 U.S. at 681 (quoting *Garrison v. Louisiana*, 379 U.S. 64, 74, 85 (1964)).

13

Further, Coffeezilla's assessment of Paul's subjective intent is opinion that is not actionable as defamation in the first place. *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 21 (1990).[7]

### iv. No evidence of superior interest

46. Fourth, the Texas Act requires Paul to make a showing that his need for the discovery outweighs the public interest in gathering and disseminating the news. TEX. CIV. PRAC. & REM. CODE § 22.024.

47. In contrast to the criminal context, in which journalists may not be exempt from responding to police questioning, the Fifth Circuit (like Texas) acknowledges the wisdom of protecting journalists from disclosing their sources to civil litigants seeking revenge. *See Miller I*, 621 F.2d at 735 (noting "a defamed plaintiff might relish an opportunity to retaliate against the informant"). This is precisely such a case.

48. Paul already has all the communications that might reveal Coffeezilla's sources. Rather than do the work to investigate his own case, Paul is instead demanding that this Court disregard well-settled authority by forcing Coffeezilla to reveal the people who leaked. Acceding to that demand would have exactly the type of chilling effect the Texas journalist's privilege is designed to prevent, especially since Paul is currently defending CryptoZoo's investors' class action and pursuing civil claims against his CryptoZoo co-conspirators.

49. For these reasons, the Court should find the Texas journalist's privilege and the First Amendment privilege apply and deny Paul's Motion.

---

[7] Moreover, Paul publicly "expressed that he was grateful that Findeisen had brought some of the misdeeds of his former business partners to light," ECF No. 1 ¶ 123, showing gratitude for the very reporting he now claims was defamatory. *See* "Thank You Coffeezilla" YouTube video created and posted by Paul, *available at* https://www.youtube.com/watch?v=hAjggQvFc20 (last visited February 3, 2025).

## REQUEST FOR HEARING

50. Pursuant to Tex. Civ. Prac. & Rem. Code § 22.024's requirement for "notice and an opportunity to be heard," and to the extent the Court is inclined to do anything but outright deny Paul's Motion, Defendants request the Court first hold a hearing.

## PRAYER FOR RELIEF

51. For these reasons, Defendants respectfully request the Court deny Paul's Motion in its entirety and grant them all further relief at law or in equity to which they may be entitled. *See* ECF No. 26.

DATED: February 3, 2025.

        Respectfully submitted,

By:   */s/ Caroline Newman Small*
**DAVIS & SANTOS, PLLC**
Jason M. Davis
Texas State Bar No. 00793592
Email: jdavis@dslawpc.com
Caroline Newman Small
Texas State Bar No. 24056037
Email: csmall@dslawpc.com
Rachel Garza
Texas State Bar No. 24125240
Email: rgarza@dslawpc.com
719 S. Flores Street
San Antonio, Texas 78204
Tel: (210) 853-5882
Fax: (210) 200-8395

*Attorneys for Defendants Stephen Findeisen and Coffee Break Productions, LLC*

## CERTIFICATE OF SERVICE

I certify that on February 3, 2025, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system and all counsel of record will receive an electronic copy via the Court's CM/ECF system.


By: */s/Caroline Newman Small*
Caroline Newman Small