IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

SAN ANTONIO DIVISION

| | |
|---|---|
| LOGAN PAUL,<br><br>         *Plaintiff*,<br><br>v.<br><br>STEPHEN FINDEISEN AND COFFEE BREAK PRODUCTIONS LLC D/B/A COFFEEZILLA,<br><br>         *Defendants*. | Civil Action No. 5:24-cv-00717 |

**REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF COMMUNICATIONS RELEVANT TO DEFENDANTS' ACTUAL MALICE**

In this defamation action, Defendants have invoked Texas's statutory, qualified journalist privilege to refuse to produce any non-public documents whatsoever that would reflect on their state of mind and knowledge at the time of publication—i.e., evidence relevant to actual malice. While there is limited case law interpreting the Texas statute—particularly in this context where the journalist invoking it is not a third-party subpoena recipient but a named defendant in a defamation action—the Texas Court of Appeals has specifically noted, **_in this context_**, that the statute is not intended to "foreclose the prosecution of a defamation suit," but in fact aims to "assure that the defamed person ha[s] opportunity to garner necessary evidence." *Abraham v. Greer*, 509 S.W.3d 609, 616 (Tex. App. 2016). This construction is in accord with that of courts across the country, interpreting similar qualified privilege statutes, and recognizing that they are not intended to bar a defamation plaintiff from securing necessary evidence bearing on a defendant's actual malice. *See, e.g., News-Journal Corp. v. Carson*, 741 So. 2d 571, 576 (Fla. 5th DCA 1999) (holding that a qualified journalist privilege "must give way" if it "has the effect of making proof of [fault] impossible"); *Aequitron Med., Inc. v. CBS, Inc.*, No. 93-cv-950, 1995 WL

1

406157, at *3 (S.D.N.Y. July 10, 1995) (holding that "the [New York journalist] privilege is not as strictly enforced when the news entity is a defendant in a defamation or libel case" because "[i]t would be unfair for a media defendant in … a defamation case to resist discovery on a basic issue such as knowledge"); *Cent. N.J. Jewish Home for the Aged v. N.Y. Times Co.*, 444 A.2d 80, 84 (N.J. Super. Ct. 1981) (rejecting media defendant's effort to shield discovery because "[i]n many cases of actionable libel, denying the right to such discovery will effectively deny plaintiff a remedy"); *Dangerfield v. Star Editorial, Inc.*, 817 F. Supp. 833, 836 (C.D. Cal. 1993) ("In the context of a civil libel action … courts have noted that the balance shifts somewhat more in favor of disclosure when the privilege is asserted by a media defendant.").

Plaintiff Logan Paul's Motion to Compel seeks crucial evidence of actual malice; namely, he seeks to discover which of **his own communications** regarding the CryptoZoo project Defendants possessed at the time of publication—because those communications will reflect Paul's contemporaneous actions, intentions, and good-faith, and put the lie to Defendants' repeated, malicious accusation that Paul conceived of the project as nothing more than a fraudulent scam.[1] Defendants' Response to Paul's Motion to Compel [Dkt. 32] seeks to confuse the issues and relevant legal standards applicable to Paul's Motion by conflating the specific standards of Texas's statutory, qualified privilege, set forth in Tex. Civ. Prac. & Rem. Code § 22.024, with the separate—and separately focused—First Amendment privilege described in *Miller v. Transamerican Press, Inc.*, 621 F.2d 721, *supplemented on denial of reh'g*, 628 F.2d 932 (5th Cir. 1980), in a transparent effort to hold Paul to some higher, amalgamated standard that does not exist. Importantly, most (if not all) of the materials sought in Paul's Motion will implicate ***only***

---

[1] They will also suggest how Defendants hid that information from their viewers, as juxtaposed against the few communications that they presented misleadingly and out of context in their videos.

the Texas standard, which Paul has more than satisfied. And while it is unclear that Defendants even possess any communications that might implicate the First Amendment standard—they do not say one way or the other—as set forth below, that standard would also be overcome as to that (small, if even existent) subset of materials.

A.     **The Notion that Paul's Motion is Focused on Unveiling Confidential Sources is a Red Herring.**

Defendants devote much of their Response to harping on the faulty premise that Paul's Motion is a disguised effort to ferret out the identities of Defendants' confidential sources for their YouTube videos about Paul and CryptoZoo. The reason Defendants do so is that they seek to require Paul to overcome *both* the Texas qualified privilege, which applies to newsgathering materials generally and includes no distinct—much less, higher—standard for disclosure of confidential sources, and the separate First Amendment privilege, which *only* applies in certain contexts involving the identity of confidential sources. Put differently, if a plaintiff is not directly seeking the disclosure of a confidential source, then the First Amendment privilege has no applicability. (*See* Response ¶¶ 16-17 (acknowledging that the First Amendment privilege shields only disclosure of a confidential source).)

Fundamentally, Paul's Motion seeks an order requiring Defendants to disclose ***communications to which Paul was party*** that Defendants possessed at the time of publication of the defamatory statements at issue. It does not broadly seek the *identity* of the person(s) who provided such communications to Defendants. Defendants would have this Court believe that those are one and the same requests, but they are not. For example, production of any text chain communications that include Paul and more than one other person would not inherently reveal the identity of Defendants' source, because any of the multiple participants on the text chain could

3

have been the source.[2]  These are exactly the types of communications that Paul believes to be at issue, and Defendants' Response appears to confirm this to be the case, as it refers only to Defendants having received from sources "group text message conversations" involving Paul.  (S. Findeisen Decl. ¶ 7 [Dkt. 32-1].)

Tacitly recognizing that production of a group text chain does not inherently reveal who provided Defendants with said text chain, Defendants then appear to argue that it is possible that the way chain text messages present visually can, in some instances, reveal which participant's phone that copy of the text chain came from.  (*See* Response ¶ 26.)  While Defendants present this to the Court as a problem without a solution, the reality is that Defendants have a solution and have utilized it in the videos that gave rise to this case.  As set forth in the Motion, the reason Paul knows that Defendants possess at least some group text communications involving Paul and relating to CryptoZoo is that Defendants displayed some of those text messages in their publicly published YouTube videos.  Since filing his Motion, Paul has learned via third-party discovery how Defendants were able to do that without concern about revealing to viewers who provided the group text chains to Defendants.  It turns out that Defendant Findeisen knows how to "anonymize" a text chain so that the placement or color of messages within the chain does not suggest which participant's phone the message came from, ***and*** that he did just that for the source who provided him with the group text chain he featured in his videos.  (*See* Exhibit 1 at MELLINA_00000731-32 (Defendant Findeisen explaining to his source that he had modified the text chain she provided so that she would be "invisible" as far as it revealing texts were "originating" from her phone).) This newly discovered information puts the lie to the premise that underlies Defendants' entire

---

[2] The same is true of multi-party email communications.  And to the extent the source forwarded the email to Defendants, that forward could simply be redacted to obscure the identity of the sender.

argument; namely, that producing group communications in their possession cannot be done without revealing the identity of the individuals that provided them to Defendants.

**B.    Texas's *Qualified* Journalist Privilege is Overcome as to the Highly Relevant Materials Sought in Paul's Motion.**

As set forth above, with respect to any communications involving Paul and more than one other participant Paul need only satisfy the statutory standard set forth in Tex. Civ. Prac. & Rem. Code § 22.024.  Of the six statutory requirements for overcoming an assertion of the qualified journalist privilege, Defendants only challenge whether Paul can satisfy three of them: (1) exhaustion of reasonable efforts to obtain the information from alternative sources; (2) the information is relevant and material to the proper administration of the case and is essential to the maintenance of a claim of the person seeking it; and (3) that Paul's interest in discovery outweighs Defendants' interest in resisting discovery.[3]  As set forth in his Motion, Paul readily satisfies these criteria.

As to "reasonable" exhaustion of discovery from alternative "sources," i.e. from persons **other than the Defendants**, *see* Tex. Civ. Prac. & Rem. Code § 22.024(1), because Defendants are refusing to disclose what communications they have or who provided them to Defendants, Paul has no alternative other than to attempt to subpoena every single one of the hundreds of people he ever communicated with about CryptoZoo.  That is patently unreasonable.  And although Defendants themselves are not an "alternative source[]" within the meaning of the statute,[4] Defendants also point to a convoluted proposal that would require Paul to first identify "key dates"

---

[3] Defendants also argue that Paul was required to present "evidence of falsity" of Defendants' statements, but that requirement arises under the First Amendment privilege regarding confidential sources, not the Texas statute.  (*See* Resp. ¶¶ 36).

[4] For the same reasons, Defendants' argument that Paul can depose them to obtain the information makes no sense.  The qualified privilege that Defendants have invoked applies to document discovery and testimony, and thus absent a ruling that the privilege is overcome here, Defendants surely will invoke it in their depositions just as they have invoked it to refuse to provide documents.

5

for communications he is interested in, and Defendants to then attempt to "identify any such messages by reference to [Plaintiff's] production by bates number." (C. Small Decl. ¶ 4 [Dkt. 32-2].) But Paul communicated with many, many people about CryptoZoo over an extended period. The core issue here is that he has no idea which of those communications Defendants possess or from what timeframe, and it is also remotely possible that Defendants possess communications that are not in Paul's production. Discovery—particularly when it comes to highly relevant materials relating to the core issue of actual malice—is not supposed to be a game of "Battleship."[5] If the privilege is overcome, and it is, the documents should be produced.[6]

With respect to Paul's need for the communications at issue, Defendants resort to arguing the merits of Paul's defamation claims and protesting that the statements at issue are protected opinion. (Resp. ¶ 45.) But nothing in the Texas statute suggests that a discovery dispute about the qualified privilege hinges on, or in any way directs a Court to consider, the ultimate likelihood of success of a plaintiff's claim on the merits—particularly in a case where, as here, Defendants never filed a motion to dismiss and thus tacitly conceded that Paul has alleged a plausible case of falsity and actual malice. Regardless, as to Defendants' argument that it is "debatable" that the communications Paul seeks could help to "exculpate" him (Resp. ¶ 44), the attached Declaration of Mr. Paul addresses that argument as well by demonstrating how the one group text chain Defendants are already known to have possessed helps put the lie to Defendants' false claims that the CryptoZoo project was an effort by Paul to scam and defraud. (Declaration of Logan Paul (Feb.

---

[5] Defendants also strangely claim in Footnote 6 of their Response that Paul does not identify the communications at issue on Defendants' privilege log. That argument is beyond disingenuous, as Defendants well know that their threadbare privilege log does not provide any descriptions of the thousands of documents on it, making it absolutely impossible to tell what any of the materials on their log are, let alone to attempt to identify specific communications.
[6] Paul is amenable to any group communications being "anonymized" in the same fashion Defendants did for the text chains displayed in their videos.

10, 2025.) Finally, as to the balancing of interests, the only interest Defendants claim is protection of confidential sources, which is not implicated as to any group communications. (*See* Resp. ¶¶ 47-48.)

C.     **The First Amendment Privilege is Overcome as to Any Bilateral Communications.**

Finally, although the separate First Amendment privilege standard is not applicable to the communications that Paul believes to be largely at issue, to the extent Defendants do possess bilateral communications between Paul and only one other person, they should be compelled to produce them as well. While it is true that production of such communications would, unlike group communications, necessarily disclose the identity of the source that provided the communication to Defendants, disclosure of such communications is warranted because Paul can meet the three-part test for overcoming the confidential source privilege set out in *Miller*, if it even applies to the circumstances here (and Defendants themselves appear to suggest otherwise).[7]

Where disclosure is sought that would reveal a confidential source, the First Amendment test from *Miller* may add an additional requirement to the Texas statutory test; namely, that the plaintiff must present evidence that the statement at issue was published, and that it is false and defamatory. *Miller II,* 628 F.2d at 932. Defendants do not dispute that the libelous statements at issue in this case were published by Defendants; they do, however, argue that Paul has not come forward with evidence (as opposed to argument) that their statements accusing him of operating a

---

[7] Notably, Defendants argue that the rule from *Miller* (and *In re Selcraig*, 705 F.2d 789, 792 (5th Cir. 1983)) is that the plaintiff faces a heightened burden to uncover the identity of a confidential source where the plaintiff asserts that "the statement ***attributed to the informant*** was published and is factually untrue and defamatory"). (Resp. ¶¶ 36-37 (emphasis added) (citing *Miller*, 621 F.2d at 725; *Selcraig*, 705 F.2d at 792).) Here, Paul is not seeking the identity of any source because he believes ***the source*** made a defamatory statement that Defendants republished—i.e., he is not seeking to hold a source accountable or liable for defamation. He simply seeks any of his own communications that Defendants received from a source because they are exculpatory as to the statements Defendants themselves made.

scam are false. (*See* Resp. ¶¶ 36-37.)  Defendants specifically cite a lack of an affidavit to that effect, perhaps recognizing that in *Miller* the Fifth Circuit affirmed the district court's holding that an affidavit from the plaintiff sufficed to establish falsity of the statements for purposes of ordering disclosure.  *See Miller*, 621 F.2d at 723.  Addressing that argument, attached hereto is a declaration from Paul, attesting in detail to the falsity of Defendants' statements, and explaining why there is substantial reason to believe that the communications at issue in Paul's Motion will provide compelling evidence that Defendants knew their statements to be false when they published them.  With that, as the Fifth Circuit explicitly held in *Miller*, "the [qualified First Amendment] privilege is not absolute, and in a libel case as is here presented, it must yield."  *Id*. at 725.

## CONCLUSION

This Court should order Defendants to promptly produce the Subject Communications at issue in Paul's Motion to Compel.

February 10, 2025                                         /s *Andrew C. Phillips*
                                                          Andrew C. Phillips (*Pro Hac Vice*)
                                                          Shannon B. Timmann (*Pro Hac Vice*)
                                                          MEIER WATKINS PHILLIPS PUSCH LLP
                                                          919 18th Street NW, Suite 650
                                                          Washington, DC 20006
                                                          (202) 318-3655
                                                          Email: andy.phillips@mwpp.com
                                                          Email: shannon.timmann@mwpp.com

                                                          Jeffrey A. Neiman (*Pro Hac Vice*)
                                                          Jason L. Mays (*Pro Hac Vice*)
                                                          MARCUS NEIMAN RASHBAUM & PINEIRO LLP
                                                          100 SE 3rd Ave., Suite 805
                                                          Ft. Lauderdale, Florida 33394
                                                          Email: jneiman@mnrlawfirm.com
                                                          Email: jmays@mnrlawfirm.com

                                                          Ricardo G. Cedillo (Texas Bar No. 04043600)
                                                          DAVIS, CEDILLO & MENDOZA, INC.
                                                          755 E. Mulberry Ave., Ste. 250
                                                          San Antonio, TX 78212

(210) 822-6666
Email: rcedillo@lawdcm.com

*Counsel for Plaintiff Logan Paul*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on the February 10, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record who are deemed to have consented to electronic service.

/s *Andrew C. Phillips*