UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| LOGAN PAUL<br><br>*Plaintiff,*<br><br>v.<br><br>STEPHEN FINDEISEN and COFFEE BREAK PRODUCTIONS, LLC,<br><br>*Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§  Civil Action No. 5:24-CV-00717 |

### REPLY IN SUPPORT OF
### DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

TO THE HONORABLE COURT:

Pursuant to Federal Rule of Civil Procedure 12(c), Defendants Stephen Findeisen and Coffee Break Productions, LLC file this Reply in support of their Motion for Judgment on the Pleadings (ECF No. 41) and in support respectfully show:

### ARGUMENT AND AUTHORITIES

**I.   Paul notably ignores the Texas Supreme Court's landmark opinion in *Tatum*.[1]**

Defamation law has been described by courts as "a quagmire, lack[ing] clarity and certainty, . . . overly confusing, leav[ing] courts hopelessly and irretrievably confused, and [having] spawned a morass of case law in which consistency and harmony have long ago disappeared." *Tatum*, 554 S.W.3d at 643 (Boyd, J., concurring op.) (internal punctuation and citations omitted).

---

[1] O'CONNOR'S TEXAS CAUSES OF ACTION ch. 18-A § 1.1 (2025) ("In 2018, the Texas Supreme Court issued a landmark opinion in *Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614 (Tex. 2018), that introduced a new framework to evaluate defamatory statements.").

In *Tatum*, the Supreme Court of Texas attempted to clarify how courts should evaluate the "threshold question" in a defamation case—whether the words used are reasonably capable of a defamatory meaning. 554 S.W.3d at 624 (Brown, J., majority op.) (citation omitted). The court also clearly delineated the analyses of whether a statement is capable of defaming and whether it is verifiable as fact, concluding that even a defamatory statement may still be non-actionable opinion. *See id.* at 638–40. That analysis is particularly helpful here.[2]

Notably, however, Paul's response does not cite this seminal opinion even once. *See* ECF No. 55. Paul instead conflates the capable-of-defaming analysis with the verifiable-as-fact inquiry, relying on outdated, pre-*Tatum* authority and cases applying other states' substantive defamation law. A careful reading of *Tatum* explains Paul's aversion to it and demonstrates why the Court must grant judgment on the pleadings here.

### A. *Tatum*: A statement may be capable of defaming the plaintiff but not actionable.

Recognizing "[m]eaning is a question of law," the supreme court introduced a new framework in *Tatum* to aid the lower courts in assessing defamation claims. *Id.* at 625. First, courts must determine whether the meaning alleged by the plaintiff is reasonably capable of arising from the text of the defendant's statement. *Id.* If so, then courts must determine whether that meaning is reasonably capable of defaming the plaintiff. *Id.*

Applying this framework, the court concluded a column published in the *Dallas Morning News* was reasonably capable of implying the plaintiffs acted deceptively by

---

[2] *Tatum* has been applied by the Fifth Circuit and courts in this district. *See, e.g., Garcia v. Delta Cos.*, No. 23-11066, 2024 WL 1904555, at *3 (5th Cir. May 1, 2024) (per curiam) (not designated for publication); *Luke v. Schwartz*, No. 1:23-CV-1122-RP, 2024 WL 2304594, at *3 (W.D. Tex. May 21, 2024).

purchasing an obituary claiming their son died from injuries sustained in a motor vehicle accident when he actually died from a self-inflicted gunshot. *Id*. at 637. The court also concluded that meaning was reasonably capable of defaming the plaintiffs' standing in the community by impeaching their honesty and integrity. *Id.* at 638.

But the court's inquiry did not end there. Although the statements were reasonably capable of defaming the plaintiffs, the court next considered whether the statements were non-actionable statements of opinion. *Id.* The court articulated two tests for this inquiry. *Id.* First, statements that are not verifiable as false are not defamatory. *Id.* Second, even a statement that is verifiable as false is not defamatory if the entire context in which it was made discloses it was not intended to assert a fact. *Id.* "A statement that fails either test—verifiability or context—is called an opinion." *Id.*

The supreme court concluded the *Morning News* column failed both tests. First, whether the plaintiffs intended to deceive the public about the cause of their son's death "simply cannot be factually verified." *Id.* The court distinguished the U.S. Supreme Court's opinion in *Milkovich*, in which the defendant newspaper published a column implying the plaintiff committed the crime of perjury. *Id.* (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 21 (1990)). "Unlike in *Milkovich*, which involved perjury, no 'core of objective evidence' exists from which a jury could draw any conclusions about the [plaintiffs'] mental states." *Id.* (quoting *Milkovich*, 497 U.S. at 21). In other words, an allegation that a person committed a specific crime is verifiable; an allegation that he merely misled others is not.

Second, the court held the column's context clearly disclosed that it contained opinions, and even if the accusation of deception were capable of verification, "it is protected because it is among the opinions that the column contains." *Id.* The court emphasized that

3

the column did not imply any undisclosed facts or that the column's author had personal knowledge of any facts the plaintiffs disputed. *Id.* at 639. "Instead, he compared a quotation from the obituary against an account of [the plaintiffs' son's] suicide. These two accounts diverged, which [the author] noted. Any speculation as to *why* the accounts diverged . . . was reasonably based on these disclosed facts." *Id.* (emphasis in original).

Therefore, the court concluded, the column's explicit accusation that the plaintiffs engaged in a single act of (understandable) deception was an opinion. *Id.* Further, the court concluded: "[I]f the column is reasonably capable of casting any moral aspersions on the [plaintiffs], it casts them as opinions." *Id.*

### B.  Like the column at issue in *Tatum*, Coffeezilla's statements are non-actionable opinions.

Paul's complaint alleges three purportedly libelous statements (the "Statements"):

1. An X post calling Paul "the type of dude to thank you when you expose his scam, then block you when you remind him to pay up."

2. A YouTube video entitled "Logan Paul's Scam Isn't Over" referring to CryptoZoo as "a scam created by Logan Paul" of which Paul is "guilty."

3. A YouTube video entitled "Logan Paul's 'Refund'" accusing Paul of orchestrating a "massive con," being a "serial scammer," and referring to people who bought into CryptoZoo as "people [Paul] scammed."

ECF No. 1 ¶¶ 165, 176, 187.

Even assuming (1) the explicit text[3] of the Statements is capable of giving rise to the defamatory meaning Paul alleges, and (2) that meaning is reasonably capable of defaming

---

[3] "For clarity," *Tatum* re-christened the common law concept of defamation per se as "textual defamation"—that is, "defamation that arises from the statement's text without reference to any extrinsic evidence." 554 S.W.3d at 626. Whether a statement is alleged to be defamatory per se/textual defamation, as Paul alleges here, is relevant to whether it is capable of a defamatory meaning, rather than whether it is a statement of fact or opinion. *See id.*

4

Paul, the Statements are nevertheless non-actionable statements of opinion under both tests recognized in *Tatum*.

First, like the *Morning News* column's accusation of deception, whether Paul intended to orchestrate a "massive con" or "scam" "simply cannot be factually verified."[4] *See Tatum*, 554 S.W.3d at 638. Paul also does not allege Coffeezilla accused him of committing a specific crime or tort. *See Milkovich*, 497 U.S. at 21 (concluding accusation of perjury was verifiable fact). "Scamming" is not a recognized offense in Texas, and "scam" does not have a definitive meaning. *See McCabe v. Rattiner*, 814 F.2d 839, 842 (1st Cir. 1987) (explaining that because "some connotations of [scam] may encompass criminal behavior, [and] others do not, . . . the assertion 'X is a scam' [is] incapable of being proven true or false").

Second, like the column in *Tatum*, which was published in the newspaper's "Opinions" section, Coffeezilla's YouTube page clearly discloses that his videos are "opinions" and "in no way should be construed as statements of fact."[5] *See* ECF No. 1 ¶¶ 177, 188. Paul claims Coffeezilla argues the disclaimer "magically" shields him from liability. ECF No. 55 at 19. That is simply a strawman. While the disclaimer does not shield Coffeezilla's statements from liability, it is part of the entire context of the statements.[6]

---

[4] Of course, if the Court disagrees, Coffeezilla reserves the right to argue truth as a defense on the merits and present circumstantial evidence of Paul's intent.

[5] Paul describes this disclaimer as "buried" and "half-hearted." ECF No. 55 at 19. Coffeezilla's YouTube page, cited in Paul's complaint, plainly refutes that mischaracterization. The disclaimer is prominently displayed immediately below each of the videos Paul complains about.

[6] Paul's cited authorities are distinguishable too. In the example cited in *Milkovich*, the speaker alleged "Jones is a liar"—an objectively verifiable statement of fact, unlike Coffeezilla's claim that Paul participated in a "scam." *See* 497 U.S. at 18–19; *see also D Mag. Partners, LP v. Rosenthal*, 529 S.W.3d 429, 438 (Tex. 2017) (defendant accused the plaintiff of withholding required information from application for welfare benefits—a verifiable accusation); *Pisharodi v. Barrash*, 116 S.W.3d 858, 863 (Tex. App.—Corpus Christi-Edinburg 2003, pet. denied) (defendant accused the plaintiff of assaulting a patient for financial gain—another verifiable accusation).

5

Importantly, Paul admits Coffeezilla's YouTube series "rightfully expos[ed] the wrongdoing of" Paul's CryptoZoo business partners—Eddie Ibanez and Jake "Crypto King" Greenbaum. ECF No. 1 ¶ 7. Paul's only complaint is that Coffeezilla accused *Paul* of being complicit in what he otherwise essentially concedes was a scam. *See id.* ¶ 8 (alleging Coffeezilla "knew full well that Paul had never set out to scam anybody"). Like the columnist in *Tatum*, Coffeezilla's YouTube series compared Paul's marketing of CryptoZoo with what CryptoZoo actually turned out to be (a failure that even Paul admits cost his fans millions), and Coffeezilla's conclusion that Paul was complicit in the scam was reasonably based on the facts disclosed in that series. *See Tatum*, 554 S.W.3d at 639. Notably, Paul does not allege Coffeezilla implied any undisclosed facts about Paul or CryptoZoo or that Coffeezilla had any personal knowledge of Paul's intentions.

Because the Statements fail both the verifiability and context tests, they are non-actionable statements of opinion. *See id.* at 638.

## II. Paul confuses the relevant tests and relies on outdated, inapplicable authority.

### A. Paul's authority is inapposite.

Unsurprisingly, given he ignores the Supreme Court of Texas' most recent clarification of the law on defamation, Paul relies exclusively on pre-*Tatum* authority to conflate and confuse the issues.

First, Paul argues: "[T]he dispositive question for the Court at this stage is *only* whether a reasonable fact finder could conclude the statement declares or implies a provably false assertion of fact." ECF No. 55 at 12 (emphasis added, original emphases omitted). That is wrong. Whether a statement declares or implies a provably false assertion of fact is a question of law for the Court. *Tatum*, 554 S.W.3d at 639. Whether a reasonable factfinder could

6

consider statements defamatory is a separate question the Court need not decide here. *See id.* at 625. Rather, even assuming the Statements are capable of defaming Paul, the Court need only decide whether they are actionable statements of *fact* or *opinion*.

Second, Paul relies on a pre-*Tatum* opinion in which of the Eastland Court of Appeals held that because "[s]tatements charging a sweepstakes company with engaging in sweepstakes fraud would ordinarily tend to injury the company's business reputation and result in financial injury," the statements were "reasonably capable of a defamatory meaning." *Allied Mktg. Grp., Inc. v. Paramount Pictures Corp.*, 111 S.W.3d 168, 176 (Tex. App.—Eastland 2003, pet. denied).

In that case, an episode of *Hard Copy* accused what the producers intended to be a fictional company called "Sweepstakes Clearing House" of running a sweepstakes "scam." *Id.* at 171. The real Sweepstakes Clearinghouse filed suit for defamation, and the trial court granted summary judgment for the defendant. *Id.* at 172. In its first two issues on appeal, Sweepstakes Clearinghouse argued the *Hard Copy* episode was: (1) "of and concerning" Sweepstakes Clearinghouse, and (2) reasonably capable of a defamatory meaning. *Id.* at 172, 175–76. The court of appeals held in Sweepstakes Clearinghouse's favor on both issues but did not address (and was not tasked with addressing) the issue here—whether the "scam" allegation was a statement of opinion or fact.

Similarly, other pre-*Tatum* Texas opinions Paul cites addressed whether statements were capable of being defamatory, not whether they were non-actionable statements of opinion. *See D Mag. Partners*, 529 S.W.3d at 434–39 (analyzing whether "the gist of the article" accusing the plaintiff of being a "welfare queen" was capable of a defamatory meaning); *Bennett v. Comput. Assocs. Int'l, Inc.*, 932 S.W.2d 197, 200 (Tex. App.—Amarillo 1996, writ

7

denied) (analyzing whether calling the plaintiff a "thief" and a "crook" who had "stolen" software was defamatory, not whether it was actionable opinion).

The only pre-*Tatum* Texas case Paul relies on in which the court actually analyzed the verifiable fact versus opinion dichotomy is *Bentley v. Bunton*, 94 S.W.3d 561 (Tex. 2002), in which the Supreme Court of Texas acknowledged: "To distinguish between fact and opinion, we are bound to use as our guide the United States Supreme Court's latest word on the subject, *Milkovich*[.]" *Id.* at 579.

There, the defendant, who was the host of a call-in talk show on public-access television, repeatedly accused a local district judge of corruption over the course of months. *Id.* at 566. The court recognized the defendant called the judge's actions "criminal" only once, when he exclaimed about the judge and the sheriff: "[Y]'all are corrupt, y'all are the criminals, y'all are the ones that oughta be in jail." *Id.* at 581. Although the court recognized this "single, excited reference to [the judge] as a 'criminal' might be taken to be rhetorical hyperbole," the accusation was only part of the defendant's months-long effort to prove the judge's literal corruption. *Id.*

The court further held that while the word "corrupt" "may be merely epithetic in the context of amorphous criticism, it may also be used as a statement of fact that can be proved true or false, just like the word 'liar'" in *Milkovich*. *Id.* at 581–82. The court relied on its own long-standing precedent that "detailed accusations of corruption against a public official are not protected opinion[.]" *Id.* at 582 (citing *A.H. Belo & Co. v. Looney*, 246 S.W. 777, 783 (Tex. 1922)).

Here, in contrast, Paul does not allege Coffeezilla accused him of corruption, nor is Paul a public official. Similarly, Coffeezilla's statements that Paul participated in a "con" and

8

a "scam" do not accuse him of committing any specific crime like perjury or public corruption. *See Whitelock v. Stewart*, 661 S.W.3d 583, 599 (Tex. App.—El Paso 2023, pet. denied) (holding assessments of the plaintiff's character are not verifiable statements of fact); *Moore v. Waldrop*, 166 S.W.3d 380, 386–87 (Tex. App.—Waco 2005, no pet.) (holding terms not imputing a specific crime are not slanderous per se). And, as the *Bentley* court recognized, even calling someone "corrupt" may be a statement of opinion depending on the context. 94 S.W.3d at 583.

### B. Paul's arguments about context are unfounded.

Paul also claims Coffeezilla holds himself out as an "expert" in exposing and uncovering "scams" and "fraudsters," and therefore any opinions he may express are actually statements of fact in context. *See* ECF No. 55 at 16–17.

First, Paul does not identify any basis for the statement that Coffeezilla holds himself out as an "expert." Paul cites only paragraph 15 of his own complaint, which (accurately) states: "Defendant Stephen Findeisen is the host of the Coffeezilla YouTube program. He portrays himself as an investigative journalist and 'internet detective' who specializes in 'exposing scams' and uncovering 'scams' and 'fraudsters.'" ECF No. 1 ¶ 15. Accepting Paul's argument, every investigative journalist would be deemed a subject-matter "expert" on whatever topic he investigates, and every piece of investigative journalism would contain nothing but actionable statements of fact.

Second, Paul cites only foreign (mostly California) authority for the assertion that holding oneself out as an "expert" transforms one's statements of opinion into statements of verifiable fact. Paul does not identify—and Coffeezilla is not aware of—any Texas authority

9

to support this claim. And, even if there were some Texas authority in support, Coffeezilla holds himself out as an investigator of scams, not an expert in scamming.

Finally, Paul argues Coffeezilla's three-part YouTube series on Paul and CryptoZoo is part of the context of the only actionable publications—the three post-June 27, 2023 Statements identified in the complaint. The only Texas authority Paul relies on is *Scripps NP Operating, LLC v. Carter*, 573 S.W.3d 781 (Tex. 2019), in which the supreme court considered a series of purportedly defamatory publications that were all made within the relevant limitations period. *See* ECF No. 55 at 17 ¶ n.17. Here, in contrast, Paul is barred by limitations from seeking relief for any statements made in the three-part YouTube series.

But even if the YouTube series can fairly be considered part of the overall context of the Statements, Paul does not explain why the YouTube series makes the Statements verifiably factual rather than statements of opinion. Accepting the factual allegations in Paul's complaint as true, the series and the Statements all essentially say the same thing—Paul participated in a scam. Even assuming the Statements can be construed as speculating as to Paul's motives, that speculation would be non-actionable opinion reasonably based on facts disclosed in the YouTube series. *See Tatum*, 554 S.W.3d at 639 ("Any speculation as to *why* the [obituary and other accounts of the decedent's cause of death] diverged . . . was reasonably based on these disclosed facts.").

Paul claims this "context" "helps to highlight the difference between this case and those superficially relied upon by" Coffeezilla, citing only the *Dickson* opinion, which was recently affirmed by the Supreme Court of Texas. ECF No. 55 at 18 & n.5. That post-*Tatum* opinion is actually right on point, explaining that a statement an ordinary observer would view as an overstatement or mere rhetorical flourish not meant to be taken literally is non-

actionable. *Dickson v. Lilith Fund for Reproductive Equity*, 647 S.W.3d 410, 414 (Tex. App.—Amarillo 2021) (holding pro-life advocates referring to abortion providers as "murderers" is non-actionable opinion or rhetorical hyperbole), *aff'd sub nom. Lilith Fund for Reproductive Equity v. Dickson*, 662 S.W.3d 355 (Tex. 2023). Like calling an abortion provider a "murderer," calling an admittedly failed cryptocurrency venturer a "scammer" is something an ordinary observer would view as a mere rhetorical flourish not meant to be taken literally, since "scamming" is not a literal offense.

Notably, Paul does not even attempt to distinguish the multiple other Texas opinions cited in Coffeezilla's motion. *See, e.g., Whitelock*, 661 S.W.3d at 599 (calling plaintiffs "total idiots" and "nothing but liars and a bunch of frauds" is non-actionable opinion); *Mogged v. Lindamood*, No. 02-18-00126-CV, 2020 WL 7074390, at *16 (Tex. App.—Fort Worth Dec. 3, 2020, pet. denied) (accusing the plaintiff of being a "sex predator" is "loose, figurative or hyperbolic language that is immunized from defamation claims"); *see also Moore*, 166 S.W.3d at 386–87 (accusing the plaintiff of being a "crook" is non-actionable "name calling" and "general disparagement").

If calling someone a fraud, a sex predator, or a crook is non-actionable in Texas, so too is calling them a "scammer." That is particularly so here, where Paul essentially concedes CryptoZoo was a scam, and his only grievance is Coffeezilla's opinion—based on the facts disclosed in his reporting—that Paul was complicit in that scam. *See Tatum*, 554 S.W.3d at 639 (holding column accusing plaintiffs of deceit was non-actionable opinion because it did not imply any undisclosed facts or that the column's author had personal knowledge of any facts the plaintiffs disputed).

11

## REQUESTED RELIEF

For these reasons, Defendants respectfully request that the Court grant their motion, dismiss all of Paul's claims with prejudice and without allowing leave to amend, and award Defendants all other relief at law or in equity to which they are entitled.

Dated: March 10, 2025

Respectfully submitted,

**DAVIS & SANTOS, PLLC**

By: _/s/ Caroline Newman Small_
Jason M. Davis
Texas State Bar No. 00793592
E-mail: jdavis@dslawpc.com
Caroline Newman Small
Texas State Bar No. 24056037
E-mail: csmall@dslawpc.com
Rachel Garza
Texas State Bar No. 24125240
E-mail: rgarza@dslawpc.com
719 S. Flores Street
San Antonio, Texas 78204
Tel: (210) 853-5882
Fax: (210) 200-8395

*Attorneys for Defendants Stephen Findeisen and Coffee Break Productions, LLC*

## CERTIFICATE OF SERVICE

I certify that on March 10, 2025 the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system and all counsel of record will receive an electronic copy via the Court's CM/ECF system.

By: */s/Caroline Newman Small*
Caroline Newman Small