# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS

# SAN ANTONIO DIVISION

| | |
|---|---|
| LOGAN PAUL,<br><br>      *Plaintiff*,<br><br>v.<br><br>STEPHEN FINDEISEN AND COFFEE BREAK PRODUCTIONS LLC D/B/A COFFEEZILLA,<br><br>      *Defendants*. | Civil Action No. 5:24-cv-00717 |

**PLAINTIFF LOGAN PAUL'S MOTION TO COMPEL THE PRODUCTION OF DEFENDANT STEPHEN FINDEISEN'S COMMUNICATIONS <u>WITH NON-PARTY THOMAS KHERKHER</u>**

Plaintiff Logan Paul moves this Court to compel Defendants Stephen Findeisen and Coffee Break Productions, LLC to produce Findeisen's communications with non-party Thomas Kherkher,[1] and in support states as follows:

## INTRODUCTION

In this action, Plaintiff asserts libel claims against Defendants for repeatedly accusing him of perpetrating a financial scam in connection with a troubled blockchain project called CryptoZoo. *See* Dkt. 1. Nearly seven months ago, in August 2024, Plaintiff served Defendants with his first set of document requests. In relevant part as it relates to this Motion, Plaintiff requested "[a]ll communications with the named plaintiff in the action *Don Holland v. CryptoZoo Inc., et al.*, No. 1:23-cv-110 (W.D. Tex.), as well as all communications with any attorney for the plaintiff . . . ." *Holland* is a purported class action lawsuit that is pending in this District (Austin Division), which asserts claims against Plaintiff and others arising out of the CryptoZoo project. Not by coincidence, *Holland* was filed by Findeisen's attorney acquaintance, Thomas Kherkher.[2] Kherkher is not only an attorney, but also a content creator who, like Findeisen, makes money from publishing videos on YouTube under his online persona, "Attorney Tom."[3]

Kherkher filed the *Holland* litigation in early February 2023, approximately one month after Defendants published their three-part series characterizing CryptoZoo as "Logan Paul's Biggest Scam." The allegations in *Holland* largely mirror Findeisen's reporting, including his

---

[1] Plaintiff served Kherkher with a document subpoena seeking the same materials at issue in this Motion. Kherkher has moved to quash that subpoena. *See* Dkt. 58. The Court has set the motion to quash for hearing on March 24, 2025. *See* Dkt. 59. Given the overlapping subject matter, Plaintiff requests that this Motion be heard on that day, as well.

[2] Social media suggests that Findeisen and Kherkher have a social relationship that predates Defendants' three-part series on CryptoZoo, which was published at the end of 2022. *See* @attorney_tom on X (Apr. 1, 2022, 6:45 PM): "I got to hangout with the legend @coffeebreak_YT today! He is a great youtuber and even better person!", https://twitter.com/attorney_tom/status/1510025696848105480.

[3] Most of Kherkher's videos provide commentary on high-profile legal matters or the legal implications of current events. *See* AttorneyTom, YOUTUBE, at https://www.youtube.com/channel/UCyjLtNOpUsPzJcudxNYpoaQ.

1

completely baseless allegation that Plaintiff had engaged in purposeful deception. And yet, Defendants have refused to produce the majority of Findeisen's communications with Kherkher.[4] The reason, according to Defendants, is that Findeisen has been engaged as an "unpaid consulting expert" in *Holland*. Relying on this dubious engagement, Defendants have withheld most of Findeisen's communications with Kherkher starting in late January 2023—including the supposed engagement agreement, itself—pursuant to (1) Federal Rule of Civil Procedure 26(b)(4), which limits the discovery that can be taken of consulting experts, and (2) the work product doctrine. In a declaration he submitted along with his facially absurd 550-page privilege log of *more than 16,000* entries, Findeisen attests that his communications with Kherkher were "made in confidence," and that they shared their "mental impressions of the [*Holland*] case" with each other. *See* **Exhibit 1**, Declaration of Stephen Findeisen, at ¶ 11(h).

For the reasons set forth herein, however, Rule 26(b)(4) is inapplicable to Findeisen because—setting aside the legitimacy of his expert engagement, which is highly suspect—the Rule does not apply to purported experts whose knowledge was formed outside the scope of their expert consultation. And Defendants' work product assertions similarly fail because they have not shown, and cannot show, that Findeisen's communications with Kherkher (1) were made *for or at the direction* of counsel, or (2) were made "in anticipation of litigation or trial" within the meaning of the standard. Moreover, and in any event, Plaintiff's need for the underlying discovery is more than sufficient to overcome Defendants' purported rationales for withholding it. The Court should grant this Motion and compel Defendants to produce all of Findeisen's communications with Kherkher.

---

[4] Defendants produced a handful of non-substantive emails between the two of them, along with a heavily redacted text string that withholds all communications after January 26, 2023. *See* **Exhibit 2**, Text Messages between Findeisen and Kherkher.

**LEGAL STANDARD**

A party seeking discovery "bears the initial burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence." *Camoco, LLC v. Leyva*, 333 F.R.D. 603, 606 (W.D. Tex. 2019). If the party seeking discovery "establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the discovery . . . should not be permitted." *Id.* Here, Defendants do not claim that the discovery at issue is irrelevant; instead, they claim that the materials constitute work product and are protected under Federal Rule 26(b)(4).[5]

Rule 26(b)(4)(D) provides that "[o]rdinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial." The Rule continues in relevant part, however, that "a party may do so only . . . on showing exceptional circumstances under which it is impractical for the party to obtain facts or opinions on the same subject by other means." *Id.*

The work product doctrine, which is embodied in Federal Rule 26(b)(3), protects from discovery materials "prepared in anticipation of litigation or for trial by or for another party or its representative." "[A] document is entitled to work product protection if 'the primary motivating purpose behind the creation of the document was to aid in possible future litigation.'" *Beasley v. First Am. Real Estate Info. Servs.*, No. 04-CV-01059-B, 2005 WL 1017818, at *3 (N.D. Tex. Apr. 27, 2005) (quoting *Elec. Data Sys. Corp. v. Steingraber*, No. 02-CV-00225-LD, 2003 WL 21653414, at *5 (E.D. Tex. July 9, 2003)). A party invoking the work product doctrine has the burden of showing the disputed materials are work product. *Id.* "[A]ny ambiguity as to that party's

---

[5] For some of the withheld communications, Defendants also assert a journalistic privilege, but the communications withheld on that ground are not at issue in this Motion.

purpose in creating the document is resolved in favor of the party seeking discovery." *White Lodging Servs. Corp. v. Liberty Mut. Fire Ins. Co.*, No. 17-CV-00277-SS, 2019 WL 13080133, at *2 (W.D. Tex. Mar. 19, 2019). In the event the resisting party meets its burden, the requesting party must demonstrate both "a substantial need for the information and an inability to obtain the substantial equivalent without undue hardship." *SEC v. Brady*, 238 F.R.D. 429, 443 (N.D. Tex. 2006); Rule 26(b)(3)(A)(ii); Rule 26(b)(3)(B).

## ARGUMENT

### I. FEDERAL RULE 26(b)(4) IS INAPPLICABLE TO DEFENDANT FINDEISEN.

Accepting for argument's sake Defendant Findeisen's characterization of himself as an expert in the *Holland* litigation, which is doubtful, his reliance upon Rule 26(b)(4) as a basis for shielding his communications with Kherkher nevertheless is completely misplaced. Findeisen claims to be an "unpaid expert consultant" who has "no expectation of testifying" in that case. Ex. 1 at ¶¶ 9(F) and 11(h). By its express terms, however, Rule 26(b)(4)(D)—which applies to consulting experts—does not provide a basis for refusing to produce communications; it merely limits discovery that may be made "*by interrogatories or deposition*." Fed. R. Civ. P. 26(b)(4)(D) (emphasis added); *see Cnty. of Cook v. Wells Fargo & Co.*, No. 14-CV-09548, 2021 WL 809730, at *1 (N.D. Ill. Mar. 3, 2021) (explaining that Rule 26(b)(4)(D) "does not apply where, as here, a party seeks discovery via a request for production"). Additionally, many courts have held that Rule 26(b)(4)(D) only applies "if the opinions were developed for this particular action, and for a party involved in the case." *Ark. River Power Auth. v. Babcock & Wilcox Co.*, 310 F.R.D. 492, 498 (D. Col. 2015) ("[T]he weight of authority appears to require, at a minimum, that the party who secured [the] consulting expert's opinions remain a part of the instant litigation for the protections of Rule 26(b)(4)(D) to apply.") (collecting cases).

4

And yet, even if neither of these limitations governed the application of Rule 26(b)(4)(D)—and to be clear, they *do*—the Rule *still* is inapplicable to Findeisen because his relevant knowledge and opinions derive solely from percipient observation, and *not* through expert consultation. The Advisory Committee Notes clarify that Rule 26(b)(4) "does not address itself to the expert whose information was not acquired in preparation for trial but rather because he was an actor or viewer with respect to transactions or occurrences that are part of the subject matter of the lawsuit." Fed. R. Civ. P. 26, Advisory Comm. Notes. Such an expert is "an ordinary witness." *Id.*

Rule 26(b)(4) calls upon courts to distinguish between a percipient witness "who happens to be an expert," and "an expert who *without prior knowledge of the facts giving rise to the litigation* is recruited to provide opinion testimony." *In re Taxotere (Docetaxel) Prod. Liab. Litig.*, No. 16-MD-02740-JTM, 2018 WL 5669019, at *3 (E.D. La. Nov. 1, 2018) (emphasis added). "An expert whose opinion testimony arises not from his enlistment as an expert but, rather, from his ground-level involvement in the events giving rise to the litigation is not a consulting expert," and thus falls outside the scope of the Rule. *Id.* at *4 (internal quotation and citation omitted); *see also Hebert v. ENI Petroleum Co.*, No. 23-CV-00546-DPC, 2024 WL 4564767, at *3 (E.D. La. Oct. 23, 2024) ("Non-testifying consulting experts are ordinary fact witnesses to the extent they acquire their information through percipient observations of the events at issue in the case or become actors in the factual narrative of the case.") (internal quotation marks omitted).

Findeisen attests that his purported "expertise" on CryptoZoo arises from two places: "(1) speaking directly with sources with insider knowledge and reviewing documents and communications provided to me by those sources," and "(2) conducting my own investigation." *See* Ex 1 at ¶ 6. Thus, Findeisen **admits** that "[his] personal knowledge and observations arise not from his capacity as a non-testifying consulting expert in anticipation of litigation, but rather from

5

his own percipient observations and ground-level involvement giving rise to th[e] litigation." *Bailey v. Board of Comm'rs of Louisiana Stadium and Exposition Dist.*, No. 18-CV-05888-JCW, 2019 WL 5418187, at *4 (E.D. La. Oct. 23, 2019). Findeisen's communications with Kherkher therefore are "not subject to protection from discovery" under Rule 26(b)(4). *Id; see also WIII Uptown, LLC v. B&P Rest. Grp., LLC*, No. 15-MC-00051, 2016 WL 4620200, at *6 (M.D. La. Sept. 6, 2016) (rejecting argument that a private investigator was a "non-testifying consulting expert entitled to protection" under Rule 26(b)(4), and noting that "the information provided regarding [his] 'expertise' is not specific to [the defendant's] retention").

## II. THE WORK PRODUCT DOCTRINE DOES NOT PROTECT DEFENDANT FINDEISEN'S COMMUNICATIONS WITH KHERKHER.

### A. Defendant Findeisen cannot invoke the work product doctrine.

As a threshold matter, "the work product privilege belongs to both the client and the attorney, either of whom may assert it." *See In re Grand Jury Subpoenas*, 561 F.3d 408, 411 (5th Cir. 2009). As Findeisen is neither the client nor the attorney in the *Holland* litigation, he does not have standing to invoke the doctrine here. And even if he *did*, the doctrine would be inapplicable *anyway* given that the claimed work product at issue was not prepared "*for* any party in *this* case . . . in anticipation of *this* litigation." *Lee v. City of Midland*, No. 22-CV-00185-BL, 2024 WL 4005959, at *8 (W.D. Tex. Feb. 15, 2024) (emphases in original).

### B. Defendant Findeisen cannot meet his burden of showing the communications at are work product.

Findeisen *has not* shown—and indeed *cannot* show—that his withheld communications with Kherkher are work product. Findeisen attests in a conclusory manner that his withheld communications "concern[] the same subject matter of this suit" and that in those communications he and Kherkher shared their mental impressions of the *Holland* litigation with each other. Ex. 1 at ¶¶ 9(F), 11(h). But that is not enough. Findeisen has not shown, for example, that his

6

communications with Kherkher—including those in which he claims to have shared *his own* mental impressions of the case—were made at the instruction or direction of counsel "in anticipation of litigation or for trial purposes," or were made for the purpose of "facilitating the rendition of legal advice or developing trial strategy." *Steward by next friend Minor v. Smith*, No. 10-CV-01025-OG, 2018 WL 11361749, at *1 (W.D. Tex. Aug. 21, 2018) (rejecting work product assertion and noting in part that the document author's "knowledge of business matters that are the subject of litigation does not transform this document into attorney work product").

Findeisen also has not shown that he was ever communicating with Kherkher in any capacity other than as an interested third-party observer to the litigation, driven by his disdain for Plaintiff—*i.e.*, as Kherkher's acquaintance and referral- and information source. This is because, tellingly, Findeisen has refused to produce his engagement agreement or any other details about the scope and nature of the supposed pro bono engagement.[6] And by failing to do so, he has failed to establish that *any* of his communications with Kherkher—let alone *all* of them after January 2023—are protected. *See, e.g.*, *In re Asbestos Prods. Liab. Litig.*, 256 F.R.D. 151, 156 (E.D. Pa. 2009) ("Where there is no evidence of the scope and nature of the expert's services as pertaining to the litigation or work done unrelated to litigation, an individual will likely not be considered a non-testifying litigation consultant . . . ."); *see also Lobel v. Woodland Gulf Club of Auburndale*, No. 15-CV-13803, 2016 WL 7410776, at *3 (D. Mass. Dec. 22, 2016) (rejecting work product claim where the emails at issue contained the author's "unsolicited, self-generated 'legal analysis,'" and they were not sent for or at the instruction of counsel).

---

[6] It is unclear how Defendants can justify continuing to withhold the engagement agreement, itself, given that courts typically do not regard retainer agreements as being prepared in anticipation of litigation. *See, e.g.*, *Jean-Pierre v. J&L Cable TV Servs., Inc.*, 2021 WL 6773087, at *3 (D. Mass. June 28, 2021); *Montgomery Cnty. v. MicroVote Corp.*, 175 F. 3d 296, 304 (3d Cir. 1999). Although Plaintiff cannot address the purported agreement without first seeing it, Plaintiff anticipates that to the extent any such agreement exists it almost certainly is a sham, made for the exact purpose that Findeisen and Kherkher are now invoking it—to create pretextual grounds for shielding their communications from discovery. The Court should not let them.

Moreover, "[t]he work product doctrine is not an umbrella that shades all materials prepared by a lawyer . . . . Excluded from work product materials are [] materials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation." *United States v. El Paso Co.*, 682 F. 2d 530, 542 (5th Cir. 1982) (internal cite and quotes omitted). In other words, "[i]f the document would have been created regardless of whether litigation was expected to ensue, the document is deemed to have been created in the ordinary course of business and not in anticipation of litigation." *Elec. Data Sys. Corp.*, 2003 WL 21653414, at *5. That is true "even if the party is aware that the document may also be useful in the event of litigation." *Zenith Ins. v. Texas Inst. for Surgery, L.L.P.*, 328 F.R.D. 153, 171 (N.D. Tex. 2018).

These carveouts are applicable in this case. Both Findeisen *and* Kherkher are content creators who make money from their YouTube viewership. As addressed at length in the Complaint, Findeisen portrays himself as an investigative journalist and internet detective who makes his living from publishing videos to his @Coffeezilla channel, most of which focus on supposed scams involving cryptocurrency. In a similar vein, Kherkher's career as a lawyer is intertwined with his own online persona, Attorney Tom; he publishes content regularly to his channel @AttorneyTom, which has approximately 550,000 subscribers, and which he runs through his company AttorneyTom, LLC. The limited communications between Findeisen and Kherkher that *have been* produced to date reflect that they have discussed Plaintiff and CryptoZoo in the context of planning for and carrying out their content creation—which for them is "in the ordinary course of business." *See, e.g.*, Ex. 2 at D003943–50.

Findeisen cannot credibly claim that all of his communications with Kherkher about Plaintiff and CryptoZoo after January 2023 were made for or at the direction of counsel *and* in furtherance of assisting with legal strategy, given that he had already been communicating with

8

him about these exact topics before that litigation, and given that his public commentary continued even after the case was filed—leading, in part, to the statements that give rise to Plaintiff's libel claims.[7] *See Orchestrate HR, Inc. v. Trombetta*, No. 13-CV-02110-KS, 2014 WL 884742, at *3 (N.D. Tex. Feb. 27, 2014) (text messages discussing the lawsuit were not made for an attorney or to assist an attorney in preparation for litigation); *Midwest Feeders, Inc. v. Bank of Franklin*, No. 14-CV-00078-DCB-MTP, 2016 WL 7422561, at *4 (S.D. Miss. June 28, 2016) (party failed to establish that the withheld documents were created for or at the direction of counsel).

### C. To the extent it was otherwise applicable, the work product privilege has been waived.

Even if the Court finds the communications at issue are work product, it should find the work product protection has been waived in this case. Courts typically find such waiver only "when the facts relevant to a narrow issue are in dispute and have been disclosed in such a way that it would be unfair to deny the other party access to other facts relevant to the same subject matter." *United States v. Rodgers*, No. 20-CR-000358, 2022 WL 1074013, at *9 (E.D. Tex. Apr. 8, 2022) (internal quotations omitted). Here, Kherkher has posted several YouTube videos about his strategy and mental impressions in *Holland*. The day after filing the case, for example, Kherkher posted a nine-minute video extensively outlining the case law and legal concepts he intended to use to defeat a hypothetical motion to dismiss by Plaintiff.[8] Under these circumstances, it rings hollow, and indeed is unfair, for Defendants and Kherkher to now claim an expectation of privacy over their communications about the case. *See, e.g.*, *Kintera, Inc. v. Convio, Inc.*, 219 F.R.D. 503,

---

[7] It bears emphasis that each of the statements that give rise to Plaintiff's libel claims were made *after* Findeisen claims to have been engaged as an expert in the *Holland* litigation.

[8] *See* AttorneyTom, YOUTUBE (Feb. 6, 2023), https://www.youtube.com/watch?v=VDgQGbtqBmQ. Kherkher has posted other videos similarly discussing his litigation strategy and impressions. *See, e.g.*, AttorneyTom, YOUTUBE (Jan. 16, 2023), https://www.youtube.com/watch?v=se6Yt32VeGI; AttorneyTom, YOUTUBE (Jan. 4, 2024), https://www.youtube.com/watch?v=KK9sX3LOsdw.

9

512 (S.D. Cal. 2003) ("It is a fairness issue that Kintera should not be allowed to shield their work product from discovery but at the same time use it as a 'sword' by touting the essence of the work product on their website.").

### III. PLAINTIFF HAS A SUBSTANTIAL NEED FOR THE MATERIALS.

The Court should order Defendants to produce Findeisen's communications with Kherkher *even if they are work product* because Plaintiff has a substantial need for the materials and an inability to obtain them or their substantial equivalent through other means. In order to prevail on his libel claims against Findeisen, Plaintiff must show that Findeisen made the statements at issue with actual malice—which is a contested issue in this case. Actual malice depends on what Findeisen actually knew and believed about Plaintiff at the time of his statements accusing Plaintiff of conceiving and operating CryptoZoo as a scam. The best evidence of Findeisen's actual malice will be his contemporaneous communications about Plaintiff and CryptoZoo. And yet, likely for that very reason, Findeisen is refusing to produce them and instead has served Plaintiff with a privilege log of more than 16,000 entries and invoking a range of different privileges and supposed protections. The Court should not allow Defendants to completely stymy Plaintiff's ability to prove his claims. Where work product materials are central to a case and there is no other way to obtain their equivalent, courts have ordered the production of those materials. *See, e.g., In re Northwest Senior Housing Corp.*, 2023 WL 1804625, at *6 (N.D. Tex. Bankr. Feb. 6, 2023) (finding "exceptional circumstances that would warrant production pursuant to Federal Rule 26(b)(4)(D)(ii)" where "[i]t would be difficult, if not impossible, for the Plaintiff to adequately discover 'motive' without such discovery"). [9]

---

[9] For the same reasons, in the event the Court finds that Findeisen's communications with Kherkher fall within the scope of Rule 26(b)(4)(D), the Court should find there are exceptional circumstances to compel the discovery anyway under Rule 26(b)(4)(D)(ii).

**CONCLUSION**

For the foregoing reasons, Plaintiff submits that neither Federal Rule 26(b)(4) nor the work product doctrine provide a legitimate basis for Defendants to continue withholding Findeisen's communications with non-party Kherkher, and as such the Court should grant this Motion and compel Defendants to produce the communications within three (3) days of its Order. Given that the issues in this Motion overlap with the issues raised in non-party Thomas Kherkher's Motion to Quash [Dkt. 58], which is set for hearing on March 24, 2024 [Dkt. 59], Plaintiff respectfully requests that this Motion be set for hearing on the same day.

March 11, 2025

/s *Andrew C. Phillips*
Andrew C. Phillips (*Pro Hac Vice*)
Shannon B. Timmann (*Pro Hac Vice*)
MEIER WATKINS PHILLIPS PUSCH LLP
919 18th Street NW, Suite 650
Washington, DC 20006
(202) 318-3655
Email: andy.phillips@mwpp.com
Email: shannon.timmann@mwpp.com

Jeffrey A. Neiman (*Pro Hac Vice*)
Jason L. Mays (*Pro Hac Vice*)
MARCUS NEIMAN RASHBAUM & PINEIRO LLP
100 SE 3rd Ave., Suite 805
Ft. Lauderdale, Florida 33394
Email: jneiman@mnrlawfirm.com
Email: jmays@mnrlawfirm.com

Ricardo G. Cedillo (Texas Bar No. 04043600)
DAVIS, CEDILLO & MENDOZA, INC.
755 E. Mulberry Ave., Ste. 250
San Antonio, TX 78212
(210) 822-6666
Email: rcedillo@lawdcm.com

*Counsel for Plaintiff Logan Paul*

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule CV-7(G), I certify that Plaintiff has conferred with counsel for Defendants about the materials that are the subject of this Motion to Compel—including during a telephonic conferral on January 28, 2025, and in emails between February 14-17, 2025—but the Parties were unable to resolve the issues raised in the Motion.

/s *Andrew C. Phillips*

**CERTIFICATE OF SERVICE**

I hereby certify that, on the March 11, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record who are deemed to have consented to electronic service.

/s *Andrew C. Phillips*