IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

SAN ANTONIO DIVISION

| | |
|---|---|
| LOGAN PAUL,<br><br>                        *Plaintiff*,<br><br>v.<br><br>STEPHEN FINDEISEN AND COFFEE BREAK PRODUCTIONS LLC D/B/A COFFEEZILLA,<br><br>                        *Defendants*. | Civil Action No. 5:24-cv-00717 |

**MOTION TO COMPEL PRODUCTION OF EVIDENCE RELEVANT TO PLAINTIFF'S GOOD FAITH INTENTIONS AND ACTIONS**

      Plaintiff Logan Paul moves this Court to compel Defendants to produce the evidence they possessed, when they published the libels at issue in this case, reflecting Paul's good-faith and lack of fraudulent intent with respect to the CryptoZoo project.  Specifically, Paul seeks any communications with sources who provided information regarding Paul's good-faith intentions, or lack of bad-faith intentions, with respect to CryptoZoo, as well as any documents, notes, drafts, or outtakes in Defendants' possession that reflect upon Defendants' understanding and knowledge as to Paul's good-faith intentions or lack of bad-faith intentions (collectively the "Malice Evidence").

**BACKGROUND**

      Paul filed this libel action after Defendants repeatedly accused him of perpetrating a financial scam in connection with a troubled blockchain project called CryptoZoo.  (Compl. at 1 [Dkt. 1].)  In YouTube videos and Twitter posts, Defendants charged that Paul orchestrated the entire project as a scam to swindle his own fans out of money.  (*Id.* ¶¶ 7-12, 80-97.)  In actuality, and as Defendants knew, Paul had been enthusiastic and deeply committed to the project's success.

1

(*Id.* ¶¶ 2, 8, 56, 57, 100, 141, 155.)  The project failed, not because Paul defrauded anyone, but chiefly because of incompetence and worse by those that Paul entrusted with its technical aspects. (*Id.* ¶¶ 56, 150.)

Because Paul is a public figure, to prevail in this action, he must show that Defendants published their false charges with actual malice—that is, with a high degree of awareness of their probable falsity.  *See Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S 657, 688 (1989). Paul's Complaint alleges that Defendants were aware of Paul's true intentions and actions with respect to CryptoZoo, but that they nevertheless chose to repeatedly label him as a scammer in order to profit off his celebrity; that contemporaneous evidence from the CryptoZoo venture and the members of the CryptoZoo team conclusively shows that the venture was legitimate and that Paul, in particular, acted in good faith; and that Defendants indisputably possessed at least some contemporaneous evidence of Paul's intentions and actions.  Discovery in this case has revealed that Defendants were in fact told by multiple percipient witnesses and CryptoZoo insiders that Paul did not set out to scam anyone, that he truly believed in the CryptoZoo project and was invested in its success, and that he was not the cause of the project's ultimate failure.  (A. Phillips Decl. ¶¶ 5-6, Ex. 2.)  Discovery has further revealed contemporaneous communications in which Defendants admitted that they knew Paul had not acted maliciously with respect to the CryptoZoo project, despite repeatedly and publicly accusing Paul of orchestrating a "scam" and a "massive con."  (*Id.* ¶ 6, Ex. 2.)

Given that third-party discovery has already revealed strong evidence that Defendants made their "scam" accusations with a reckless disregard for the truth, Paul believes that Defendants almost certainly possess additional evidence further demonstrating their awareness of Paul's good faith.  However, because Defendants are withholding nearly all of their source communications,

drafts, notes, and other internal documents based on a claim of journalistic privilege, Paul has been prevented from discovering evidence that is crucial to the actual malice element of his claims. Paul has repeatedly asked Defendants to produce whatever evidence they had about his actions and intentions with respect to the CryptoZoo project. On August 29, 2024, for instance, he served Defendants with requests for production ("RFPs") demanding "All documents and communications relating to Mr. Paul"; "All documents and communications relating to CryptoZoo and your investigation into CryptoZoo"; "All calendar entries, calendar invitations, phone logs, notes, or recordings relating to all interviews, meetings, videoconferences, calls, or conversations you conducted or attended during which Mr. Paul or CryptoZoo were mentioned, referenced, or discussed"; and "All notes, summaries, audio recordings, or audio-visual recordings of any interviews conducted by [Defendants] in the course of [their] investigation of CryptoZoo and/or for potential inclusion in [Defendants' YouTube videos], whether ultimately included or not." (Phillips Decl. Ex. 1 at 2-4.) Defendants declined to produce responsive material—including the Malice Evidence—asserting Texas's journalist's privilege and the First Amendment reporter's privilege. (*Id.*) Paul's counsel later conferred with Defendants' counsel via emails and conference calls to negotiate production of the Malice Evidence. (Phillips Decl. ¶¶3- 4.) Defendants again declined to produce it.

## **LEGAL STANDARD**

A party seeking discovery "bears the initial burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence." *Camoco, LLC v. Leyva*, 333 F.R.D. 603, 606 (W.D. Tex. 2019). If the party seeking discovery "establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the discovery… should not be permitted." *Id.*

3

## ARGUMENT

As this Court recently recognized in recommending denial of Defendants' Motion for Judgment on the Pleadings, in all of the statements at issue in this case, "[Defendant] Findeisen accuse[d] Plaintiff of having orchestrated a 'scam' through his CryptoZoo project—in other words, that Plaintiff committed fraud." (R. & R. at 11 (Mar. 26, 2025) [Dkt. 74].) Thus, the falsity element of Paul's claims will require the jury in this case to determine as a factual matter whether Plaintiff acted with "dishonesty" and engaged in "deception." (*See id*. at 10-11.) But in addition to truth or falsity, the fault element of Paul's claims—actual malice—is a central and contested issue in this action. (*See* Answer at 1 [Dkt. 9].) And proof of actual malice will necessarily turn on what Defendants contemporaneously knew and understood regarding Paul's fraudulent intent— or lack thereof. Because Defendants are broadly claiming journalistic privilege over all source communications and internal notes, drafts, and outtakes—including those that might reveal what Defendants understood about Paul's good faith intentions and actions—they have thus far been able to conceal highly relevant evidence bearing on the disputed issue of actual malice.

The objections Defendants assert against producing materials evidencing their knowledge of Paul's good faith all lack merit. Defendants' invocation of Texas's journalist's privilege is unavailing because Paul satisfies the statutorily specified conditions for overcoming the privilege. And Defendants' invocation of a First Amendment privilege to refuse to disclose confidential informants also fails, both because Paul is not insisting that Defendants disclose the identities of whoever provided them with any of the Malice Evidence, and also because Paul satisfies the criteria for overcoming any qualified First Amendment privilege that might otherwise apply.

**A.      The Materials Paul Seeks Bear Directly on the Issue of Actual Malice.**

Paul's burden here is to show that the materials he seeks to compel production of bear on, or reasonably could lead to other matter bearing on, an issue that is or may be in this case. *See*

4

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).  Paul easily satisfies that burden, because materials in Defendants' possession that evidence Paul's good faith and lack of fraudulent intent are highly relevant to the disputed element of actual malice.

As a public figure, Paul can only prevail in this action by proving that Defendants published their libels with actual malice.  *Block v. Tanenhaus*, 867 F.3d 585, 592 (5th Cir. 2017).  The actual malice inquiry focuses on the publisher's subjective state of mind at the time of publication, not the publication's objective truth.  *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 334 n.6 (1974).  What matters in this case, in other words, is what Defendants subjectively understood, when they published their libels, about Paul's intentions and actions with respect to CryptoZoo.

Because libel defendants "are prone to assert their good-faith belief in the truth of their publications," *Herbert v. Lando*, 441 U.S. 153, 170 (1979), the law authorizes libel plaintiffs "to prove the defendant's state of mind through circumstantial evidence." *Harte-Hanks Commc'ns*, 491 U.S. at 668.  That can include evidence showing that, when the libel was published, the defendant possessed or knew of information contradicting it.  Thus, if Defendants possess communications in which a source affirmed Paul's good faith and lack of fraudulent intent, or if Defendants possess internal documents, notes, drafts, or outtakes reflecting Defendants' awareness of Paul's good faith and lack of fraudulent intent, such materials would be strong circumstantial evidence of actual malice.  *See Brown v. Petrolite Corp.*, 965 F.2d 38, 47 (5th Cir. 1992); *Zerangue v. TSP Newspapers, Inc.*, 814 F.2d 1066, 1070 (5th Cir. 1987); *Golden Bear Distrib. Sys. of Tex., Inc. v. Chase Revel, Inc.*, 708 F.2d 944, 950 (5th Cir. 1983); *Huckabee v. Time Warner Ent. Co.*, 19 S.W.3d 413, 426 (Tex. 2000); *Palin v. N.Y. Times Co.*, 940 F.3d 804, 814-15 (2d Cir. 2019); *Lemelson v. Bloomberg, L.P.*, 903 F.3d 19, 25 (1st Cir. 2018).

B.     **Defendants' Reasons for Withholding Crucial Malice Evidence Lack Merit.**

Because Paul can readily carry his burden of showing that the materials he seeks are relevant, Defendants must produce them unless they can articulate a valid objection to doing so. Neither of Defendants' stated objections qualifies.

First, Defendants have objected to production based on Texas's journalist's privilege, codified at Tex. Civ. Prac. & Rem. Code Ann. § 22.023. But Section 22.024 of Texas's Civil Practice and Remedies Code states that the *qualified* journalist's privilege recognized in Section 22.023 yields where six statutorily established criteria are met. All six criteria are satisfied here.

Second, Defendants have objected based on a claimed First Amendment privilege that in limited circumstances can protect reporters from having to divulge confidential sources' identities. But Paul is not necessarily asking Defendants to divulge the identity of any particular source, and it is likely that communications or internal notes/drafts can, if necessary, be redacted to protect source identity while disclosing the relevant information Paul seeks. But even if there are instances where disclosure of highly relevant malice evidence would necessarily disclose the identity of a source, the First Amendment privilege is intended to yield in cases like this one, where the plaintiff has a compelling need for the requested information, the defendant is the only one who can provide it, and the plaintiff has supplied evidence that the defendant's alleged libels were false.

        **1.     Texas's Journalist's Privilege Does Not Shield Defendants from Producing the Evidence They Had Concerning Paul's Good Faith.**

Texas's statutory journalist's privilege is a qualified one that is not intended to bar public-figure plaintiffs from obtaining evidence necessary to prove actual malice. *See Abraham v. Greer*, 509 S.W.3d 609, 616 (Tex. App.—Amarillo 2016, pet. denied). Section 22.024 of the Texas Civil Practices and Remedies Code expressly states that the qualified privilege is overcome if six

statutory criteria are met. All are easily satisfied with respect to the actual malice evidence Paul seeks.

***Paul has exhausted all reasonable efforts to obtain the information from other sources.*** With respect to source communications, Paul has served document subpoenas on all third parties he believes could have been sources for Defendants. Because Defendants are withholding their sources' identities, Paul has no way of knowing the full universe of people who Defendants communicated with, and no way of obtaining those communications other than from Defendants. Paul has no way of obtaining Defendants' internal documents, notes, drafts, and outtakes other than from Defendants.

***Paul's request is not overbroad, unreasonable, or oppressive, and is limited to information bearing directly on the circumstances surrounding the accuracy of Defendants' statements.*** Paul seeks a narrow category of materials that are directly relevant to the disputed issue of actual malice. And the qualified journalist privilege is not meant to categorically bar discovery of evidence bearing on actual malice. *See Greer*, 509 S.W.3d at 616.

***Paul gave Defendants reasonable and timely notice of his demand.*** Paul requested the materials at issue be produced in August 2024, and Defendants have since refused to produce them.

***Paul's interest in obtaining crucial actual malice evidence outweighs Defendants' interest in withholding it.*** Paul's interest in obtaining evidence demonstrating Defendants' awareness of his good faith and lack of fraudulent intent is considerable, since "[t]o the extent that the disclosure [of the purported basis for a defendant's libels] might illuminate the defendant's state of mind, it goes to the heart of the plaintiff's case, and it is evidence that is not likely to be available elsewhere." Marc A. Franklin et al., *Mass Media Law* 659 (6th ed. 2000). Defendants' interest in withholding such evidence, by contrast, is negligible. While the public and journalists

7

have a generalized interest in gathering news free of unreasonable burdens, courts routinely hold that interest is outweighed by citizens' general obligation to provide information pursuant to routine legal processes. *E.g.*, *Branzburg v. Hayes*, 408 U.S. 665, 686 (1972); *Miller v. Transamerican Press, Inc.*, 621 F.2d 721, 726-27, *supplemented on denial of reh'g*, 628 F.2d 932 (5th Cir. 1980).

*Paul is not seeking peripheral, nonessential, or speculative information.* As explained above, Paul seeks only evidence that bears squarely on an element of his claim.

*The evidence Paul seeks is vital to proving actual malice.* As explained above, Paul seeks to discover only communications, notes, drafts, and outtakes that bear directly on the question of whether Defendants accused Paul of orchestrating a scam while subjectively knowing that accusation to be false. Evidence that a defendant was in possession of information contradicting his libels is textbook evidence of actual malice. *E.g.*, *Zerangue*, 814 F.2d at 1070.

Because Paul's request satisfies all six criteria in Section 22.024, Texas's journalist's privilege must yield and the materials at issue should be produced.

> **2.  The First Amendment does not authorize Defendants to withhold highly relevant materials that no one else can produce.**

The qualified First Amendment privilege against disclosure of confidential sources also does not shield Defendants from producing the highly relevant materials at issue. The privilege that the Fifth Circuit recognized in *Miller* was a qualified right to avoid disclosing a confidential source's identity, not a privilege against discovery of material that has informed a journalist's thought processes or mental impressions. 621 F.2d at 725. As the *Miller* panel observed, merely "requiring disclosure of journalists' thought processes would have no chilling effect on the editorial process; the only effect would be to deter recklessness." *Id.* That, the *Miller* panel explained, is precisely what the U.S. Supreme Court decided in *Herbert v. Lando*, 441 U.S. 153

8

(1979), where it "held that the press had no First Amendment privilege against discovery of mental processes where the discovery was for the purpose of determining whether malice existed." *Miller*, 621 F.2d at 725.  Here, Paul is not directly seeking the identity of any confidential source; rather, he is seeking communications and documents relevant to Defendants' thought processes and bearing upon their knowledge of Paul's good faith at the time they accused Paul of acting maliciously and fraudulently.  There is no reason to think that production of the materials Paul seeks will necessarily require disclosure of the identity of any particular source.

To the extent Defendants claim that production of the materials Paul seeks will necessarily require such disclosure, and that the issue cannot be addressed through redactions or other preventative measures, then Defendants should nevertheless be compelled to produce such materials.  Under the test from *Miller*, the privilege is overcome, and a source's identity must be disclosed, whenever a libel plaintiff: (1) shows that the challenged statement was published, factually untrue, and defamatory; (2) made reasonable efforts to discover the information from other sources, but no such source was available; and (3) shows that knowing the informant's identity is necessary to the proper preparation and presentation of the case.  *Miller v. Transamerican Press, Inc.*, 628 F.2d 932 (5th Cir. 1980) (mem.).  Paul has already satisfied the first component by providing a sworn declaration that Defendants' accusations were false and defamatory.  (Paul Decl. at ¶¶ 7, 13-15, 17-18 [Dkt. 35-2]); *Miller*, 621 F.2d at 723 (holding that an affidavit from the plaintiff sufficed to establish falsity for the purposes of assessing a First Amendment privilege claim).  He satisfies the second component because no one besides Defendants can say what information Defendants possessed, at the time of publication, that shed light on Paul's good faith and lack of fraudulent intent with respect to CryptoZoo.  And he satisfies the third component because evidence bearing directly on actual malice is indisputably necessary

9

to the proper presentation of his case. With that, as the Fifth Circuit held in *Miller*, "the [qualified First Amendment] privilege is not absolute, and in a libel case as is here presented, it must yield." 621 F. 2d at 725.

## CONCLUSION

This Court should compel Defendants to promptly produce: (1) all source communications in which a source provided information reflecting upon Paul's good faith and lack of fraudulent intent with respect to the CryptoZoo project; and (2) all internal documents, notes, drafts, and outtakes reflecting upon Defendants' understanding and knowledge as to Paul's good faith and lack of fraudulent intent with respect to the CryptoZoo project.

April 9, 2025

/s *Andrew C. Phillips*
Andrew C. Phillips (*Pro Hac Vice*)
Shannon B. Timmann (*Pro Hac Vice*)
MEIER WATKINS PHILLIPS PUSCH LLP
919 18th Street NW, Suite 650
Washington, DC 20006
(202) 318-3655
Email: andy.phillips@mwpp.com
Email: shannon.timmann@mwpp.com

Jeffrey A. Neiman (*Pro Hac Vice*)
Jason L. Mays (*Pro Hac Vice*)
MARCUS NEIMAN RASHBAUM & PINEIRO LLP
100 SE 3rd Ave., Suite 805
Ft. Lauderdale, Florida 33394
Email: jneiman@mnrlawfirm.com
Email: jmays@mnrlawfirm.com

Ricardo G. Cedillo (Texas Bar No. 04043600)
DAVIS, CEDILLO & MENDOZA, INC.
755 E. Mulberry Ave., Ste. 250
San Antonio, TX 78212
(210) 822-6666
Email: rcedillo@lawdcm.com

*Counsel for Plaintiff Logan Paul*

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(G), I certify that Plaintiff conferred with Defendants on April 9, 2025 regarding the foregoing Motion. Defendants persisted in refusing to produce communications with sources who provided information regarding Plaintiff's good-faith intentions, or lack of bad-faith intentions, with respect to CryptoZoo, as well as any documents, notes, drafts, or outtakes in Defendants' possession that reflect upon Defendants' understanding and knowledge as to Plaintiffs good-faith intentions or lack of bad-faith intentions.

Date: April 9, 2025                                   /s/ *Andrew C. Phillips*

## CERTIFICATE OF SERVICE

I hereby certify that, on the April 9, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record who are deemed to have consented to electronic service.

/s *Andrew C. Phillips*