IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

SAN ANTONIO DIVISION

| | |
|---|---|
| LOGAN PAUL,<br><br>         *Plaintiff*,<br><br>v.<br><br>STEPHEN FINDEISEN AND COFFEE BREAK PRODUCTIONS LLC D/B/A COFFEEZILLA,<br><br>         *Defendants*. | Civil Action No. 5:24-cv-00717 |

**RESPONSE TO DEFENDANTS' OBJECTION TO THE REPORT AND
RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE**

  The sole question presented by Defendants' Objection is whether "scam" is capable of being defamatory—*i.e.*, capable of asserting a fact, like an accusation of fraud. Defendants contend that "scam" can never be defamatory because it lacks a verifiable meaning. They assert that Magistrate Judge Bemporad's Report and Recommendation ("R. & R.") concluding otherwise is unprecedented.

  In truth, it's Defendants' position that is unprecedented. One court after another has observed that "scam" has both a literal and figurative meaning, and that whether it is capable of being defamatory depends on which meaning is conveyed—a question that can be answered only by considering the context in which the term appears. Every precedent Defendants cite reflects that commonsense proposition.

  In their Objection, however, Defendants expressly waive any argument about context. Their whole basis for objecting is that, in their view, "scam" is categorically non-defamatory because it can *never* be understood to assert facts. Magistrate Judge Bemporad's thorough and

1

well-reasoned R. & R., scores of precedents from Texas and all over the country, and, most of all, basic principles of English usage all show why Defendants are dead wrong.

## LEGAL STANDARD

The applicable legal standard cuts squarely against Defendants. Although the Court engages in *de novo* review of any part of a magistrate judge's R. & R. to which a party specifically objects, the operative standard in this proceeding is the one governing motions under Rule 12(c), which, in turn, is the same standard that governs motions under Rule 12(b)(6). *See Magee v. Reed*, 912 F.3d 820, 822 (5th Cir. 2019); *Baksic v. Ethicon*, 659 F. Supp. 3d 763, 767 (W.D. Tex. 2023). Motions under Rule 12(b)(6) "are 'viewed with disfavor and rarely granted.'" *Hodge v. Engleman*, 90 F.4th 840, 843 (5th Cir. 2024).

Under Rule 12, a court's role in assessing falsity is narrowly circumscribed. Whereas it is a question of law for the court whether a challenged statement is reasonably susceptible of a defamatory interpretation—*i.e.*, an interpretation implying a provably false assertion of actual fact—it is for the jury, not the court, to determine whether such an interpretation was in fact conveyed. *Raymer v. Doubleday & Co., Inc.*, 615 F.2d 241, 246 (5th Cir. 1980); *Andrews v. Am. Nat. Red Cross, Inc.*, 176 F. Supp. 2d 673, 699 (W.D. Tex. 2001). Put differently, "if a statement is susceptible of different constructions, [even] one of which is defamatory, resolution of the ambiguity is a question of fact for the jury." *Flowers v. Carville*, 310 F.3d 1118, 1128 (9th Cir. 2002); *see also Turner v. KTRK Telev., Inc.*, 38 S.W.3d 103, 114 (Tex. 2000) ("when a publication is of ambiguous or doubtful import, the jury must determine its meaning"); Restatement (Second) Torts § 614.

## ARGUMENT

Defendants' sole argument is that "scam" cannot be understood as asserting facts. But courts around the country—including in the very cases on which Defendants rely—hold otherwise,

in keeping with a fundamental principle of English usage: Like most words, "scam" can take on a literal or figurative meaning, depending on the context in which it is used. The phrase "X is a scam" may not be susceptible of verification when "scam" is used figuratively, as a synonym for "rip-off" or "bad deal." But the phrase "X is a scam" is susceptible of verification when "scam" is used literally, as a synonym for "fraud" or "con." What meaning a reasonable listener would comprehend depends entirely on context.

Defendants, however, expressly deny making any argument based on context—likely because the context here shows that a reasonable person could readily understand Defendants' "scam" assertions as factual. Instead of addressing that context, Defendants persistently cherry-pick quotations from out-of-circuit precedents, hoping to show that "scam" can only ever be used figuratively. That argument lacks foundation and contravenes basic English usage. The R. & R. correctly rejected it, and this Court should do likewise.

A.  **"Scam" Can Be a Factual Assertion, Depending on Context.**

"Scam," like so many words, "has both a literal and figurative meaning and whether it is capable of being defamatory depends on which meaning is intended, a question that can be answered only by considering the context in which the term appears." *Dilworth v. Dudley*, 75 F.3d 307, 310 (7th Cir. 1996) (Posner, J.). The figurative meaning of "scam"—denoting a rip-off or bad deal—often (but not always) expresses an opinion; the literal meaning—accusing someone of purposefully defrauding, conning, or swindling his victims—typically asserts a fact capable of being proven false.[1] Defendants themselves tacitly acknowledge that "scam" can assert a provable

---

[1] *See Scam*, Merriam-Webster (last visited Apr. 22, 2025), www.merriam-webster.com/dictionary/scam ("to deceive and defraud"); *Scam*, Collins Dictionary (last visited Apr. 22, 2025), www.collinsdictionary.com/us/dictionary/english/scam ("If someone scams a person or organization, they deceive them in order to get something valuable from them, especially money."); *Scam*, Cambridge Dictionary (last visited Apr. 22, 2025), dictionary.cambridge.org/us/dictionary/english/scam ("to trick someone into giving you money or

3

fact when, in their Objection, they expressly reserve the right to prove that their "scam" accusations were true. (*See* Obj. at 9 n.1. [Dkt. 78].)

That "scam" can assert a fact is not just a basic principle of English usage; it is an established matter of law. One court after another has recognized that "scam" can be a factual assertion, depending on context. *E.g.*, *Dilworth*, 75 F.3d at 310; *Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*, 194 F. Supp. 3d 263, 284 (S.D.N.Y. 2016) (statements charging that plaintiff "is engaged in a deliberate and fraudulent scam" were actionable because they "could reasonably be understood as assertions of objectively verifiable facts"); *Kumaran v. Brotman*, 247 Ill. App. 3d 216, 228 (1993) ("[T]he word 'scam' has a precise core of meaning for which a consensus understanding exists, namely, swindle, and it is verifiable by reviewing the evidence in plaintiff's cases to discern whether the cases were *bona fide* or bogus."); *Sunshine Sportswear & Elecs., Inc. v. WSOC Telev., Inc.*, 738 F. Supp. 1499, 1506 (D.S.C. 1989) ("scam" has an "ascertainable meaning and can be identified as either true or false."); *Shadle v. Nexstar Broad. Grp., Inc.*, No. 13-cv-2169, 2014 WL 3590003, at *5 (M.D. Pa. July 21, 2014) (holding that "scam" was capable of defamatory meaning in context of article describing plaintiff's business operations). That is because the literal meaning of "scam" imputes a corrupt and dishonorable motive, and the dominant rule, including in Texas, is "that the imputation of a corrupt or dishonorable motive in connection with established facts is itself to be classified as a statement of fact." *Bentley v. Bunton*, 94 S.W.3d 561, 583 (Tex. 2002).

Defendants posit that no court "in Texas or the Fifth Circuit has analyzed whether the specific term 'scam' has an objective, verifiable meaning." (Obj. at 9. [Dkt. 78].) That is wrong.

---

giving you some advantage, in a dishonest and often illegal way," or, as a noun, "a dishonest or illegal plan or activity").

4

Courts in Texas have repeatedly held that "scam" can be a provably false factual assertion, so as to be actionably defamatory.

- In *Turner v. KTRK Television, Inc.* 38 S.W.3d 103, 109 (Tex. 2000), the Texas Supreme Court weighed a defamation claim based on a broadcast charging a mayoral candidate with being "involved in a multi-million-dollar insurance scam." The Court held "that the broadcast as a whole was false and defamatory." *Id.*

- In *Dolcefino v. Chaudhary*, No 14-22-00724-CV, 2023 WL 7141149, at *10 (Tex. App. Oct. 31, 2023), the court considered the statements "I really think this guy is a sham" and "this is making sure that he doesn't scam the Houston immigrant community any more than he already has." The court concluded that the statements were actionable because they "express[ed] that [the defendant] scammed [the plaintiff,] specifically," and were therefore "susceptible to verification." *Id.*

- In *Allied Marketing Group, Inc. v. Paramount Pictures Corp.*, 111 S.W.3d 168, 176 (Tex. App. 2003), the court held that a broadcast segment charging the plaintiff with operating a "sweepstakes scam" could be actionably defamatory. The court determined that, in the context of the underlying segment, the "scam" charge could be reasonably interpreted as conveying the verifiable assertion that the plaintiff's company "was engaging in a fraudulent activity" and that it "was a sham company that 'con men' created for the purpose of engaging in sweepstakes scams." *Id.*

- In *Dahlstrom v. Moore*, 2008 WL 245033, at *3 (E.D. Tex. Jan. 29, 2008), the court held that the plaintiff "stated a claim for libel and slander" based on allegations that he was a "scam artist."

5

- In *Wiswell v. VerticalScope, Inc.*, No. A-11-CA-737-SS, 212 WL 13136295, at *4 (W.D. Tex. Aug. 1, 2012), another judge of this Court held that an accusation that the plaintiff was "scamming" customers was "a statement capable of defamatory meaning," rather than a non-actionable opinion about customer service.[2]

The Texas case that may be most relevant to Defendants' Objection, though, is *Abercrombie v. Angela Hightower Enterprises, Inc.*, No. 07-20-00139-CV, 2021 WL 1538251 (Tex. App. Apr. 19, 2021). There, too, the court recognized that the word "scammers" could be "verifiable fact or opinion," depending on context. *Id.* at *3. Even more notably, the Court expressly rejected the very argument Defendants raise here: that a court may properly assess "both the defamatory nature of the purported utterance and its status as fact or opinion through the lens of the individual word and phrase found objectionable, not through that of the entire publication." *Id.* Words like "scam" are not inherently expressions of fact or opinion; ascertaining their meaning requires evaluating the entire context in which they appear.

Defendants nevertheless assert that "scam" can never be a factual assertion, and that the Court must grant their motion without even considering the context of and for Defendants' publications. Not only is that proposition contrary to basic tenets of English usage and Texas law, but it is also contrary to the cases on which Defendants themselves rely. Those cases repeatedly emphasize that words like "scam" have multiple meanings and that which meaning applies in a case depends on context. In *Safex Foundation, Inc. v. Safeth, Ltd.*, 531 F. Supp. 3d 285, 312

---

[2] Other cases, involving synonyms of "scam," point in the same direction. As Defendants acknowledge, for instance, Texas courts have repeatedly held that allegations that an enterprise was "Ponzilike" or "ponzi-esque" can be verifiable factual assertions, even though such terms could also be used figuratively. *See Bass v. United Dev. Funding, L.P.*, No. 05-18-00752-CV, 2019 WL 3940976, at *18-19 (Tex. App. Aug. 21, 2019); *In re Nw. Senior Housing Corp.*, No. 22-30659-MLV11, 2024 WL 2822148, at *7 (Bankr. N.D. Tex. June 3, 2024).

(D.D.C. 2021), for example, the court held that certain defendants' accusations of "a scam" had "a clear factual connotation, namely that Safex is an exit scam." As used in that case, the statements were non-actionable, not because "scam" is inherently incapable of being a factual assertion, but because record evidence in the case inescapably conveyed that the defendants used "scam" as a "kind of 'interpretation' of 'ambiguous materials.'" *Id.* at 312-13. Likewise, in *RainSoft v. MacFarland*, 350 F. Supp. 3d 49, 58 (D.R.I. 2018), the court expressly noted the "many meanings of the word 'scam.'" The defendant's particular use of "scam" was non-actionable, the court decided, because the contexts of the defendant's underlying posts unambiguously showed that the defendant had used "scam" metaphorically. *Id.*

Even *McCabe v. Rattiner*, 814 F.2d 839 (1st Cir. 1987)—a decision that pre-dates the advent of the modern fact-opinion distinction, *see Milkovich v. Loraine Journal Co.*, 497 U.S. 1 (1990)[3]—emphasizes the primacy of context in clarifying the meaning of "scam." The decision begins by highlighting the need for "an approach that analyzes the alleged defamation in the context of the article in which it appears along with the larger social context to which it relates." *McCabe*, 814 F.2d at 842. The opinion then recognizes that "some connotations of ['scam'] may encompass criminal behavior," even though "others do not." *Id.* And then, after the one and only line from the *McCabe* decision that Defendants cite in their Objection, the opinion undertakes an extensive, multi-paragraph analysis of the underlying article to show that the context in which the defendant used "scam" did not allow reasonable readers of the article to ascribe it a particular factual meaning. *McCabe*, 814 F.2d at 843.

Contra Defendants, *McCabe* does not stand for a blanket proposition that "scam" can never be a factual assertion. It stands for a much more limited (and correct) proposition: that, when

---

[3] *See also* 1 R. Smolla, *New world after* Milkovich, Law of Defamation § 6:2 (2d ed.).

context does not indicate that the word "scam" could reasonably be given its literal meaning, the word "scam" is generally not actionably defamatory. *Id.* at 842-43. That narrow rule from the *McCabe* decision is irrelevant here because in this case, unlike in *McCabe*, the context of the underlying publications could readily lead readers to believe that Defendants used "scam" literally—for reasons the R. & R. addressed at length. (R. & R. 12-15 [Dkt. 74].) Several other federal courts have distinguished *McCabe* on exactly that basis. *E.g.*, *Dio Magna LLC v. Pongnon*, No. 21-cv-4671, 2022 WL 22911393, at *8-9 (E.D.N.Y. Sept. 26, 2022); *Russell v. Railey*, No. 08-cv-2468, 2012 WL 1190972, at *4 n.8 (D. Md. Apr. 9, 2012); *Alexander Binzel Corp. v. Nu-Tecsys Corp.*, No. 91-cv-2092, 2000 WL 310304, at *6 (N.D. Ill. Mar. 24, 2000).

Defendants' contention—that "scam" has only a figurative meaning, such that it can never plausibly assert fraud or some other fact—is wrong as a matter of language and as a matter of law, and is contradicted by Defendants' own favorite cases, which recognize that "scam" can have a factual meaning in the appropriate context. Because there are contexts in which an accusation of "scam" amounts to a factual assertion, Defendants' argument to this Court fails and their Objection must be denied.

**B.     Taking Defendants' Statements in Context, Reasonable People Could—And Did—Understand Them to Assert Facts.**

Although the meaning of "scam" almost invariably depends on context, Defendants make no argument about context. Indeed, they expressly eschew such an argument, confining their Objection only to the contention that "scam" is categorically incapable of a defamatory meaning. (Obj. at 13. [Dkt. 78].)

Because Defendants expressly declined to raise an argument about context, they've waived it. *See United States v. Tinghui Xie*, 942 F.3d 228, 237 (5th Cir. 2019) ("Arguments not briefed are waived."); *Tradewinds Envt'l Restoration, Inc. v. St. Tammany Park, LLC*, 578 F.3d 255, 260

n.3 (5th Cir. 2009) (argument not raised in opening brief is waived); *Nevarez v. Nevarez*, 664 F. Supp. 3d 680, 698-99 (W.D. Tex. 2023) (party waives an argument by failing to brief it). Thus, if the Court finds—as it must—that "scam" can have a factual meaning in at least some contexts, that spells the end of Defendants' Objection because Defendants have not carried their burden of proving that no reasonable person could interpret their use of "scam" as having that factual meaning.

But even if Defendants had made an argument about context, it would not change the result here because, as the R. & R. thoroughly explains, the context in this case could readily lead a reasonable person to treat Defendants' "scam" assertions as conveying verifiable facts. (R. & R. at 12-15 [Dkt. 74].) In addressing context, courts consider not just the individual word or phrase found objectionable, but the entire publication, including the nature and identity of the publisher, and the circumstances in which the publication was made. *New Times, Inc. v. Isaacks*, 146 S.W.3d 144, 159 (Tex. 2004); *W. Marketing, Inc. v. AEG Petrol., LLC*, 616 S.W.3d 903, 919 (Tex. App. 2021). In this case, that entire context overwhelmingly demonstrates that Defendants' use of "scam" could reasonably have been understood as factual.

To begin, the record shows that Defendants present themselves to viewers and readers as hard-hitting, serious investigative journalists committed to exposing real fraud and other business misconduct. (Compl. ¶ 15 [Dkt. 1].) Global publications, like *The New Yorker*, have touted Defendants' journalistic bona fides. (R. & R. at 12-13 [Dkt. 74].) Defendants themselves have, in this litigation, declared that they are "widely known for investigative journalism related to cryptocurrency scams," such that they are a "powerful independent news source … cataloguing and exposing some of the biggest instances of alleged fraud in the crypto industry." (Mot. at 3 [Dkt. 62-1].) That context is powerful evidence that audience members would understand

Defendants' use of "scam" in a literal and factual sense, given the many cases holding that audience members are more likely to interpret statements as factual when they are presented as news. *E.g.*, *Klentzman v. Brady*, 312 S.W.3d 886, 908 n.22 (Tex. App. 2009) (reasonable reader of article would perceive defamatory statements in it as factual because the article "was presented to the public as a news story"); *Yiamouyiannis v. Thompson*, 764 S.W.2d 338, 341 (Tex. App. 1988) (statement more likely to be understood as factual assertion if presented as "'hard' news").

Defendants likewise positioned their reporting on Paul and the CryptoZoo venture as serious, fact-based journalism, not mere opinion. Defendants' defamatory publications built on and continued a series of high-profile video reports Defendants had published about CryptoZoo. (Dkt. 1 ¶¶ 70-97.) At the outset of that video series, Defendants claimed that their "high effort investigation" of CryptoZoo was "a year in the making," and promised that Defendants would present viewers with the "truth" about "who's to blame" for CryptoZoo. (*Id.* ¶¶ 71, 84.) As the R. & R. correctly observed, "an objectively reasonable reader would consider the two videos at issue in this case in the context of the previous three-part investigative series, since the videos are continuations of that series, and the X post directly refers to a video in which Plaintiff thanked [Defendant] Findeisen for that series." (R. & R. at 13 [Dkt. 74] (citing *Scripps NP Operating, LLC v. Carter*, 567 S.W.3d 781, 790 (Tex. App. 2016), and *Diocese of Lubbock v. Guerrero*, 591 S.W.3d 244, 251 (Tex. App. 2019)). Given how much effort Defendants invested in characterizing the video series as factual, investigative reporting, it follows that a reasonable viewer would understand Defendants' posts and videos building on the series to be similarly factual.

The specific context in which Defendants leveled their "scam" accusations further shows that a reasonable audience member could understand the accusations as factual assertions of illegal acts, rather than mere opinion. In the underlying publications, for instance, Defendants declared

10

that Paul was "guilty" of operating a scam, that his efforts at refunding CryptoZoo NFT holders were an "admission" of guilt; and that he was being sued by "the people he scammed." Defendants' repeated insinuations that the CryptoZoo venture had landed Paul on the wrong side of the law only bolsters a reading of Defendants' "scam" comments as asserting verifiable illegality, rather than bare opinion.

Finally, the evidence of actual viewer reactions to Defendants' "scam" allegations shows not only that reasonable people *could* understand the allegations to accuse Paul of verifiable misconduct—including criminal fraud—but that people *did, in fact*, understand the "scam" allegations that way. As numerous courts have recognized, real-world responses are helpful evidence of how reasonable people could understand an allegedly defamatory statement. *E.g.*, *Allied Mktg. Grp., Inc.*, 111 S.W.3d at 176 (highlighting that "Allied presented evidence that a viewer did perceive that Sweepstakes Clearinghouse was engaging in the scam"); *Moldovan v. Polito*, No. 05-15-01052-CV, 2016 WL 4131890, at *10 (Tex. App. Aug. 2, 2016) (reader "comments lend support to our previous conclusions regarding the gist of the article"); *Miller v. Sawant*, 18 F.4th 328, 339 (9th Cir. 2021) (allegations regarding real-world audience responses sufficed to show that defamatory statements could reasonably have been understood to refer to plaintiffs). Here, the record shows that many of Defendants' fans understood Defendants' "scam" comments not just to assert verifiable facts, but as allegations of full-blown criminal misconduct. In his Complaint, for instance, Paul highlights that audience members left comments on Defendants' posts describing him as a "scumdog millionaire," a "thief," a "scammer," "dishonest," a "scumbag" who "needs jailtime," and a "guy who scammed his fans." (Dkt. 1 ¶¶ 134, 139, 145.) Audience members also left comments accusing Paul of "crimes," "grift," and "fraud," saying that he "exploited people," and that he should face "criminal charges." (*Id.*) From those comments, it

11

is clear that reasonable people could fairly interpret Defendants' "scam" accusations as factual assertions of criminal wrongdoing—*because that is exactly how real-world audience members interpreted them*.

All that context evidence points up the difference between this case and the ones Defendants highlighted for Magistrate Judge Bemporad (but which they do not mention in their brief to this Court). Defendants' explicit accusations of wrongdoing, published as investigative reporting as part of a "high-effort investigation" that was "a year in the making," cannot automatically be brushed aside as a mere rhetorical flourish or a speculative assertion made in the course of a heated debate. *See Campbell v. Clark*, 471 S.W.3d 615, 627 (Tex. App. 2015) (distinguishing politically influenced, exaggerated speech from serious allegations of wrongdoing). Defendants held themselves out as a legitimate news operation dedicated to sharing meticulously investigated facts with their audience, and that is exactly how a reasonable audience member could have construed Defendants' "scam" allegations.

## CONCLUSION

For all of the foregoing reasons, Defendants' Objection should be denied.

April 23, 2025

/s *Andrew C. Phillips*
Andrew C. Phillips (*Pro Hac Vice*)
Shannon B. Timmann (*Pro Hac Vice*)
MEIER WATKINS PHILLIPS PUSCH LLP
919 18th Street NW, Suite 650
Washington, DC 20006
(202) 318-3655
Email: andy.phillips@mwpp.com
Email: shannon.timmann@mwpp.com

Jeffrey A. Neiman (*Pro Hac Vice*)
Jason L. Mays (*Pro Hac Vice*)
MARCUS NEIMAN RASHBAUM & PINEIRO LLP
100 SE 3rd Ave., Suite 805

Ft. Lauderdale, Florida 33394
Email: jneiman@mnrlawfirm.com
Email: jmays@mnrlawfirm.com

Ricardo G. Cedillo (Texas Bar No. 04043600)
DAVIS, CEDILLO & MENDOZA, INC.
755 E. Mulberry Ave., Ste. 250
San Antonio, TX 78212
(210) 822-6666
Email: rcedillo@lawdcm.com

*Counsel for Plaintiff Logan Paul*

**CERTIFICATE OF SERVICE**

    I hereby certify that, on the April 23, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record who are deemed to have consented to electronic service.

                                           /s *Andrew C. Phillips*