**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS**

**SAN ANTONIO DIVISION**

|  |  |
|---|---|
| LOGAN PAUL, | |
| *Plaintiff*, | |
| v. | Civil Action No. 5:24-cv-00717 |
| STEPHEN FINDEISEN AND COFFEE BREAK PRODUCTIONS LLC D/B/A COFFEEZILLA, | |
| *Defendants*. | |

**PLAINTIFF LOGAN PAUL'S RESPONSE IN OPPOSITION TO DEFENDANTS'
<u>MOTION TO TRANSFER AND STAY PROCEEDINGS</u>**

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ..................................................................................... 2

**INTRODUCTION** .................................................................................................... 5

**BACKGROUND** ....................................................................................................... 7

**LEGAL STANDARD** .............................................................................................. 15

**ARGUMENT** ........................................................................................................... 16

    A.   DEFENDANTS' MOTION IS UNTIMELY. ............................................................ 16

    B.   THIS CASE DOES NOT "SUBSTANTIALLY OVERLAP" WITH THE *HOLLAND* LITIGATION. ...... 17

    C.   COMPELLING CIRCUMSTANCES WEIGH HEAVILY AGAINST A TRANSFER AND STAY. .......... 20

**CONCLUSION** ........................................................................................................ 24

## TABLE OF AUTHORITIES

**Cases**

*AEI Life, LLC v. Lincoln Benefit Life Co.*,

305 F.R.D. 37, 45 (E.D.N.Y. 2015); ........................................................................... 21

*Young v. Trump*,

506 F. Supp. 3d 921, 933 (N.D. Cal. 2020) ............................................................... 21

*Buckalew v. Celanese, Ltd.*,

No. 05-CV-00315, 2005 WL 2266619 (S.D. Tex. Sept. 16, 2005) ........................... 18

*CHU de Quebec — Universite Laval v. Dreamscape Dev. Grp. Holdings*,

No. 4:21-CV-00182, 2023 WL 2695092 (E.D. Tex. Mar. 29, 2023) ........................ 17

*FirsTier Bank, N.A. v. G-2 Farms*,

No. 4:95-CV-03118, 1996 WL 539217 (D. Neb. Mar. 11, 1996) ...................... 16, 24

*Garmin Ltd. v. TomTom, Inc.*,

No. 06-CV-00338, 2007 WL 708587 (E.D. Tex. Mar. 5, 2007) ............................... 16

*Genetech v. Eli Lilly & Co.*,

998 F.2d 931, 937 (Fed. Cir. 1993) .......................................................................... 16

*Hart v. Donostia LLC*,

290 F. Supp. 3d 627, 633 (W.D. Tex. 2018)............................................................. 17

*Henry v. Home Depot, USA, Inc.*,

No. 14-CV-04858, 2016 WL 4538365 (N.D. Cal. Aug. 31, 2016) ........................... 22

*Holland v. CryptoZoo*,

23-CV-00110-ADA-RCG (W.D. Tex.) ......................................................................... 5

*IBEW-NECA Sw. Health & Benefit Fund v. Duvall Elec.*,

    *LLC*, 2011 WL 711005 (N.D. Tex. Feb. 28, 2011) ............................................................ 17, 23

*In re Murray*,

    3:20-BK-01587, No. 20-AP-00032, 2023 WL 310344 (Bankr. S.D. Miss. Jan. 18, 2023) ...... 23

*In re Toyota Hybrid Brake Litig.*,

    No. 4:20-CV-00127, 2020 WL 6161495 (E.D. Tex. Oct. 21, 2020) .................................. 17, 25

*Int'l Fid. Ins. Co. v. Sweet Little Mexico Corp.*,

    665 F.3d 671, 677–78 (5th Cir. 2011) ...................................................................................... 15

*Jones v. Xerox Commercial Solutions, LLC*,

    No. 13-CV-00650, 2013 WL 3245957 (S.D. Tex. June 26, 2013) ........................................... 16

*LifeNet, Inc. v. U.S. Dep't of Health & Human Servs.*,

    617 F. Supp. 3d 547, 556 (E.D. Tex. 2022) ............................................................................. 15

*Moto Photo, Inc. v. K.J. Broadhurst Enters., Inc.*,

    No. 01-CV-02282, 2003 WL 298799 (N.D. Tex. Feb. 10, 2003) ............................................ 22

*Nitride Semiconductors Co., Ltd. v. Lite-On Tech. Corp.*,

    No. 21-CV-00183, 2022 WL 4111885 (W.D. Tex. Sept. 8, 2022) ........................................... 16

*Peteet v. Dow Chem. Co.*,

    868 F.2d 1428, 1436 (5th Cir. 1989) ....................................................................................... 16

*Ravgen, Inc. v. Lab. Corp. of Am. Holdings*,

    No. 20-CV-00969, 2022 WL 272115 (W.D. Tex. Jan. 28, 2022) ............................................. 16

*Samsung Elec. Co., Ltd. v. Rambus, Inc.*,

    386 F. Supp. 2d 708, 724–25 (E.D. Va. 2005) ........................................................................ 24

*Stannard v. Nat'l Indoor RV Ctrs., LLC,*

    No. 18-CV-00366, 2018 WL 3608560 (E.D. Tex. July 27, 2018) .......................................... 19

*TravelPass Grp., LLC v. Caesars Entm't Corp.,*

    No. 5:18-CV-00153, 2019 WL 3806056 (E.D. Tex. May 9, 2019) .................................. 19, 20

Plaintiff Logan Paul files this Response in Opposition to the Motion to Transfer and Stay Proceedings (the "Motion to Transfer and Stay") brought by Defendants Stephen Findeisen and Coffee Break Productions, LLC d/b/a Coffeezilla on April 15, 2025. [Dkt. No. 82]. Plaintiff submits that for the reasons set forth herein, the "first-to-file" rule underlying Defendants' Motion is inapplicable, and in any event compelling circumstances weigh decidedly against the requested transfer and stay, and as such the Court should exercise its discretion to deny the Motion.

## INTRODUCTION

Defendants' Motion to Transfer and Stay is their latest and most desperate attempt to grind this case to a halt and avoid accountability for the immense reputational harm caused by the false statements underlying Plaintiff's libel claims, statements in which Defendant Findeisen repeatedly accused Plaintiff of orchestrating a financial scam in connection with a troubled blockchain-based game called CryptoZoo. Invoking the "first-to-file" rule, Defendants argue there is "substantial overlap" between this case and a putative class action pending in the Austin Division of this District, *Holland v. CryptoZoo*, 23-CV-00110-ADA-RCG (W.D. Tex.). Given this supposed overlap, Defendants ask that this case be transferred to the *Holland* Court for a determination of whether this case should be abated or consolidated. Defendants also ask that this case be stayed pending a ruling on whether substantial overlap exists. Fortunately, this Court has the discretion to deny Defendants' baseless Motion and put an end to their gamesmanship.

Defendants' Motion is brought almost an entire year into this case and should be denied as untimely for that reason alone. Indeed, Defendants spent the past ten months as full and active participants in this case—negotiating a proposed scheduling order, serving and responding to multiple rounds of discovery requests, issuing several dozen non-party subpoenas, preparing a privilege log of 16,000 entries, conducting depositions, conferring about and litigating discovery

disputes, challenging hundreds of Plaintiff's confidentiality designations under a negotiated Protective Order, retaining a testifying expert, and recently filing what they had hoped would be a case-dispositive Motion for Judgment on the Pleadings. In all that time, Defendants never once raised—even informally—a supposed concern about the propriety of this case proceeding in tandem with the *Holland* litigation, which they have known about since day one. On the day this case was filed, *Holland* had already been pending for *nearly a year and a half*. What's more, discovery in this case has revealed that Defendant Findeisen is a consulting expert for the *Holland* plaintiffs; he was engaged by the plaintiffs' counsel before that case had even been filed, making Defendants' delay even more inexcusable.

The reality is that Defendants are improperly treating the first-to-file rule as a "break glass in case of emergency" option to try and pause and push the re-set button on this case. As discussed herein, at one point in time, several Government agencies were investigating the circumstances surrounding the failure of CryptoZoo. With Defendant Findeisen having prompted those investigations (it appears single-handedly), Defendants had hoped that the Government would see fit to intervene and move to stay this case. When that did not happen, and when the investigations themselves instead fizzled out and went nowhere—likely because Findeisen had misled the Government into opening the investigations in the first place based on the same unsubstantiated scam accusations at issue here—Defendants filed a Motion for Judgment on the Pleadings and asked the Court to stay all discovery pending its ruling. It was only when the Magistrate Judge recently issued a Report and Recommendation in which he recommended that Defendants' Motion for Judgment be *denied*, and accordingly denied Defendants' request for a stay of discovery, that Defendants regrouped and concocted new grounds for seeking similar relief.

The first-to-file rule, however, is inapplicable here.   This case does not substantially overlap with *Holland* merely because Plaintiff's intent on CryptoZoo (*i.e.*, whether he intended to scam his fans) is an issue that could arise in both cases.   This case centers on libelous statements made by Defendant Findeisen *after Holland was already pending*.   Moreover, it is impossible to even identify a "core issue" in *Holland* given the number of claims and parties, and given that the case is still at the motion to dismiss stage and it is unclear which of the 27 causes of action alleged in the plaintiffs' scattershot pleading, if any, will even survive dismissal.   Even if this Court *does* find substantial overlap between the two cases, compelling circumstances exist that weigh heavily against applying the rule under the circumstances, including the untimeliness of the Motion and the strategic procedural maneuvering behind it, the significant procedural differences between the cases, the fact that this case is much further advanced, and the delay and resulting prejudice that would follow in the event the Motion is granted.   Simply put, Defendants' Motion is at odds with the interests of efficiency and sound judicial administration that the first-to-file rule is intended to promote, and as such the Motion should be denied.

## BACKGROUND

### *The CryptoZoo Project and Defendants' Three-Part Series*

In early 2021, Plaintiff had an idea for a blockchain-based game that he ultimately named CryptoZoo.   Plaintiff considered CryptoZoo his passion project, and he assembled a team that claimed to have the technical expertise to bring his idea to life.   In relevant part, this team included Eduardo ("Eddie") Ibanez, who was responsible for leading the game's development efforts, and Jake Greenbaum (a/k/a "Crypto King"), who was responsible for advising on the blockchain and cryptocurrency-related aspects of the game, including the creation of an in-game currency called "ZOO Tokens." Regrettably, the project never came to full fruition, largely because of the

incompetence and deceit of Ibanez and Greenbaum. Ibanez repeatedly misled Plaintiff about the progress of the game's development, and Greenbaum proved more interested in trying to profit from the unauthorized, behind-the-scenes sale of Tokens than in actually helping to build a legitimate game. Plaintiff and his team spent months from the fall of 2021 to the end of 2022 trying to fix the development quagmire that Ibanez had created—which included spending large sums to hire new development teams—but the problems ultimately proved insurmountable.

At the end of 2022, Defendants released a three-part YouTube series about CryptoZoo that repeatedly and falsely accused Plaintiff of having orchestrated the entire project as a scam. Defendant Findeisen titled each of the three parts as follows: "Investigating Logan Paul's Biggest Scam," "The Biggest Fraud in Logan Paul's Scam," and "Ending Logan Paul's Biggest Scam." The series was immensely popular and garnered significant publicity, and to date the three videos have been viewed more than 24 million times. Plaintiff's initial reaction to the series was one was one of hurt and anger given that he had the best of intentions on the project, but he tabled his frustration and instead focused his energy on a first-of-its kind initiative to buy back CryptoZoo NFTs from disappointed holders—even though he had not personally received the funds that were used to purchase the NFTs in the first place. Plaintiff ultimately spent more than $1 million of his own money to make the buyback a success. Findeisen complimented Plaintiff at the time of his buyback announcement in January 2023, expressing his belief that Plaintiff was not a "bad actor" and acknowledging that he had simply surrounded himself with the wrong people.

But Defendant Findeisen's popularity had soared on the back of his scam allegations against Plaintiff, and he was committed to ensuring that popularity and all of its attendant benefits would continue. In June 2023, six months after Plaintiff announced the buyback, Findeisen renewed his attacks against Plaintiff. On June 29, 2023, June 30, 2023, and January 5, 2024,

Findeisen published the respective false statements underlying Plaintiff's libel claims in this case, in each of which Findeisen continued to assert that CryptoZoo was a scam and a fraud conceived of and carried out by Plaintiff. Plaintiff filed this lawsuit in June 2024 to clear his name and hold Defendants accountable for the ongoing harm caused by these knowingly false statements.

### *Government Investigations into CryptoZoo*

Relevant to the false and misleading narrative that Defendants advance in their Motion to Transfer and Stay, on October 23, 2022, several months before the release of his YouTube series, Findeisen contacted the United States Government, including the SEC, about CryptoZoo. Findeisen prepared for the Government a PowerPoint presentation (or as he called it, a "whistleblower report") that he claimed was "an encapsulation of the *entire* CryptoZoo scheme" his investigation had uncovered. *See* **Exhibit 1** (emphasis added). As with the titles he ultimately settled upon for his series, and as with the libelous statements at issue in this case, Findeisen set the tone and put the title of his presentation to work by accusing Plaintiff of wrongdoing on the project: "*Popular Influencer Logan Paul* **Defrauds** *Fans with 'Blockchain Play-to-Earn Game' That Doesn't Work*." *Id.* (emphasis added). What Findeisen failed to disclose to the Government, however, was that nobody with any personal knowledge or involvement in the project had conveyed to Findeisen—ever—that Plaintiff had acted with bad intent; they had told him the exact opposite.

One striking example comes from one of Findeisen's interviews with Luciano ("Skip") Schipelliti, who was a longtime CryptoZoo community leader, and whose company BlockOps served as CryptoZoo's lead developer in 2022. On October 20, 2022—*i.e.*, just three days before Findeisen submitted his presentation to the Government falsely accusing Plaintiff of defrauding his own fans—the topic of Plaintiff's intent came up in Findeisen's discussion with Schipelliti.

Findeisen, speaking candidly and apparently without knowledge that the conversation was being recorded, mused as follows:

> There's this real sense that I get of like, and tell me if you kind of agree, this sense of incompetency . . . Part of it is like, part of it—**I think they [i.e., Plaintiff and his manager, Jeffrey Levin] in their heads want to have good intentions**, but they take on so many projects and so many different ideas, and Logan's constantly saying so many different things, that they literally can't do all of it.

Schipelliti responded in relevant part by agreeing with Findeisen's impression that Plaintiff and his manager "want[ed] to have good intentions":

> [W]e had always believed that they really did have good intentions. But we always used the word incompetence . . . . **Even up until right now, like I truly believe that Jeff really meant to do well with the project. Same with Logan [i.e., Plaintiff].** You could hear it in Logan's voice. In that, I think it was the only AMA that he had, back in like the first week of October [2021], you could hear in his voice that he really wants this project to be successful . . . . All that stuff that a lot of people probably think was him trying to hype people up to do a cash grab—I never think that that's what it was about. I think that they just meant well but had the wrong team working for them at the beginning and then I think they were just in the constant rat race of trying to band-aid everything up.

During Findeisen's investigation, he also spoke with a one-time associate of Ibanez who provided him with a group text message string between Plaintiff and the project's co-founders. In trying to convince his inside source to allow him to excerpt portions of that string in his YouTube series, Findeisen told his source that the portions he wanted to use were those in which Plaintiff and Greenbaum were fighting about Greenbaum blaming bots for trading activity involving the ZOO Token, an explanation that Plaintiff had found "hard to believe." Findeisen told his source that the exchanges provide "such important context because it shows that Jake [Greenbaum] was trying to pull a fast one as **the only one who truly understood crypto at the time**." Findeisen sent that message on October 27, 2022. But four days earlier he had omitted Greenbaum's name

altogether from his presentation to the Government about CryptoZoo, instead alleging that *Plaintiff* had "targeted unsophisticated investors" to defraud through the crypto project.

Even more revealing, Findeisen had performed an independent blockchain analysis and determined that Ibanez had *personally* made approximately $1.7 million and Greenbaum approximately $6 million from the surreptitious sale of ZOO Tokens—with Greenbaum disputing it was that amount but actually conceding to Findeisen that it was at least a "few million [dollars]." Findeisen had also learned through his analysis that neither Plaintiff nor his manager had *ever sold a single ZOO Token*.  Under these circumstances, one might wonder what portion of Findeisen's presentation to the Government focused on the apparent wrongdoing he had uncovered by Ibanez or Greenbaum.  The answer would be none: Findeisen made no mention of either Ibanez *or* Greenbaum in his "whistleblower report."  Nor did Findeisen convey to the Government in his presentation that there was no evidence that Plaintiff—the supposed *fraudster*—had profited from the project in any way, and that in fact his analysis tended to disprove any such notion.

Defendant Findeisen's presentation—by his own words "an encapsulation of the entire CryptoZoo scheme"—did not arise from a sloppy investigative effort; it appears to have been a deliberate attempt to advance a false narrative.[1]  The reason that Findeisen misled the Government so brazenly, of course, was that his goal was to prompt the Government to investigate and build cases against **Plaintiff, specifically**—whom he had never even spoken to about the project[2]—in order to further harm Plaintiff and, he hoped, ultimately claim credit and raise his own profile in the event the investigations resulted in criminal charges or civil penalties against him.  After all, it

---

[1]  The irony is that despite repeatedly accusing *Plaintiff* of wrongdoing without any basis, Title 18, United States Code, Section 1001 makes it a federal crime to make a "materially false, fictitious, or fraudulent statement or representation" to an agent or agency of the federal Government.

[2]  Plaintiff received his first email from Defendant Findeisen on December 24, 2022, *the day after Findeisen released the final part of his three-part series*.

would not raise his profile to claim credit for helping the Government hold *Ibanez or Greenbaum* accountable, or for that matter to focus his upcoming "exposé" on those two, because they were not public figures who could headline his features, drive traffic to his platform, increase the subscribership of his soon-to-be-launched Patreon account, and create revenue. Plaintiff, however, was a different story. Findeisen knew his audience despised Plaintiff, and he catered to that bias. They would not want to hear that Plaintiff was not a knowing participant in any "CryptoZoo scheme" that Findeisen uncovered.[3]

Findeisen's efforts were "successful" in that they resulted in the Government, including the SEC, running with his false scam allegations and opening investigations in early 2022, shortly after the release of his series. Plaintiff fully complied and cooperated with the Government's investigations. In fact, several years later, in March 2025, the SEC informed Plaintiff that its investigation of CryptoZoo had been closed, having decided to take no action against Plaintiff.[4] Any other Government investigations, should they even still exist, have been dormant for more than two years.

### *The* Holland *Litigation (the Claimed "First-Filed" Case)*

Contemporaneously with the release of his YouTube series, Defendant Findeisen coordinated with his attorney friend and fellow online influencer, non-party Thomas Kherkher,[5] to turn his reporting into a lawsuit. On February 2, 2023, approximately six weeks after Defendants

---

[3] As one of Defendant Findeisen's YouTube influencer peers recently opined to Plaintiff's counsel, Findeisen "does know his audience well and they don't like to hear someone not being labeled as the villain. . . . . I just think he (and many others) aren't incentivized to make someone look less guilty than they are or add nuance when it should be expressed, simply because their audience just wants the subject to be labeled as the villain."

[4] Defendants' Motion refers to the SEC also investigating another cryptocurrency project called Dink Doink. *See* Mot. at 4. Although Plaintiff disputes the extent of his connection to that project, the SEC informed Plaintiff at the same time that it had also closed its investigation into Dink Doink.

[5] Kherkher is a content creator who publishes videos on YouTube under his online persona, "Attorney Tom."

released the third and final part of their series, Kherkher filed the *Holland* litigation.  The operative First Amended Class Action Complaint in that case is brought on behalf of three putative class representatives and 137 individual plaintiffs who purchased CryptoZoo NFTs and ZOO Tokens. *See generally* Holland Litigation, Dkt. No. 81.  The 27-count Class Action Complaint asserts claims against Plaintiff and six co-defendants for fraud, fraudulent misrepresentation, negligence, unjust enrichment, civil conspiracy to defraud, aiding and abetting fraud, breach of express and implied contract, and violations of the federal RICO statute, Rules 10b-5 and Section 20(a) of the Securities Exchange Act, the Commodities Exchange Act, and consumer protection statutes of Arizona, California, Colorado, Florida, Iowa, Illinois, Massachusetts, North Carolina, New Jersey, Nevada, New York, Pennsylvania, and Texas.  Plaintiff and several of his *Holland* co-defendants filed motions to dismiss in late August and early September 2024, and those motions are pending.

### *Defendants' Motion to Transfer and Stay*

On April 15, 2025, ten months into this case, Defendants filed the Motion to Transfer and Stay that is now before the Court.  Defendants invoke the "first-to-file" rule and ask the Court to transfer the case to the *Holland* Court *and* stay the case pending a ruling on their Motion. Notwithstanding that the relief they seek turns on whether the issues in this case "substantially overlap" with the issues in *Holland*, Defendants devote the majority of their Motion to cherry-picking and distorting evidence in an attempt to convince the Court that Plaintiff is engaging in abusive litigation tactics through this lawsuit, and that as a result the Court should look past the untimeliness and inequity of the Motion grant it anyway.  But it is *Defendants* who are acting in bad faith and attempting to weaponize the legal process against *Plaintiff*, not the other way around.

Defendants start their Motion with a section titled "CryptoZoo investigations," in which they excerpt and highlight from Government documents issued to Plaintiff in relation to the

project.  Defendants do so *not* because Government investigations have some bearing on the first-to-file inquiry—they do not—but rather because they believe the very existence of investigations will tend to substantiate Defendant Findeisen's scam allegations in the eyes of the Court and also give credence to their narrative about the motivations behind this lawsuit.  But with the benefit of the above context, the investigations are best understood as evidence of the malice underlying the statements at issue in this case:  Defendants are citing *for validation* investigations that were, by all indications, a byproduct of their own CryptoZoo disinformation campaign against Plaintiff.

Defendants assert that this case was brought in order to circumvent the discovery stay in *Holland* and obtain discovery "against the Government," whatever that means. *See* Mot. at 1. Defendants' theory makes little sense.  It is unclear how Defendants believe any discovery that Plaintiff receives from Defendants in this case will help him in *Holland*.  The *Holland plaintiffs*, on the other hand, *are* likely beneficiaries of the discovery process unfolding here—because unknown to Plaintiff until recently, Findeisen was long ago engaged on their behalf as a consulting expert.  Moreover, Defendants' suggestion that Plaintiff is motivated to obtain discovery relating to the investigations is undermined by the fact that those investigations are closed and/or inactive, and it is *Defendants*—not Plaintiff—who have subpoenaed the Government for both documents and testimony.

Defendants also assert that this case was brought to "punish Coffeezilla" and "make him a cautionary tale to other critics." Mot. at 8.  The messages that Defendants cite in support of that claim are from shortly after Defendants' YouTube series was released and pre-date the libelous statements at issue in the case.  That said, even the cited messages reflect Plaintiff's conviction in the falsity of Defendants' portrayal of him as a scammer, and further reflect that in contemplating legal action back then, Plaintiff had been motivated by a desire for the public to have full

transparency into what *actually* happened with CryptoZoo in order to clear his name and hold Defendant Findeisen accountable for *actual* wrongdoing. *See, e.g.*, Mot. at Ex. D (Plaintiff acknowledging that if he brings a lawsuit "everyone will see what happened"); **Exhibit 2** (a portion of the same exchange as Ex. E to the Motion) (Plaintiff discussing how Findeisen knew there are "more clicks" if he accuses Plaintiff of wrongdoing, and thus "put out a hit piece" that was false "so he could enrich himself"); *id.* (Plaintiff explaining that he had been "trying to make [CryptoZoo] work" the entire time).  The messages do not reflect an improper motivation; they reflect the legitimate driving force behind *every* defamation case.

Simply put, Defendants' Motion invites the Court to look past the first-to-file standard and accept their false portrayal of Plaintiff's motivations and the merits of the case.  The Court should not do so.  As explained below, none of the relevant factors support Defendants' request for relief.

## LEGAL STANDARD

Under the "first-to-file" rule, a federal court may decline to hear a case when an earlier-filed case pending in a different federal court raises issues that "substantially overlap" with the issues in the second-filed case. *See Int'l Fid. Ins. Co. v. Sweet Little Mexico Corp.*, 665 F.3d 671, 677–78 (5th Cir. 2011).  "Where the overlap between the two suits is less than complete, the judgment is made case by case, based on such factors as the extent of the overlap, the likelihood of conflict, the comparative advantage and the interest of each forum in resolving the dispute." *Id.* (internal citation and quotation marks omitted).  "Even when there is substantial overlap, however, the second-filed court may nonetheless decline to apply the first-to-file rule based on 'compelling circumstances.'" *LifeNet, Inc. v. U.S. Dep't of Health & Human Servs.*, 617 F. Supp. 3d 547, 556 (E.D. Tex. 2022).  Exceptions to the first-to-file rule "are not rare, and are made when justice or expediency requires." *Garmin Ltd. v. TomTom, Inc.*, No. 06-CV-00338, 2007 WL 708587, *1 (E.D.

Tex. Mar. 5, 2007) (quoting *Genetech v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993)) (internal quotation marks omitted).  The burden is on the party invoking the rule to prove that its application is warranted. *Jones v. Xerox Commercial Solutions, LLC*, No. 13-CV-00650, 2013 WL 3245957, *2 (S.D. Tex. June 26, 2013).

## ARGUMENT

### A.  Defendants' Motion Is Untimely.

The Court should deny Defendants' Motion as untimely without even considering their arguments under the first-to-file rule.  "A party seeking transfer should not delay filing and must act with 'reasonable promptness.'" *Nitride Semiconductors Co., Ltd. v. Lite-On Tech. Corp.*, No. 21-CV-00183, 2022 WL 4111885, *1 (W.D. Tex. Sept. 8, 2022) (quoting *Peteet v. Dow Chem. Co.*,

 868 F.2d 1428, 1436 (5th Cir. 1989)).  Courts regard untimely motions to transfer with "extreme disfavor." *Ravgen, Inc. v. Lab. Corp. of Am. Holdings*, No. 20-CV-00969, 2022 WL 272115, at *2 (W.D. Tex. Jan. 28, 2022) (internal citation and quotation marks omitted).  Far from acting with reasonable promptness, Defendants waited approximately *ten months* to file their Motion, despite knowing about the *Holland* litigation and the supposed overlap between the cases since the day this case was filed. *See FirsTier Bank, N.A. v. G-2 Farms*, No. 4:95-CV-03118, 1996 WL 539217, *7 (D. Neb. Mar. 11, 1996) (denying motion to stay under the first-to file rule where the defendants had waited eleven months to file their motion, and reasoning that "defendants' failure to timely raise th[eir] motion" had "thwarted to a great extent" the objectives underlying the rule) (compiling cases); *cf. IBEW-NECA Sw. Health & Benefit Fund v. Duvall Elec., LLC*, 2011 WL 711005, *4

(N.D. Tex. Feb. 28, 2011) (denying an untimely motion to transfer and explaining the prejudice and judicial waste it would cause).[6]

The untimeliness of Defendants' Motion also constitutes a violation of the Local Rules. Pursuant to Local Rule CV-3(a), "[a]ll parties are required to advise the court of any related cases, through means of the Civil Cover Sheet or otherwise." At the outset of this case, Plaintiff indicated on his Civil Cover Sheet the absence of any related cases. *See* Dkt. No. 1-2. Defendants saw no reason to advise the Court otherwise—*e.g.*, through a Notice of Related Case, the Parties' Rule 26(f) Report, or any other filing—until the filing of their Motion; instead, they proceeded to litigate this case aggressively for almost an entire year. Now that they perceive a strategic benefit for changing course, Defendants have come to the conclusion that this case and *Holland* are not only "related," but "*more than* merely related," as the cases must be to support the application of the first-to-file rule. *In re Toyota Hybrid Brake Litig.*, No. 4:20-CV-00127, 2020 WL 6161495, *5 (E.D. Tex. Oct. 21, 2020) (emphasis added). "Denial of a motion as the result of a failure to comply with local rules is well within a district court's discretion," and the Court should deny Defendants' Motion on this basis, as well. *CHU de Quebec — Universite Laval v. Dreamscape Dev. Grp. Holdings*, No. 4:21-CV-00182, 2023 WL 2695092, *3 (E.D. Tex. Mar. 29, 2023).

**B. This Case Does Not "Substantially Overlap" with the *Holland* Litigation.**

In the event the Court is inclined to consider the merits of Defendants' Motion notwithstanding its tardiness, the Motion should nevertheless be denied because this case does not "substantially overlap" with the *Holland* litigation. As a threshold matter, although Defendants

---

[6] The court in *IBEW-NECA Southwest Health & Benefit Fund* considered a motion to transfer under 28 U.S.C. § 1404(a), not the first-to-file rule. However, courts in this District routinely use the § 1404(a) convenience factors in evaluating motions brought under the first-to-file rule, recognizing the overlap between those factors and both the substantial overlap analysis *and* the compelling circumstances analysis. *See, e.g.*, *Hart v. Donostia LLC*, 290 F. Supp. 3d 627, 633, n.2 (W.D. Tex. 2018) ("Accordingly, the Court considers the § 1404(a) convenience factors when deciding whether to apply the first-to-file rule.").

correctly observe that "[t]he first-to-file rule does not require identical parties," it is also true that "the fact that the parties are different cuts against an argument for substantial overlap." *Buckalew v. Celanese, Ltd.*, No. 05-CV-00315, 2005 WL 2266619, *3 (S.D. Tex. Sept. 16, 2005) (internal citation omitted). Here, Defendants are not parties to *Holland*; Plaintiff is the only party that is common to both cases. But in *Holland*, he is one of seven defendants, and the case has approximately *140 identified plaintiffs*.

According to Defendants, the cases substantially overlap because the "core issue" in both cases is "whether [Plaintiff] scammed his fans by promoting his CryptoZoo project and enticing fans to purchase Zoo Tokens and CryptoZoo NFTs." Mot. at 16. Although Plaintiff's intent with regard to CryptoZoo is *an* issue that could arise in both cases, it is hardly the core issue in *either* case. For one, it is impossible to identify a single, core issue in *Holland*, especially since it is unclear at this stage which of the 27 causes of action, if any, will even survive dismissal.[7] But not only is the issue of whether Plaintiff intended to scam his fans irrelevant to the claims brought against Plaintiff's individual co-defendants, it is not even an element of all of the claims brought *against him. See, e.g.*, Holland Litigation, Dkt. 81, First Am. Compl. at Counts II–III (*breach of contract*), Count IV (*unjust enrichment*), and Count V (*negligence*). And in this case, although Defendants will be entitled to put on a defense that their allegedly libelous statements were truthful, at the end of the day the claims are against *Defendants*, and it is *their conduct* that is central to the case. As Plaintiff has been expressing consistently throughout the case, the core issue here is whether Defendants made the statements at issue with actual malice, which will turn on what they knew and believed at the time of the statements. The claims in *Holland* do not concern Defendants' conduct or mindset in any way, shape, or form.

---

[7] Or, for that matter, whether a class will eventually be certified, and if so whether and how that will impact which claims are viable.

Given that the overlap between the two cases is "less than complete," the Court should consider such factors as "the extent of the overlap, the likelihood of conflict, and the comparative advantage and interest of each forum in resolving the dispute." *Hart*, 290 F. Supp. 3d at 632. Courts evaluate the cases holistically; a "high degree of overlap" on one issue is not necessarily enough to find substantial overlap—even where, as alleged here, the cases involve the same underlying events or subject matter. *See TravelPass Grp., LLC v. Caesars Entm't Corp.*, No. 5:18-CV-00153, 2019 WL 3806056, **10, 15 (E.D. Tex. May 9, 2019) (finding no substantial overlap despite "similar allegations regarding the existence of an unlawful agreement between [] hotel companies in violation of antitrust laws," because "while there might be a high degree of overlap on the issue of the alleged conspiracy in both cases, this lawsuit hinges on other issues as well (e.g., issues of antitrust standing and damages that are unique to [plaintiff]"), *R&R adopted by* 2019 WL 4071784 (E.D. Tex. Aug. 29, 2019).

Although Defendants' argument of substantial overlap has some "superficial appeal" given that CryptoZoo is at the heart of both cases, the sheer volume of parties *and* claims in *Holland*, and the character of those claims, speaks to "significant differences" between the cases and underscores why application of the first-to-file rule would be inappropriate here. *See Hart*, 290 F. Supp. 3d at 632 ("[T]he [first-filed] litigation includes claims based on Illinois state law that are not at issue in this case. The [first-filed] litigation also includes various franchisor entities and franchisee defendants that are not named in this case. Given those differences, the likelihood of conflict is minimal, and to the extent a conflicting ruling could arise, issue preclusion is an appropriate method to address that concern."); *Stannard v. Nat'l Indoor RV Ctrs., LLC*, No. 18-CV-00366, 2018 WL 3608560, at *2 (E.D. Tex. July 27, 2018) (finding no substantial overlap

despite "similar claims that arise out of similar operative facts" because "[t]he cases involve different defendants and the claims are not identical").[8]

### C. Compelling Circumstances Weigh Heavily Against a Transfer and Stay.

Even if the Court determines there is substantial overlap between this case and the *Holland* litigation, the Court should decline to apply the first-to-file rule because there are compelling circumstances that weigh heavily against a transfer and stay.

**(1)** ***There are significant procedural differences between this case and the* Holland *litigation.***

*Holland* is a putative class action. This case is an individual action brought against Defendants who are not parties to that case. Defendants have not cited any examples of a court applying the first-to-file rule to transfer a second-filed case under such circumstances, and there is a reason for that. When the rule is invoked in relation to a first-filed class action, the second-filed case typically involves a competing class action, or a plaintiff asserting similar claims against the same defendant as in the first-filed case. Under the distinguishable circumstances presented here, transferring the case would necessarily subject it to delays and complications that do not exist outside of the class context. For example, the *Holland* plaintiffs will be required to meet the criteria of Federal Rule 23 before they will be able to litigate their claims on a class-wide basis, inevitably stalling the resolution of Plaintiff's claims. As a result, transferring and staying this case would not serve the interests of convenience, efficiency, or sound judicial administration that the first-to-file rule is intended to promote. *See TravelPass Grp., LLC*, 2019 WL 3806056, at *16 (denying a motion to transfer under both the first-to-file rule and § 1404(a), and agreeing with the plaintiffs

---

[8] It bears emphasis that the implication of Defendants' position is that venue was preordained for the wrongs at issue in this case *before they were even committed*, because Defendant Findeisen did not even make the libelous statements at issue until after *Holland* was filed. *Holland* was filed on February 2, 2023. Findeisen published the statements at issue on June 29, 2023 (Count I); June 30, 2023 (Count II); and January 5, 2024 (Count III).

that a transfer of their *individual* action to a first-filed *class* action would "not render the trial of this case more 'easy, expeditious, and inexpensive'" given the "procedural and substantive differences" between the two cases).

### (2) *This case has developed further than the* Holland *litigation.*

"Courts reject the first-to-file rule when the second filed action has developed further than the initial suit." *AEI Life, LLC v. Lincoln Benefit Life Co.*, 305 F.R.D. 37, 45 (E.D.N.Y. 2015); *Young v. Trump*, 506 F. Supp. 3d 921, 933 (N.D. Cal. 2020) ("[W]here the later-filed action has progressed further, efficiency considerations also disfavor application of the [first-to-file] rule."). That is the case here. Although the Parties have had preliminary discussions about jointly requesting a brief extension of the pretrial deadlines under the current Scheduling Order—with the current deadline for fact discovery approaching on May 16, 2025 [*see* Dkt. No. 18]—there is no question that the Parties are deep into the discovery process and well on their way to preparing this case for trial. As Defendants have acknowledged, the Parties have spent "significant time and resources on discovery." *See* Dkt. No. 46 at 2. The Parties have already litigated multiple discovery disputes, exchanged thousands of documents, conducted several depositions, and designated experts, and they recently have been conferring about resolving pending discovery disputes, scheduling party and expert depositions, and identifying a mediator. By comparison, little has happened in the *Holland* litigation to this point.[9] Under the PSLRA, discovery is stayed pending resolution of the defendants' respective motions to dismiss, which have been pending since late August and early September of last year. *See Holland* Litigation, Dkt. Nos. 85–87.

### (3) *Transferring and staying this case would unduly delay its resolution.*

---

[9] *Holland* was stayed for a few months in 2023 while the parties pursued mediation, but the mediation resulted in an impasse. *See Holland* Litigation, Dkt Nos. 38–39. The *Holland* Court has yet to enter a scheduling order.

Relatedly, courts consider the extent to which a transfer is likely to impact the progression of the case—*i.e.*, whether a transfer would have "*future* efficiency consequences." *Henry v. Home Depot, USA, Inc.*, No. 14-CV-04858, 2016 WL 4538365, *3 (N.D. Cal. Aug. 31, 2016) (emphasis added). For reasons already addressed, in this case a transfer is likely to result in significant further delays, bringing the case to a complete standstill for an indefinite period of time. *See LifeNet, Inc.*, 617 F. Supp. 3d at 557 (denying a motion to transfer under the first-to-file rule, in part because a transfer would "likely delay resolution of this case"); *TravelPass Grp., LLC*, 2019 WL 3806056, at *16 (same, and agreeing with the plaintiffs that a transfer "would cause significant delay to the resolution of [their] claims"); *cf. Moto Photo, Inc. v. K.J. Broadhurst Enters., Inc.*, No. 01-CV-02282, 2003 WL 298799, *5 (N.D. Tex. Feb. 10, 2003) ("The timing of plaintiff's motion creates a substantial possibility of undue delay if the case is transferred and may be denied on that basis alone."). For a variety of reasons, class actions are slower-moving by their nature.[10] From Defendants' perspective, that is the entire point. Defendants have not been subtle about their desire to delay this case, which is why they hurriedly prepared and filed this Motion just two weeks after the Magistrate Judge issued a Report and Recommendation in which he recommended denying their Motion for Judgment [Dkt. No. 41, 74] and simultaneously denied their request to stay discovery [Dkt. No. 46].

**(4) *Transferring and staying this case would prejudice Plaintiff.***

For many of the same reasons that comprise the compelling circumstances discussed above, transferring and staying this case would prejudice Plaintiff, who has a legitimate interest in the

---

[10] Even when the *Holland* Court issues a ruling on the pending motions to dismiss, it is unclear whether leave to amend will be granted for any claims that are dismissed and/or whether the plaintiffs will avail themselves of any such opportunity, which could result in an even lengthier stay as the process repeats itself. Simply put, *Holland* has no realistic chance of ever catching up to this case.

expeditious resolution of his case. *See IBEW-NECA Sw. Health & Benefit Fund*, 2011 WL 711005, at *4 (discussing the prejudice that plaintiff would suffer as a result of delay and duplication of efforts in the event of a transfer).  Plaintiff continues to suffer reputational harm as a result of Defendants' statements accusing him of being a scammer because, as courts have acknowledged, "[w]hen a defamatory message is posted on the Internet"—as Defendants statements were in this case—"the falsehood spreads like a virulent virus across digital space." *In re Murray*, No. 3:20-BK-01587, No. 20-AP-00032, 2023 WL 310344, *7 (Bankr. S.D. Miss. Jan. 18, 2023) (quoting 1 Rodney A. Smolla, *Law of Defamation*, § 1:27.50 (2d ed.)).  The only way for Plaintiff to remedy that harm is to obtain a judgment declaring the falsity of Defendants' statements.

Moreover, Defendants' delay in bringing their Motion has already provided an unfair, material advantage to the *Holland* plaintiffs; granting the Motion would only exacerbate that advantage by stymying Plaintiff's ability to vindicate his own rights.  Defendant Findeisen is a consulting expert for the *Holland* plaintiffs, meaning he is an agent of the plaintiffs' counsel.  *Holland* has not yet progressed to the stage of expert disclosures, and thus while the relationship has long been known to *Defendants*, it was unknown to Plaintiff until it was revealed in the course of discovery in this case when Defendants invoked the work product doctrine and Rule 26(b)(4)(D) as a basis for refusing to produce Findeisen's communications with his friend, attorney Kherkher.  By waiting to invoke the first-to-file rule until *after* Plaintiff had substantially fulfilled his production obligations in this case, Findeisen effectively secured for his *Holland* clients a one-sided workaround to the discovery stay that is currently in place.  Indeed, the *Holland* plaintiffs will have the benefit of thousands of documents and communications not only from Plaintiff, but from several of Plaintiff's co-defendants in that case who produced documents *in this case*

pursuant to non-party subpoenas.  Plaintiff, meanwhile, has not received any reciprocal discovery from the *Holland* plaintiffs given that they are not parties to this case.

**(5)** *Defendants' Motion is motivated by improper strategic considerations.*

"The letter and spirit of the first-filed rule . . . are grounded on equitable principles," and as such, "bad faith and inequitable conduct justify departure from the first-filed rule." *FirsTier Bank, N.A.*, 1996 WL 539217, at *7 (internal citation and quotation marks omitted).  One example of such conduct arises when a party invokes the first-to-file rule on the heels of an unfavorable ruling. *See Samsung Elec. Co., Ltd. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 724–25 (E.D. Va. 2005) (denying motion to transfer venue and reasoning that "[t]he Court should not ignore the fact that a party has received an unfavorable ruling in one forum, and as a result, attempted to lay venue in a second forum," and finding it was "apparent that [the defendant] desperately wanted to avoid litigation in this forum after the Court's ruling").  In addition to their clear attempts at delay, Defendants' decision to bring their Motion immediately after the issuance of an unfavorable Report and Recommendation on their Motion for Judgment raises an inference of forum-shopping. Defendants cannot overcome that inference because they do not actually articulate any legitimate reason for a transfer and stay other than their frustration with the existence of this case and their false assertion that it was brought for improper reasons.

## CONCLUSION

For all the reasons set forth above, and "[g]iven the time and resources expended toward" this case already, "giving effect to [Defendants'] conception of the first-to-file rule would actually undercut the values of economy, consistency, and comity that the rule is designed to maximize."

*In re Toyota Hybrid Brake Litig.*, 2020 WL 6161495, at *8.  Defendants' Motion to Transfer and Stay should be denied. [11]

May 6, 2025                                      */s/* Andrew C. Phillips
                                                Andrew C. Phillips (*Pro Hac Vice*)
                                                Shannon B. Timmann (*Pro Hac Vice*)
                                                MEIER WATKINS PHILLIPS PUSCH LLP
                                                919 18th Street NW, Suite 650
                                                Washington, DC 20006
                                                (202) 318-3655
                                                Email: andy.phillips@mwpp.com
                                                Email: shannon.timmann@mwpp.com

                                                Jeffrey A. Neiman (*Pro Hac Vice*)
                                                Jason L. Mays (*Pro Hac Vice*)
                                                MARCUS NEIMAN RASHBAUM & PINEIRO LLP
                                                100 SE 3rd Ave., Suite 805
                                                Ft. Lauderdale, Florida 33394
                                                Email: jneiman@mnrlawfirm.com
                                                Email: jmays@mnrlawfirm.com

                                                Ricardo G. Cedillo (Texas Bar No. 04043600)
                                                DAVIS, CEDILLO & MENDOZA, INC.
                                                755 E. Mulberry Ave., Ste. 250
                                                San Antonio, TX 78212
                                                (210) 822-6666
                                                Email: rcedillo@lawdcm.com

                                                *Counsel for Plaintiff Logan Paul*

---

[11]    With regard to Defendants' request for a stay pending a ruling on the Motion, Plaintiff does not dispute that the Court has the inherent authority to control its own docket.  Plaintiff *does* dispute Defendants' argument that the Fifth Circuit has "endorsed" a stay pending a ruling on a first-to-file motion.  *See* Mot. at 18.  Neither of their cited cases support that assertion.  All of the reasons addressed in this Response as to why the Court should exercise its discretion to deny a transfer under the first-to-file rule also weigh against a stay pending resolution of the Motion; Defendants have not articulated any good cause or any unique or special circumstances that would justify a stay.

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that, on the May 6, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record who are deemed to have consented to electronic service.

/s/ Andrew C. Phillips