# EXHIBIT D



Andy Phillips
andy.phillips@mwpp.com
847-951-7093

June 6, 2025

Via Email

Leigh S. Montgomery
Ellzey Kherkher Sanford Montgomery LLP
lmontgomery@eksm.com

> Re:  Document Requests in Paul v. Findeisen & Coffee Break Productions, LLC, No. 5:24-cv-00717-OLG

Dear Leigh,

I write to address Don Holland's and Alex Heikali's (together "your clients'") total refusal to produce documents any documents in response to the subpoenas that my client Logan Paul served on them in the above-captioned matter. This letter is an effort to meet and confer on the issue in the hopes of avoiding motions to compel.

To begin with, it is important to note that the reason we served document subpoenas on your clients is that the Defendants in the *Paul v. Findeisen* case noticed the depositions of your clients. Defendants' counsel indicated to us that your firm, on behalf of your clients, freely negotiated dates for those depositions, and indeed I was never provided with any subpoena compelling your clients' attendance for those depositions. Thus, it is readily apparent that your clients have chosen to voluntarily testify as witnesses in this case. It is equally important to note that your clients also elected to be named as plaintiffs in a separate class action suit against my client. Thus, your clients can hardly be heard to complain about the minimal discovery burden that our very limited subpoenas place on them. Indeed, I would expect that most, if not all, of the documents sought by the subpoenas are already collected and in your firm's possession, as surely you would have done standard diligence and investigation before filing the First Amended Complaint in the class action suit that discusses both of your clients' involvement with the CryptoZoo project, along with specific details of supposed purchases of a CryptoZoo-related cryptocurrency.

As to the five specific and limited document requests posed to each of your clients, the reasons your clients offer in support of their refusals to produce responsive

materials are meritless.  Since the subpoenas to each of your clients were identical and their objections were as well, this letter will address them together.

*Request No. 1: All nonprivileged documents and communications concerning CryptoZoo, Logan Paul and/or Logan Paul's involvement with CryptoZoo and/or the promotion of CryptoZoo-related cryptocurrency, tokens, or non-fungible tokens ("NFTs").*

First, your clients both objected to this request on the grounds that it seeks documents that "may" be subject to "attorney work product privileges, or other investigative privileges in this litigation."  As Paragraph 10 of the Instructions accompanying the subpoena makes clear, however, Mr. Paul's requests "do not seek materials that are protected by … work product doctrine … or any other applicable privilege that would render a document or communication nondiscoverable."  Each of Mr. Paul's requests is likewise expressly confined to "nonprivileged documents and communications."  Since Mr. Paul's subpoenas expressly do not seek privileged materials, your clients' objections on privilege grounds are obviously baseless.

Next, your clients also cited, as reasons to refuse to comply with this request, "the parties' relative access to relevant information," and the "burden/expense" of "requiring a non-party to produce publicly available information and/or information already in the possession, custody, and/or control of the Parties to this litigation."  This objection is nonsensical in light of both the request and its context.[1]  As to communications that your clients had regarding CryptoZoo, those simply are not in Mr. Paul's possession, nor are they publicly available.[2]  And as to documents concerning CryptoZoo and the promotion of CryptoZoo more generally, while it is true that some such materials are available to Mr. Paul or in the public sphere, the relevant inquiry is *which of those materials are in your clients' possession*.  Put simply, your clients have claimed in the class action suit that they were fraudulently induced to purchase CryptoZoo-related Zoo Tokens by certain statements of Plaintiff or by CryptoZoo-related marketing materials.  Surely, Defendants in the *Paul v. Findeisen* case noticed your clients' depositions to obtain testimony to that

---

[1] Even putting aside the specific context of the request, this objection is unsustainable given the general rule that "[t]he mere availability of [] documents from another source [] does not preclude a subpoena directed to a nonparty if the party serving the subpoena can show that it is more expeditious to obtain the documents from a witness."  *RLI Ins. Co. v. Nexus Servs., Inc.*, 2019 WL 8324257, at *2 (W.D. Va. Nov. 27, 2019) (third-parties' objection to document subpoena, on the ground the subpoena sought publicly-available documents, was "deficient" because it "fail[ed] to identify where [plaintiff] can locate those documents").

[2] *See, e.g.*, *id.* at *2 (third-parties' objection to document subpoena, on the ground the subpoena sought publicly-available documents, was "deficient" because it "fail[ed] to identify where [plaintiff] can locate those documents").

effect. It is therefore important for Mr. Paul to discover what, if any, information pertaining to CryptoZoo your clients actually had in their possession when they allegedly made those purchases, in order to be able to assess and rebut the notion of fraudulent inducement. By way of obvious example, it would be highly relevant to know whether your clients were in possession of the CryptoZoo White Paper, which very clearly stated that Zoo Tokens' sole utility was for purposes of the CryptoZoo game, and that it should not be treated as an investment vehicle.[3]

Please confirm that your clients will drop their objections to Request No. 1 and produce responsive documents promptly.

*Request No. 2: All nonprivileged communications between You and Stephen Findeisen a/k/a Coffeezilla, or any other person purporting to act on behalf of Mr. Findeisen or the Coffeezilla YouTube series, concerning CryptoZoo and/or Logan Paul.*

Your clients have both stated that they have "no non-privileged responsive documents to this request." While I accept that representation, I note that the phrasing underscores your understanding that the subpoenas do not seek privileged materials, rendering the privilege objections asserted in response to other requests plainly indefensible.

*Request No. 3: All nonprivileged documents and communications relating to purchases or sales of CryptoZoo-related cryptocurrency, tokens, of NFTs, including all potential purchases or sales considered by You.*

Both of your clients objected to this request on the grounds that "it is disproportionately burdensome to the non-party, considering the parties' relative access to relevant information, the parties' resources and the burden/expense outweighing the likely benefit of requiring a non-party to produce publicly available information and/or information already in the possession, custody and/or control of the Parties to this litigation." Again, this objection is nonsensical. Documentation concerning your clients' purchases and sales of CryptoZoo-related NFTs/tokens is not publicly available nor is it in Mr. Paul's custody or control. It is true that your clients have made vague, untested *claims* about some such purchases in the First Amended Complaint in the class action suit. And surely Defendants in the *Paul v. Findeisen* case have noticed your clients' depositions to obtain testimony on those topics. But the very purpose of this request is to obtain contemporary, objective documentation regarding your clients' CryptoZoo related transactions, and Mr. Paul cannot obtain that information from any other source. Moreover, your clients' claim of undue burden is undermined by the fact that both of

---

[3] https://cryptozoo-1.gitbook.io/cryptozoo/tokenomics.

your clients are named plaintiffs in the class action suit. In the course of that litigation, they will undoubtedly be required to collect and produce the same materials that this request seeks. A discovery obligation that your clients voluntarily elected to undertake cannot possibly be "disproportionately burdensome."[4]

Please confirm that your clients will drop their objections to Request No. 3 and produce responsive documents promptly.

*Request No. 4: All nonprivileged documents and communications relating to Logan Paul's offer to buy back CryptoZoo base eggs and animals.*

Again, your clients object to this request on the grounds that it is disproportionately burdensome because it seeks "publicly available information and/or information already in the possession, custody and/or control of the Parties to this litigation." Your clients then state that this request is inapplicable to both of them because they did not participate in the buy back.

The request seeks communications that your clients may have had regarding the buy back. Your clients' communications are not publicly available, nor are they otherwise in Mr. Paul's possession. Stating that your clients did not ultimately participate in the buy back is also not the same thing as stating that your clients have no responsive communications.

If your clients have no communications responsive to Request No. 4, please so state expressly. If your clients do have responsive communications, please confirm that your clients will drop their objections to Request No. 4 and produce responsive documents promptly.

*Request No. 5: All nonprivileged documents and communications relating to Your purchases of cryptocurrency and/or cryptocurrency-related products other than CryptoZoo-related cryptocurrency, tokens, or NFTs.*

Both of your clients objected to this request on the grounds that it seeks irrelevant information, is unduly burdensome, and "invades the privacy rights of a non-party to this litigation." None of the objections withstands scrutiny. As to relevance, again, your clients have asserted in pending litigation that they were fraudulently induced to speculate in CryptoZoo-related Zoo Tokens, despite the fact that it was made clear that the Zoo Tokens sole utility was for CryptoZoo gameplay and they were not intended as

---

[4] *E.g.*, *Plain Local Sch. Dist. Bd. of Educ. v. DeWine*, 335 F.R.D. 115, 120 (N.D. Ohio 2020) (rejecting argument that third-party subpoenas were unduly burdensome because, among other things, the third-party "[was] not a random third party," but rather had a clear relationship to the underlying action).

an investment vehicle.  One of your clients, Mr. Heikali, claims to have spent *$250,000* purchasing Zoo Tokens, an amount that on its face indicates Mr. Heikali was indeed speculating on Zoo Tokens in the hopes of making a profit rather than purchasing them for the purpose of CryptoZoo gameplay.  To rebut the testimony that Defendants likely seek to obtain from your clients, it is highly relevant to know whether either of them have a history of speculative cryptocurrency purchases, which in turn would demonstrate their understanding that such speculation is an inherently risky endeavor.

      Finally, as to your clients' claims of undue burden and invasion of their privacy rights, I note again that both of your clients elected to be named plaintiffs in a class action lawsuit that squarely puts at issue their cryptocurrency transactions, and both have discussed their cryptocurrency transactions in a publicly filed pleading in that case.

      In sum, your clients' objections to these limited subpoenas are not well taken.  It is telling that your firm apparently coordinated with counsel for Defendants in the *Paul v. Findeisen* case and agreed to have your clients voluntarily appear for depositions while simultaneously refusing to provide documents on the same topics on which Defendants are seeking your clients' testimony.  This suggests that you only consider requests for your clients to give evidence to be unduly burdensome when the request is coming from Mr. Paul.

      Please let me know by no later than Wednesday, June 11 if your clients will agree to drop their meritless objections and to promptly produce documents responsive to the subpoenas.  If you believe that a telephone conversation to discuss the matter would be constructive, I would be happy to do that at your convenience.

Sincerely,

Andy Phillips

Cc: Jarrett Ellzey
    Jeffrey Neiman
    Jason Mays
    (Via Email)