IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

SAN ANTONIO DIVISION

| | |
|---|---|
| LOGAN PAUL,<br><br>        *Plaintiff*,<br><br>v.<br><br>STEPHEN FINDEISEN AND COFFEE BREAK PRODUCTIONS LLC D/B/A COFFEEZILLA,<br><br>        *Defendants*. | Civil Action No. 5:24-cv-00717 |

**MOTION TO COMPEL PRODUCTION OF COMMUNICATIONS TO AND FROM HARRY BAGG AND/OR ED LESZCZYNSKI**

Plaintiff Logan Paul moves this Court to compel Defendants to produce any communications between themselves and Harry Bagg and/or Ed Leszczynski relating to Defendants' defamatory YouTube videos.[1]

**BACKGROUND**

Paul filed this libel action after Defendants repeatedly accused him of perpetrating a financial scam in connection with a troubled blockchain project called CryptoZoo. (Compl. at 1 (Jun. 27, 2024) (Dkt. 1).) In YouTube videos and Twitter posts, Defendants charged that Paul had scammed and swindled his own fans in connection with the project. In actuality, and as Defendants knew, Paul had been enthusiastic and deeply committed to the project's success. (*Id.* ¶¶ 2, 8, 56, 57, 100, 141, 155.) Although the venture was ultimately unsuccessful, Paul never made a dime

---

[1] In this motion, "the defamatory YouTube videos" refers to the videos listed in Counts II and III of Paul's Complaint, as well as the following three videos: (1) *Investigating Logan Paul's Biggest Scam*, www.youtube.com/watch?v=386p68_lDHA (Dec. 16, 2022); (2) *The Biggest Fraud in Logan Paul's Scam*, www.youtube.com/watch?v=wvzyDg40-yw (Dec. 20, 2022); and (3) *Ending Logan Paul's Biggest Scam*, www.youtube.com/watch?v=8-fugWMBwCg (Dec. 23, 2022).

1

from it.  (*Id.* ¶¶ 56, 150.)  In fact, he lost hundreds of thousands of dollars that he invested in it, and over a million dollars more when he voluntarily chose to commit his personal funds to a "buyback" program to make whole the purchasers of CryptoZoo NFTs.  (*Id.* ¶¶ 56, 150.)

Because Paul is a public figure, to prevail in this action, he must show that Defendants published their false charges with actual malice—that is, with a high degree of awareness of their probable falsity.  *See Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989).  Paul's Complaint alleges that Defendants were aware of Paul's true intentions and actions with respect to CryptoZoo, but that they nevertheless chose to repeatedly label him as a scammer in order to profit off his celebrity.  (*E.g.*, Dkt. 1 at ¶¶ 2, 7, 117, 142, 146.)  To prove that allegation, Paul has repeatedly asked Defendants to produce certain internal communications and materials demonstrating what they understood about Paul's motives when they published their false charges.  (*See, e.g.*, Dkts. 26, 62, 119.)  Defendants have persistently refused or obstructed in doing so.

Relevant to this motion, Paul has repeatedly sought—and been rebuffed on—discovery of certain communications between Defendants and the two men who served as the "editorial team"—along with Defendant Findeisen—for Defendants' defamatory YouTube videos: Harry Bagg (an England-based video editor) and Ed Leszczynski (a Ukraine-based computer graphics artist).  Defendants have acknowledged that both men possess relevant, discoverable information.  (Decl. of A. Phillips, Ex. 1 (Defs.' Second Am. Disclosures (May 7, 2025 )).)  Yet Defendants have not produced any communications to or from Bagg or Leszczynski.  Nor have they identified, in their privilege logs, any communications to or from Bagg or Leszczynski, even though neither Bagg nor Leszczynski is a confidential source.

Paul has repeatedly asked Defendants to provide at least some information about their communications with Bagg and Leszczynski, and Defendants have repeatedly refused to provide

any responsive information.  On August 29, 2024, for example, Paul served Defendants with his first set of requests for production ("RFPs"), which included several requests covering communications between Defendants and Bagg and Leszczynski.  (Pl.'s First Req. for Produc. at 4-12 (Aug. 29, 2024) (Dkt. 26-1) (Requests 1, 2, 4, and 5).)  Defendants' responded by producing no documents to or from Bagg or Leszczynski.

On June 9, 2025, Paul served Defendants with his third set of interrogatories, the eighteenth of which instructed:

> If you maintained group messages or email chains with an editorial team for the purpose of discussing potential edits to your published YouTube videos concerning CryptoZoo, identify (1) each participant in those communications; (2) the dates of those communications; and (3) if applicable, where those communications are reflected in your privilege log.

(Decl. of A. Phillips, ¶ 3 & Ex. 2 (Def. Stephen Findeisen's Resps. & Objs. to Pl.'s Third Set of Interrogs. (July 15, 2025)).)  Despite the narrow scope of the interrogatory, Defendants refused to produce any responsive information; they simply pointed Paul to the privilege logs and accompanying declaration, which do not mention Bagg or Leszczynski, or provide any other indications of what items in the logs involve Bagg or Leszczynski.  (*Id.*)

Throughout this litigation, Defendants have provided essentially no internal communications regarding the decision-making processes that shaped the content of Defendants' defamatory YouTube videos.  (*See* Decl. of A. Phillips ¶ 5.)  Because Defendants are apparently continuing to withhold communications to and from Bagg and/or Leszczynski, and because they have provided Paul with no means of even identifying which entries on their privilege logs might reflect such communications, Paul has been left no choice but to file this motion seeking Defendants' communications with Bagg and/or Leszczynski regarding editorial decisions about Defendants' defamatory YouTube videos (the "Subject Communications").

3

**LEGAL STANDARD**

A party seeking discovery "bears the initial burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence." *Camoco, LLC v. Leyva*, 333 F.R.D. 603, 606 (W.D. Tex. 2019). If the party seeking discovery "establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the discovery… should not be permitted." *Id.*

**ARGUMENT**

Actual malice is a central and contested issue in this action. (*See* Answer at 1 (Aug. 5, 2023) (Dkt. 9).) And because the defamatory statements at issue in this case all involve variations on the factual assertion that Paul conceived of and operated CryptoZoo as a "scam," proof of actual malice necessarily depends on what Defendants understood about Paul's intentions and actions with respect to his involvement in CryptoZoo—and when they understood it. Some of the best evidence of what Defendants in fact understood about Paul's intentions and actions will inevitably be Defendants' own communications made while preparing the defamatory YouTube videos. That includes the Subject Communications, which are among the best evidence of Defendants' thought processes in producing and editing the defamatory YouTube videos. Because understanding Defendants' editorial thought processes is plainly relevant to the actual-malice issue in this case, and because the Subject Communications—with Defendants' editorial team—are some of the best evidence of those thought processes, Defendants must produce the Subject Communications absent a valid reason for objecting to their production.

As to the Subject Communications, Defendants have asserted an unspecified privilege. Because Bagg and Leszczynski are not confidential sources, the privilege is almost certainly Texas's qualified journalistic privilege. That privilege, however, does not apply here for at least two reasons.

First, Defendants have not identified any communications with Bagg or Leszczynski in any of their privilege logs and so have forfeited any privilege with respect to the Subject Communications. Second, even if Defendants had not forfeited the privilege, Paul satisfies the statutorily specified conditions for overcoming it.

**A.      The Subject Communications Bear Directly on the Issue of Actual Malice.**

Paul's burden here is merely to show that the Subject Communications bear on, or reasonably could lead to other matter bearing on, an issue that is or may be in this case. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Paul can carry that burden, since the Subject Communications bear squarely on the actual malice element of his libel claims.

As a public figure, Paul can only prevail in this action by proving that Defendants published their libels with actual malice. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 744 (5th Cir. 2019). The actual malice inquiry focuses on the publisher's subjective state of mind at the time of publication, not the publication's objective truth. *Smith v. Wal-Mart Stores, Inc.*, 980 F.3d 1060, 1063 (5th Cir. 2020). So what matters in this case is what Defendants subjectively understood about Paul's intentions and actions with respect to the CryptoZoo project at the time Defendants published their libels.

Because libel defendants "are prone to assert their good-faith belief in the truth of their publications," *Herbert v. Lando*, 441 U.S. 153, 170 (1979), the law authorizes libel plaintiffs "to prove the defendant's state of mind through circumstantial evidence." *Harte-Hanks Commc'ns*, 491 U.S. at 668. Without limitation, that can include evidence that, when the libel was published, the defendant was aware of information directly contradicting its defamatory assertions, or evidence that the defendant omitted material from his publications for the purpose of casting the plaintiff in a defamatory light. *See Brown v. Petrolite Corp.*, 965 F.2d 38, 47 (5th Cir. 1992); *Zerangue v. TSP Newspapers, Inc.*, 814 F.2d 1066, 1070 (5th Cir. 1987); *Golden Bear Distrib.*

5

*Sys. of Tex., Inc. v. Chase Revel, Inc.*, 708 F.2d 944, 950 (5th Cir. 1983); *Huckabee v. Time Warner Ent. Co.*, 19 S.W.3d 413, 426 (Tex. 2000). So if, for instance, the Subject Communications indicate that Bagg or Leszczynski expressed reservations to Defendants about the truth of Defendants' allegations about Paul and CryptoZoo, or if the Subject Communications show that Defendants instructed Bagg or Leszczynski to omit exculpatory information about Paul and CryptoZoo, that would be strong circumstantial evidence of actual malice.[2]

The Subject Communications—reflecting Defendants' correspondence with the two people Defendants hired to produce and edit the defamatory YouTube videos—are perhaps the most likely sources of evidence about Defendants' thought processes in compiling, editing, and producing the defamatory YouTube videos. For that reason, the Subject Communications are highly relevant to a core disputed issue in this litigation.

**B.     Defendants' Reasons for Withholding the Subject Communications Lack Merit.**

Because Paul can readily carry his burden of showing that the Subject Communications are relevant to this action, Defendants must produce them unless they can articulate a valid objection to doing so. The only real objection Defendants appear to assert as to the Subject Communications is that Texas's journalist's privilege, codified at Tex. Civ. Prac. & Rem. Code. Ann. § 22.023, permits them to withhold the Subject Communications. But they are wrong about that, for at least two reasons.

First, Defendants' privilege logs do not include any communications identified as being sent to or from Bagg or Leszczynski, even though neither Bagg nor Leszczynski is a confidential

---

[2] Those examples of responsive communications are by way of illustration only. Communications about numerous other topics—for instance, the titles of the defamatory YouTube videos, or promotions of the defamatory YouTube videos—would also have obvious relevance to this action, which is why this motion seeks *all* communications to or from Bagg and/or Leszczynski relating to the defamatory YouTube videos.

source. Failure to include and identify a document on a privilege log commonly results in a forfeiture of any privilege that might apply. *E.g.*, *United States v. Fluitt*, 99 F.4th 753, 763-64 (5th Cir. 2024). That should be the outcome here.

Second, even if Defendants could otherwise avail themselves of the journalist's privilege, Section 22.023 creates only a qualified privilege, one carefully delimited to preserve public-figure plaintiffs' ability to pursue libel claims. *See Abraham v. Greer*, 509 S.W.3d 609, 616 (Tex. App.—Amarillo 2016, pet. denied). Section 22.024 of the Texas Civil Practices and Remedies Code sets six criteria which, if satisfied, overcome the journalist privilege. With respect to the Subject Communications, Paul can readily satisfy each of the six criteria.

### 1. Defendants forfeited any claim that the Subject Communications are privileged by failing to identify them on their privilege logs.

Rule 26(b)(5)(A) of the Federal Rules of Civil Procedure requires parties asserting a privilege to "(i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." When the withholding party persistently and knowingly fails to comply with Rule 26(b)(5), assertions of privilege against the requested discovery are forfeit. *See, e.g.*, *Fluitt*, 99 F.4th at 763-64; *EEOC v. BDO USA, L.L.P.*, 876 F.3d 690, 697 (5th Cir. 2017); *Climb Tech, LLC v. Verble*, No. A-05-CA- 864 LY, 2008 WL 11334947, at *3 (W.D. Tex. Nov. 12, 2008).

Defendants' privilege logs do not identify any communications to or from Bagg or Leszczynski, even though neither Bagg nor Leszczynski is a confidential source, and even though Defendants themselves have identified Bagg and Leszczynski as possessing information relevant to this litigation. Defendants have also expressly refused to provide other information that might allow Paul to at least pick out which entries in the logs are for the Subject Communications. For

those reasons, Defendants' privilege logs are legally insufficient as to the Subject Communications. *See Fluitt*, 99 F.4th at 764 (logs insufficient where they made only general assertions of privilege without providing context necessary to evaluate privilege claims). That means Defendants' privilege claims as to the Subject Communications are forfeit.

> **2. Paul can satisfy each criterion for overcoming Texas's qualified journalist's privilege.**

Even if Defendants hadn't forfeited their journalist-privilege argument, it would still fail. That is because Section 22.024 of the Texas Civil Practices and Remedies Code sets six criteria which, if satisfied, overcome the journalist privilege established under Section 22.023. With respect to the Subject Communications, Paul can readily satisfy each of the six criteria.

***Paul has exhausted all reasonable efforts to obtain the information from alternative sources.*** Defendants are the only ones who can provide Paul with the Subject Communications. At all times relevant to this litigation, Bagg and Leszczynski were Defendants' agents, acting as their editorial team. Consequently, any effort to obtain the Subject Communications—whether from Defendants or directly from Bagg and Leszczynski—would run into the same privilege objection from Defendants that precipitated this Motion. As a practical matter, therefore, Paul has no means of obtaining the Subject Communications apart from this Motion seeking to overcome Defendants' unsubstantiated privilege objection.

***Paul's request for the Subject Communications is not overbroad, unreasonable, or oppressive, and is limited to information bearing directly on the circumstances surrounding the accuracy of Defendants' statements.*** The Subject Communications are among the most straightforward ways of proving the actual-malice element of Paul's claim. As Defendants' editorial team for the defamatory YouTube videos, Bagg and Leszczynski undoubtedly communicated with Defendants about precisely the sorts of editorial decisions that are most likely

8

to bear on actual malice—such as decisions about what evidence about Paul to include or omit from the published videos, and about whether certain portions of the videos might need to be modified on account of contradictory evidence.

Given the Subject Communications' importance to a central contested element of this action, asking Defendants to produce them is not overbroad, unreasonable, or oppressive. Generally, for example, a request is "oppressive" if it "involve[s] an abuse of power that harms the rights or interests of another person or persons and disserves the purpose for which the power is authorized." *Ritchie v. Rupe*, 443 S.W.3d 856, 866-67 (Tex. 2014). Compelling production of the Subject Communications, by contrast, directly serves "[t]he whole purpose of discovery," which "is to allow the parties to obtain the fullest knowledge of issues and facts prior to trial." *Gutierrez v. Dallas Indep. Sch. Dist.*, 729 S.W.2d 691, 693 (Tex. 1987).

***Paul gave Defendants reasonable and timely notice of his demand for the Subject Communications.*** Paul has repeatedly asked Defendants to produce the Subject Communications or information about the Subject Communications. He did so in RFPs sent August 29, 2024, in interrogatories sent on June 9, 2025, and in an email on August 4, 2025. Defendants have consistently refused to produce the Subject Communications, or even information about where to find the Subject Communications on Defendants' useless privilege logs.

***Paul's interest in obtaining the Subject Communications outweighs any interest in Defendants' being allowed to withhold them.*** Paul's interest in obtaining the Subject Communications is considerable, since evidence about a publisher's motivations for making particular editorial choices can be powerful proof of actual malice. *See Huckabee*, 19 S.W.3d at 426. In *Rebozo v. Washington Post Co.*, for example, the Fifth Circuit held that the plaintiff raised

9

a fact issue on actual malice because, among other things, he pointed to internal correspondence recognizing that the article in question might need to be rewritten. 637 F.2d 375, 381-82 (1981).

Proving actual malice can be difficult, and the Subject Communications are among the strongest pieces of evidence available to Paul for that purpose. They are also uniquely within Defendants' power to produce, given Defendants' ability to foreclose production from Bagg and Leszczynski based on purported privilege.

Defendants' interest in withholding the Subject Communications, by contrast, is almost nonexistent. The Subject Communications have nothing to do with a journalist's right to gather news free of unreasonable burdens. Indeed, they do not implicate newsgathering at all. Rather, they are limited to Defendants' internal communications with their own paid contractors, serving as Defendants' editorial team. Courts regularly reject much more compelling privilege arguments, given citizens' general obligation to provide information pursuant to routine legal processes. *E.g.*, *Branzburg v. Hayes*, 408 U.S. 665, 686 (1972); *Miller v. Transamerican Press, Inc.*, 621 F.2d 721, 726-27, *supplemented on denial of reh'g*, 628 F.2d 932 (5th Cir. 1980).

***Paul is not seeking peripheral, nonessential, or speculative information.*** As explained above, the Subject Communications are central to Paul's case because they go squarely to an element of his claim. Without them, it will be impossible to fully understand what Defendants knew, when publishing their libels, about Paul's intentions and actions regarding CryptoZoo.

***The Subject Communications are vital to proving actual malice.*** Again, the Subject Communications go directly to actual malice, which is an element of Paul's libel claims. Without them, his ability to prove actual malice in this case will be significantly diminished.

Because Paul's request satisfies all six criteria in Section 22.024, Texas's journalist's privilege does not shield Defendants from producing the Subject Communications.

**CONCLUSION**

This Court should compel Defendants to promptly produce the Subject Communications.

August 6, 2025

/s *Andrew C. Phillips*
Andrew C. Phillips (*Pro Hac Vice*)
Shannon B. Timmann (*Pro Hac Vice*)
MEIER WATKINS PHILLIPS PUSCH LLP
919 18th Street NW, Suite 650
Washington, DC 20006
(202) 318-3655
Email: andy.phillips@mwpp.com
Email: shannon.timmann@mwpp.com

Jeffrey A. Neiman (*Pro Hac Vice*)
Jason L. Mays (*Pro Hac Vice*)
MARCUS NEIMAN RASHBAUM & PINEIRO LLP
100 SE 3rd Ave., Suite 805
Ft. Lauderdale, Florida 33394
Email: jneiman@mnrlawfirm.com
Email: jmays@mnrlawfirm.com

Shelby O'Brien
ENOCH KEVER PLLC
7600 N. Capital of Texas Highway
Building B, Suite 200
Austin, Texas 78731
Email: sobrien@enochkever.com

*Counsel for Plaintiff Logan Paul*

## **CERTIFICATE OF SERVICE**

  I hereby certify that, on the August 6, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record who are deemed to have consented to electronic service.

                   /s *Andrew C. Phillips*