1          UNITED STATES DISTRICT COURT
           WESTERN DISTRICT OF TEXAS
2              SAN ANTONIO DIVISION

3   LOGAN PAUL              ) Case Number
    Plaintiff,              ) SA:24-CV-00717-OLG-HJB
4                           )
    vs.                     )
5                           )
    STEPHEN FINDEISEN, ET AL, ) San Antonio, Texas
6   Defendants.             ) August 5, 2025
    ****************************************************
7         MOTIONS HEARING (via Zoom Videoconference)
          BEFORE THE HONORABLE HENRY J. BEMPORAD
8              UNITED STATES MAGISTRATE JUDGE

9   A P P E A R A N C E S:
    FOR THE PLAINTIFF:
10  Andrew Clay Phillips
    Meier Watkins Phillips Pusch, LLP
11  919 18th Street NW, Suite 650
    Washington, DC  20006
12  (847)951-7093; andy.phillips@mwpp.com

13  Jason L. Mays
    Neiman Mays Floch & Almeida, PLLC
14  One Financial Plaza
    100 SE 3rd Avenue, Unit 805
15  Ft. Lauderdale, Florida 33394

16  Ricardo G. Cedillo
    Davis Cedillo & Mendoza
17  755 E. Mulberry Avenue, Suite 500
    San Antonio, Texas  78212
18  (210)822-6666

19  FOR THE DEFENDANTS:
    Caroline N. Small
20  Davis & Santos, P.C.
    719 S. Flores Street
21  San Antonio, Texas  78204
    (210)853-5882; csmall@dslawpc.com
22

23

24

25

1   COURT RECORDER:   ZOOM VIDEOCONFERENCE

2   TRANSCRIBER:
    Angela M. Hailey, CSR, CRR, RPR, RMR
3   Official Court Reporter, U.S.D.C.
    262 West Nueva Street
4   San Antonio, Texas   78207
    Phone(210)244-5048; angela_hailey@txwd.uscourts.gov

5

6   *Proceedings reported by electronic sound recording, transcript
    produced by computer-aided transcription.*
7                              *   *   *   *   *

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

 1   *(August 5, 2025, 1:33 p.m.)*

 2                             *   *   *

 3            THE COURT:  Hello.  This is Henry Bemporad, United

 4   States Magistrate Judge.  I'm calling a case for a video

 5   motions hearing.  The case is SA:24-CA-717, Logan Paul versus

 6   Steven Findeisen and Coffee Break Productions, LLC, and then we

 7   have a third party as well, Don Holland, for this motion.

 8            Let me get announcement of counsel, if I may, starting

 9   with counsel for plaintiff please.

10            MR. PHILLIPS:  Good afternoon, Your Honor.  This is

11   Andy Phillips of Meier Watkins Phillips Pusch, on behalf of the

12   plaintiff, Logan Paul.  Also here is my co-counsel, Jason Mays.

13            THE COURT:  Good afternoon to both of you.  And for

14   defendants?

15            MS. SMALL:  Good afternoon, Your Honor.  Caroline

16   Small on behalf of the defendants.

17            THE COURT:  All right, very well.  Good afternoon to

18   you as well.  And then finally for third party, Don Holland.

19            MR. SANFORD:  Good afternoon, Your Honor, it's Josh

20   Sanford, back again for a different third party.  I'm here for

21   Don Holland today, not for attorney Tom Kherkher.

22            THE COURT:  I understand.  Thank you, Mr. Sanford.  I

23   have this motion, this case set for one motion.  I have a

24   number of motions pending.  The only motion I'm considering at

25   this time is motion to enforce and compel compliance with a

1    third-party subpoena to Don Holland.  This -- and Mr. Sanford,

2    your statement is apt because this motion, like other motions

3    I've considered in the case, involve the overlap between this

4    case and the class action matter that is pending in Austin.

5    That's case number 1:23-CA-110, Holland versus CryptoZoo, Inc.

6    So I'm trying to navigate my way through this case, knowing

7    that that case -- I don't know if this case would be considered

8    a stalking horse for that case, I don't think it is, it's

9    related to that case, and so I'm trying to consider them as

10   best I can to balance the two out.

11         So, let me start by hearing from plaintiff, then I

12   want to hear from you, Mr. Sanford, and then any comments the

13   defendants wish to make as well.

14         MR. PHILLIPS:  Thank you, Your Honor.  The first point

15   I want to emphasize kind of in response to your opening

16   statement there is that it's not the plaintiff that's seeking

17   to introduce Mr. Holland as a witness into this proceeding.

18   The defendants indicated an intent to depose him, served a

19   Notice of Deposition and it was only after that that we served

20   the Subpoena in question on Mr. Holland.  I think that's

21   relevant because we saw in Mr. Holland's opposition to our

22   motion, and I suspect we may hear today, that this is all

23   really just a backdoor effort to seek discovery related to the

24   class action case that hasn't even gotten to discovery and, you

25   know, that's just counterfactual given the sequence of events.

1  We didn't subpoena him until defendants said they were going to

2  take his deposition testimony, and if defendants today said

3  that they no longer had any intent to take his deposition

4  testimony, I think that Subpoena would go away.

5          The other reason that argument doesn't make sense is

6  the request themselves.  We really did make an effort here to

7  be narrowly tailored with the Subpoena and to seek materials

8  that are directly relevant to what we expect -- the testimony

9  we expect defendants to try to elicit from Mr. Holland.

10         THE COURT:  Mr. Phillips, can I ask you a question

11 about that?

12         MR. PHILLIPS:  Of course.

13         THE COURT:  That second point you made is exactly the

14 point that I'm having the most trouble with.  How do you know

15 what to expect, what you expect them to ask?  I don't have a

16 copy of the deposition notice that they sent and I'm assuming

17 this is a normal Rule 30 deposition notice that wouldn't tell

18 me what the topics are they're going to be talking about, so is

19 it a little bit of a shock that they might just be talking

20 about -- they could be talking about anything, just

21 establishing some dates or something.  That's the part that I

22 don't know how to resolve and that's really -- I'll be frank,

23 that was the main question I wanted to ask you.  I'm going to

24 be asking everybody about that.

25         MR. PHILLIPS:  Yeah, that's a fair question, Your

1    Honor, and obviously there is some divining going on on our

2    part.  I mean, there is the class action Complaint that has

3    specific allegations about Mr. Holland and his involvement with

4    CryptoZoo, so that gives us a little bit of an understanding.

5    There is what defendants have said about other nonparties that

6    are maybe similarly situated that they're seeking to depose.

7         Your Honor mentioned other pending motions.  There's

8    one that got scheduled for September 11th, I believe it is,

9    about defendant's effort to take some foreign depositions of

10   folks who are like Mr. Holland and who, you know, who we

11   understand purchased or alleged that they purchased

12   CryptoZoo-related tokens and crypto currencies and whatnot.

13   And if you read the way defendants describe those witnesses,

14   they talk about them as victims, they say they were scam

15   victims, and so, you know, that is our expectation that they

16   are going to want to get testimony from Mr. Holland that he

17   made purchases of CryptoZoo-related tokens, that he was induced

18   to do so by supposed statements by plaintiff or others involved

19   in the project, that he lost money on the project, and that in

20   his mind, and I suppose defendant's, that makes this all a

21   scam.

22        Could I be completely wrong about that?  I suppose,

23   but that's our best guess, Your Honor, and, you know, the other

24   thing I'd add is in terms of trying to make that call on the

25   front end, you know, he's going to be in a deposition, the

 1    scope of discovery is broad, the scope of what you can ask in a
 2    deposition is broad and so, you know, we need to be prepared to
 3    corroborate, refute, rebut, and be able to pressure test
 4    whatever testimony he might give, but again, all of our
 5    requests go directly to what I just described as what I believe
 6    defendants will seek to elicit from Mr. Holland.
 7              THE COURT:  Thank you.  You actually raised the other
 8    question I was going to ask.  You're addressing all the
 9    questions I had, Mr. Phillips, I appreciate it.  I'm going to
10    be asking everybody the same question.  Is it your
11    understanding.  Just as to the logistics of this deposition,
12    let's assume you have the documents or whatever, you go into
13    the deposition, you're -- the defendants are going to be asking
14    Mr. Holland all kinds of questions, and then you're going to
15    get your turn.  Would you consider your questions to be
16    appropriately limited to the scope of their questions?  Or do
17    you think once this guy is in front of you, you can ask him
18    anything that might be relevant, having not noticed them
19    yourself, ask him anything that might be relevant to the
20    litigation I have in front of me.  And the issue is typically
21    cross-examination, a little bit into the scope of examination.
22    On the other hand, if he has relevant information, you also may
23    have the right to depose him and he may be waiving quite a
24    number of objections he might have by talking, so that's why
25    I'm asking.

 1          MR. PHILLIPS:  Yeah, I would agree with that.  Again,
 2  everything I just described is what I understand defendant will
 3  try to elicit from him and, you know, our intent would be to,
 4  you know, refute and rebut those things.  But there's a reality
 5  in depositions which is it becomes a little bit of a
 6  free-for-all, and I can't say for sure what ground defendants
 7  are going to cover.  I suppose we could also cross notice the
 8  deposition, it's not currently scheduled.  Defendants agreed to
 9  hold it in abeyance pending the outcome of this dispute.
10          THE COURT:  Sure.  I understand.  Thank you.  I don't
11  have their notice, so I didn't really know what the status was,
12  but I appreciate that.  I'm sorry, I interrupted you a bunch of
13  times.  There may have been additional argument you wished to
14  make before I hear from the other side.
15          MR. PHILLIPS:  What I would say, Your Honor, is just
16  to get into the request themselves of why I think they seek
17  relevant information and the objections are not well taken, but
18  if you want to hear from Mr. Holland's counsel on the points
19  we've already discussed before we get into the substance of the
20  requests, I leave it to Your Honor.
21          THE COURT:  All right.  Thank you, Mr. Phillips.  That
22  seems like a good idea.  Let me get a general sense of where
23  everybody is and then we may have to dive into.  As I
24  understood, there were five categories.  There was a number of
25  categories in which Mr. Holland said I don't have any of that

1    kind of documents, but then there's some where he's holding on

2    to some stuff and that was the distinction that I thought was

3    the heart of it, but I'd rather hear a general view first

4    before getting into those details.

5          Let me turn to you, Mr. Sanford, if I may, in response

6    on behalf of Mr. Holland.

7          MR. SANFORD:  Your Honor, I think that this situation

8    presents a bit of a unusual circumstance, to say the least,

9    because Mr. Holland and the plaintiff in this case, along with

10   some other entities, are as you said, engaged in litigation in

11   another court where discovery is not yet open and the material

12   that's relevant in this case is not wholly unrelated to the

13   material in the case where discovery is not open.

14         We filed this objection -- sorry, we served this

15   objection to plaintiff in large part because it seemed to us

16   not principially(sic) that no deposition-- I'm sorry, that no

17   Subpoena could ever be served in these circumstances.  But in

18   this particular circumstance, the material recoverable,

19   searchable from Mr. Holland should be very narrowly tailored to

20   avoid issues related to a case where another judge has not yet

21   opened discovery.  And we did -- and in the spirit of conceding

22   the point that, yes, some discovery is okay, we conceded these

23   categories where there was nothing responsive.  It is very hard

24   to address the issues in front of the Court categorically

25   without also dipping into the requests themselves which are

1  just fundamentally broad with respect to the very narrow issue

2  which, as I understand it, plaintiff thinks -- plaintiff's

3  counsel thinks will be the battleground in the deposition which

4  is whether or not it was true or false that Mr. Paul

5  perpetrated a scam.  And given the breadth of the requests and

6  how unrelated some of them are to that particular issue, it

7  seems right for the Court to go through them, there are three

8  of them, one at a time, and figure out if there's a way to

9  scuttle a couple of them and narrowly tailor a couple of them,

10  or whatever, and get to a place where there's nothing happening

11  in this case which would tend to run afoul of where things sit

12  in the prior filed case over there in Austin.

13          THE COURT:  All right.  Well, Mr. Sanford, let me ask

14  you the same question or a version of what I asked

15  Mr. Phillips.  You're representing Mr. Holland, do you have any

16  idea what they're going to ask him about?  Have you talked to

17  the defendant?  Have you said, *Hey, you're deposing my guy,*

18  *I've got a case pending, what are you making me do here?*

19          They're all going to be admissions, everything he says

20  could cause him problems in that other case.  Why is he talking

21  to anybody?  And if he is, have you had a word from these guys

22  as to what they're going to ask?

23          MR. SANFORD:  I would not be surprised if one of my

24  partners has.  I don't have the answer to that question.  It's

25  the summertime, we've got people on vacation and obviously when

MOTIONS HEARING                    11

1   I show up in your court -- at my firm, we're at the bottom of

2   the barrel.  Right?

3        THE COURT:  Why would you say that, Mr. Sanford?  I've

4   had you in court many times, sir.

5        MR. SANFORD:  But I personally have not.  I think

6   Ms. Small may know better than I do whether or not defendant

7   has spoken with one of my partners about this, but it is

8   impossible for the requests that have been actually issued in

9   this case to Mr. Holland to be construed as narrowly tailored

10  to issues in this case, regardless of what the substance of his

11  deposition is going to be about.  Assuming that his deposition

12  is related to this case at all, which I would imagine that it

13  is.

14        THE COURT:  Yeah, but again, I hate that imagining

15  part.  That's what I'm doing too, I'm doing the same sort of

16  imagining.

17        MR. SANFORD:  But to your point, I think there is a

18  world in which defendant deposes Holland, plaintiff reserves

19  his questions, considers whether he needs to issue a Subpoena

20  and take Holland's deposition later after the fact, and there

21  would be a basis in the record from the deposition for the

22  scope of the documents requested down the road.  Or maybe this

23  is a whole bunch of smoke and no fire and it's a waste of time

24  that we're even discussing this.

25        THE COURT:  All right.  Well, this is my concern on

MOTIONS HEARING                    12

1    that point, and then I want to hear from Ms. Small.

2    Mr. Sanford, I could imagine doing it that way and don't give

3    them any documents and then they ask all these questions.  Then

4    Mr. Phillips comes back and says, *We've got to depose this guy*

5    *again and we need all these documents.*  And then you're saying,

6    *Hey, you're deposing my guy twice, you're not supposed to do*

7    *things like that.  There's a rule that there's supposed to be*

8    *one deposition, one day, seven hours and so forth.*

9           So, I wouldn't be happy with that sort of objection at

10   that time, if you see what I'm saying, Mr. Sanford.

11          MR. SANFORD:  Yeah, that's fair.  I think, to your

12   point, if the total hours were limited to seven, and assuming

13   that plaintiff is not attempting to call Holland as his own

14   witness in this case, which seems like it would be just a

15   bit beyond normal strategy given that they have their own case

16   against each other, it's fine with Mr. Holland if we bifurcated

17   and if there needs to be a couple hours spent with the

18   defendant and then later some narrowly tailored document

19   request before a Subpoena to Mr. Holland, so be it, or we can

20   have it out today and I know that the Court can make a good

21   decision about what's overly broad and what's not.

22          THE COURT:  All right.  Thank you, Mr. Sanford.  Now

23   let's hear from the defendants who are causing all these

24   troubles.  Ms. Small, let me hear from you, if I could.

25          MS. SMALL:  Yes, Your Honor.  Hopefully I can dispel

1    some mystery here.  So, obviously Mr. Paul has sued our client

2    for defamation for what I'll call just kind of very

3    colloquially accusing Mr. Paul of engaging in a fraud, a scam,

4    okay.  One of our defenses is, of course, truth.  Right?  And

5    that defense, for better or worse, given all the procedure of

6    peculiarity as of where we are, our defense of truth happens to

7    mirror Don Holland's case in chief, they overlap.  How do we

8    prove, the defense, that there was a scam in this case?  We

9    have to show a misrepresentation, reliance, right, so on and so

10   forth.  Those are part of the things that Mr. Holland is going

11   to be proving in that case.  And so, we recognize the issue

12   that it puts Mr. Holland and his attorneys in in a class action

13   suit having to present their lead plaintiff for deposition

14   before that case even gets off the ground, and that's part of

15   the reason for the motion to transfer, Your Honor.  We're

16   hoping that that gets transferred, consolidated, it would

17   resolve these kind of peculiar issues.

18          But putting that aside, that hasn't been ruled on, we

19   certainly can't prejudice our client by not proceeding with

20   discovery on the truth, and so we do want to depose

21   Mr. Holland.  We have spoken with Mr. Kherkher, as Mr. Sanford

22   suggested, he did agree to voluntarily present himself, and so

23   we told him the nature kind of of our questions.  Of course,

24   Your Honor, I'm not making any representations that were

25   limiting to those types of questions, but obviously that's

 1  going to be a central theme of the deposition.  And so, we

 2  don't oppose Mr. Paul's motion.  I think it's appropriate to

 3  ask for documents if they need them and we leave it to Mr. Paul

 4  to sort that out with Mr. Sanford in terms of the scope and

 5  what they can agree to.  But I can tell you that the subject of

 6  the testimony would include basically just what Mr. Phillips

 7  said, kind of his experience with CryptoZoo, representations

 8  made by the plaintiff here, Mr. Paul, whose reliance on those

 9  representations, and it's relevant, Your Honor, because of our

10  defense of truth.

11          THE COURT:  Sounds to me like it would end up being

12  the deposition of the plaintiff in the other case.

13          MS. SMALL:  All the more reason to consolidate.

14          THE COURT:  Sounds allot like that's the same

15  deposition they're going to be holding in that case, which

16  there's no discovery in that case yet.  Maybe that deposition

17  will be real useful in figuring out your class problems, but

18  I'm not supposed -- that's something I'm concerned about.  Do

19  we need to have -- I mean, we're on a schedule.  I gather

20  they're not on a discovery schedule.  I'm just concerned that

21  we're getting into this and, I mean, I can't imagine that

22  Mr. Paul wouldn't say, okay, I need everything that I would

23  need when I'm deposing this guy in the trial because of that --

24  deposing that guy in the discovery of that case because, as you

25  just mentioned, basically your truth defense is their case in

MOTIONS HEARING                    15

1   chief.

2              MS. SMALL:  Like I said, what Mr. Paul has subpoenaed

3   from him, we take no position on one way or the other.

4              MR. SANFORD:  But to your point, Your Honor --

5              THE COURT:  Let me go back around.  I'm going to go in

6   reverse order.  Let me hear from you, Mr. Sanford, and then

7   I'll come back to you, Mr. Phillips, after you've got to hear

8   from both of them.  Go ahead, Mr. Sanford.

9              MR. SANFORD:  Thank you.  To your point, Mr. Holland

10  doesn't want to have broad depositions by Mr. Paul's very

11  talented counsel twice.  Once for all of the issues that would

12  percolate in this case potentially and then all of the issues

13  that would percolate in his own case, which is where his

14  deposition should be and, like, there's nothing that I can do

15  to convince you that these cases should be transferred -- this

16  case should be transferred to the other one.  You know where I

17  stand.  And I'm not in a position to say quit doing discovery

18  in this case please because I'm not a party here, but

19  Mr. Holland has rights in his first filed case, which it will

20  be very hard for this Court to respect while granting the

21  relief that Mr. Paul is seeking.

22             THE COURT:  I'm hearing you, Mr. Sanford.  I guess my

23  concern is -- and I understand it's a different case, but there

24  is an alignment in its way between Mr. Findeisen and

25  Mr. Holland in the larger scheme because of exactly of what's

1   Ms. Small's point, but I'm surprised you're not moving to quash

2   everybody's deposition here and saying, *Whoa, whoa, whoa, whoa,*

3   *wait.  Mr. Findeisen, we wish you very well.  Coffeezilla, we*

4   *wish you very well.  We understand, but no, I've got to -- I*

5   *don't want to open myself up to multiple depositions, to*

6   *cross-depositions in different ways to having to disclose*

7   *documents before there's ever any discovery.  I can't get*

8   *anything from the other side.*

9           I mean, all those sorts of things, all the prejudice

10  issues that you are alluding to would seem to take us a step

11  before the documents and get us to *Wait, wait, wait, what?*

12  *Depose me now?*  Yeah, that's my concern.

13          MR. SANFORD:  Yeah, I'm not sure that Mr. Holland is

14  in a position to have sufficient standing to ask this Court to

15  do anything other than rule on issues related to him in this

16  very narrow slice of his life which is that he is, you know,

17  very naturally a witness in this case in some regard.  Although

18  in other regards not, so -- yeah.

19          THE COURT:  Tricky little issue here.  Trying to

20  figure it out.

21          MR. SANFORD:  I think it was both in this case that

22  Mr. Findeisen's counsel made the argument that we made in the

23  Holland case, which is that not only should the case be in

24  front of the same judge, but if they're not to be tried at the

25  same time, it is the Holland v. Paul case which should be tried

1    first because it is an opportunity for a jury to make a

2    determination of fact, which goes to the very heart of the

3    issue that underpins one of the -- the major claim in this

4    case.

5            THE COURT:  Yeah.  All right.  Thank you.

6    Mr. Phillips, I'm going around the room again, the Zoom room

7    again, to try to figure out what to do in this circumstance.

8    I'm concerned for the reasons I identified.  I'm happy to hear

9    additional points as a general matter and then maybe we just

10   have to dive into the details.

11           MR. PHILLIPS:  Yeah, two points I want to make, Your

12   Honor.  The first is that it sounds like Ms. Small kind of

13   confirmed, you know, our belief as to the scope of the

14   testimony they seek, so credit to my prognosticating abilities

15   on that one, but you know, I think that helps demonstrate the

16   relevance of their request when we get into them.

17           The second point I want to make is I'm a little

18   perplexed by what I'm hearing here from Mr. Sanford and

19   Ms. Small because this seems to have become an argument about

20   why this deposition shouldn't happen and how its timing is

21   inappropriate, but Ms. Small just confirmed something that we

22   pointed out in our briefing that we also suspected which is

23   that there's not even a Subpoena here.  There were obviously

24   discussions between defendant's counsel and counsel for

25   Mr. Holland whereby he agreed to voluntarily appear in this

MOTIONS HEARING                    18

1   case and give testimony, so not only was there no motion to

2   quash, there's not even compulsion here.  And you know, that

3   leads us to believe, as we also suggest in our motion, that

4   what all of this really -- I don't want to use the term

5   "collusion" but I think there is an effort here to manufacture

6   an issue for Your Honor to try to bolster defendant's motion to

7   transfer.  And so, you know, again, we are just here and we're

8   seeking documents because defendants noticed this deposition,

9   apparently in agreement with Mr. Holland's counsel, so it seems

10  a little odd for Mr. Holland's counsel to be complaining about

11  the possibility of the deposition even occurring in this case

12  when they agreed to it.

13          THE COURT:  Well, let me just ask you, is there an

14  actual notice of -- you say in your motion on the first page,

15  defendants indicated an intent to depose Holland and noticed

16  his deposition.

17          MR. PHILLIPS:  Yes.

18          THE COURT:  Notice?  Have you seen something that

19  says, *Sir, you're getting deposed?*

20          MR. PHILLIPS:  Yes, Your Honor.

21          THE COURT:  *Hey, we'd like to talk.*

22          MR. PHILLIPS:  Yes, Your Honor.  And if I didn't -- I

23  think it might have been --

24          THE COURT:  It may have been attached to an exhibit.

25          MR. PHILLIPS:  I think it might have been.

1          THE COURT:  Yeah.

2          MR. PHILLIPS:  Yeah.

3          THE COURT:  I hope you see why I'm asking the

4  question.

5          MR. PHILLIPS:  Yeah, sorry.  I think it's Exhibit A to

6  our motion, Your Honor.

7          THE COURT:  I'm looking right now.

8          MR. PHILLIPS:  Notice of Deposition.

9          THE COURT:  Got it.  Looking to see what it says.  It

10  is proposed, the time, the time has passed, so that's not an

11  issue.

12          All right, so it's not just -- then to come back to

13  your other statement, Mr. Phillips, it's not just a friendly

14  conversation, but they've actually noticed a deposition.  There

15  will be a stenographer there, they'll be placed under oath and

16  so forth.

17          MR. PHILLIPS:  Of course, Your Honor.  What I mean is

18  I've seen a notice.  I've never seen a Subpoena.

19          THE COURT:  I see.

20          MR. PHILLIPS:  That I believe that Mr. Holland and his

21  counsel have agreed with counsel for defendants to have him

22  appear voluntary --

23          THE COURT:  But still, under deposition.

24          MR. PHILLIPS:  Yes.

25          THE COURT:  Got you.  I was just misunderstanding your

1    point and I'm sorry for my misunderstanding.

2            MR. PHILLIPS:  No problem, Your Honor.

3            THE COURT:  Okay.  And to your other point,

4    Mr. Phillips, it seemed to me like I think Ms. Small more than

5    confirmed your argument, but expanded upon it.  She pretty much

6    said the entirety of the case in 1:23-110, the entirety of

7    Mr. Holland's case is the elements of his case, because they're

8    the elements of her defense on behalf of Mr. Findeisen and

9    Coffee Break Productions, it's going to look like a full

10   deposition on everything in that other case is what it sounded

11   like.

12           MR. PHILLIPS:  That appears to be defendant's intent.

13   I agree.

14           THE COURT:  Yeah.  It gives me pause.  I hope you

15   would understand why.  It's a big deposition to be holding in

16   this particular case, though I understand exactly why Ms. Small

17   is saying it's needed.

18           Given that statement, do you think the five topics on

19   which we're fighting are really all the topics that you would

20   be -- now I'm asking you to put on the hat, you may not be

21   representing Mr. Paul in that other case, put on the hat of the

22   lawyers in that case.  This may be their shot, so I'm a little

23   worried that this deposition could get worse, broader, not more

24   narrow.

25           MR. PHILLIPS:  Yeah, Your Honor, I am not representing

1   Mr. Paul in that case.  Our Subpoena is focused on this case

2   and the defamation case and what we expect defendants to do in

3   terms of his testimony.  So we're here about the three requests

4   we made.  I don't have any intent to expand it and I don't

5   think the existence of the other case, you know, he'll get

6   deposed in that case too.  That's the way --

7           THE COURT:  Okay.  All right, fine.  It strikes me as

8   an awkward way to address this issue, but I think what I'm

9   going to do is I'm going to go through these three issues that

10  we have to resolve and try to come up with an answer on those.

11  I will tell you, Ms. Small, that that second part, the Subpoena

12  and/or the time and place of the deposition, I'm going to

13  require that that time and place be held after September 11th.

14  I'm going to rule on the other document, other issues that are

15  in front of me and get that squared away.  For example, if

16  there's any consolidation, if there's any transfer, anything

17  like that, that everything I'm doing here may be subject to

18  reconsideration, and so it's a situation where I'll go through

19  the ones, give y'all marching orders as best as I can for the

20  documents to disclose on behalf of Mr. -- from Mr. Holland to

21  Mr. Phillips, but of course, copies to you, Ms. Small, but then

22  we're going to wait on any actual deposition until the other

23  matters get resolved.  I think that's the only way to avoid

24  messing things up in the other case.  Y'all may not have to

25  worry about that, Mr. Phillips, but I have to worry about it a

1    little bit.

2          So, with that, I appreciate the general presentations,

3    I had to get to where we were with regard to the larger issues

4    before diving into the individual issues.  So, on the five

5    requests, as I understand it, two and four are not necessarily

6    before the Court because Mr. Holland says he has no materials

7    responsive to those requests, unless we needed to address those

8    things, Mr. Phillips.

9          MR. PHILLIPS:  No, Your Honor, I'm happy to accept his

10   counsel's representation on that.

11         THE COURT:  All right, so it's one, three and five.

12   Let's go through them.  What I'm going to do is hear on one,

13   then hear on three, and then hear on five from both you and

14   Mr. Sanford, and then Ms. Small can chime in as to any one

15   afterwards, if necessary.  So, let me hear from you,

16   Mr. Phillips, on number one which is all non-privileged

17   documents and communications concerning CryptoZoo, Logan Paul,

18   Logan Paul's involvement with CryptoZoo, and the promotion of

19   CryptoZoo currency tokens and NFTs.

20         MR. PHILLIPS:  Yes, so Your Honor, Ms. Small just

21   confirmed that they intend to elicit the testimony from

22   Mr. Holland about the reasons why he became involved in the

23   CryptoZoo project, that he supposedly relied on promotional

24   statements by Mr. Paul or others involved in the project to,

25   you know, induce him to get involved, and so that's what we're

1  seeking here is just materials related to his involvement in

2  CryptoZoo and this claim that he was induced to do so by

3  certain promotional statements.

4        THE COURT:  Let me ask you on that one.  The only

5  immediate limitation that I think Mr. Sanford mentioned but he

6  may have mentioned other ones and that came to my mind is

7  timeframe.  Can you set a -- this is an incident, I mean, I

8  remember from the other parts of the case there's this whole

9  series of incidents that happened.  Can we limit it to in some

10 way in time?

11       MR. PHILLIPS:  I think it is by circumstances, Your

12 Honor, and we try to point this out --*(inaudible)*-- I did in my

13 letter to Mr. Sanford's firm, but the CryptoZoo project, it

14 began in 2021 and it was essentially defunct by 2023.

15 Mr. Holland says in the class action complaint that he made his

16 purchases of CryptoZoo tokens in 2021.  So I think just by

17 necessity, we're talking about a short timeframe here.

18       THE COURT:  All right.  So, well, would it be 2021 or

19 2023 for Mr. Holland's involvement?  Do you think that there's

20 stuff that happened after 2021 where he's like, *Hey, what's*

21 *going on with this?*  Because at that point --

22       MR. PHILLIPS:  Yes --

23       THE COURT:  Statements of reliance mostly is there

24 unless there's later statements that you think you want to

25 explore that they're claiming, hey, there's later reliance by

1   Holland.

2          MR. PHILLIPS:  It's possible because he -- my

3   understanding is he claims that he bought some tokens in 2021

4   and that he held onto them and they lost all value, is my

5   understanding.  And so, he could claim, *Well, there were later*

6   *statements they made that convinced me not to sell, I wanted to*

7   *hold,* so in that sense, I would ask for documents throughout

8   the life of the project at a minimum which would be 2021 to

9   2023.

10         THE COURT:  And that's the end of 2023?  Do you want

11  me to lock it down to a month or do you recall?

12         MR. PHILLIPS:  I really can't because I don't have the

13  exact month in my head, I'm sorry.

14         THE COURT:  That's all right.  Last question related

15  to that.  Are the allegations in Mr. Holland's Complaint in the

16  Austin case specific as to those dates, if you recall?

17         MR. PHILLIPS:  I do not believe so.  I think it says

18  that in 2021 he made one or two purchases of tokens.

19         THE COURT:  Okay.  All right, very well.  Mr. Sanford,

20  thank you.  Let me go around on number one first and then three

21  and five.

22         Mr. Sanford, let me hear from you on number one.  I'm

23  concerned about dates as you identified, but there may have

24  been other issues you were concerned about.

25         MR. SANFORD:  The date is one thing for sure, and if

MOTIONS HEARING                    25

1    the issue is whether or not Mr. Paul's content

2    online -- *(inaudible)*-- and/or induced Mr. Holland to

3    participate in a transaction with CryptoZoo, then it seems to

4    me -- which I think is what I'm hearing the actual issue is.  I

5    can't believe there would be a set of facts where there would

6    be post-transaction reliance that would be determinative of

7    whether or not the CryptoZoo project was a scam.  That seems

8    like a nonsensical thing to hypothesize about.  Having said

9    that, we are lawyers, we're in the business of words and of

10   parsing words and it makes some people hate us and some people

11   love us, but we really do have to look at the actual words of

12   the request.

13          This request demands that Holland produce documents

14   and communications concerning Mr. Paul.  Now, each time that

15   Mr. Paul's lawyers talk about this request in this hearing and

16   in their briefing, they pretend that it says concerning

17   Mr. Paul's promotion of CryptoZoo products, but it doesn't.

18   One of the items that is a category in this request is

19   communications, documents, concerning Mr. Paul.  Well, if you

20   watch You Tube, you have a list of videos that you can access

21   that shows all of the videos you've ever seen, one imagines.

22   Theoretically you have access to that, he's watched one of

23   Mr. Paul's podcasts or wrestling videos or whatever else there

24   might be from, well, as written now, from any time, then that

25   would be a part -- that would come under this request.

1        Now, if it's limited from '21 to '23, that makes

2   things better.  If it's limited to '21, that's even better, but

3   if the Court crafts this to be limited to documents and

4   communications concerning Mr. Paul's involvement in CryptoZoo

5   or promotion of CryptoZoo products, then you have a request

6   that is actually tailored to the actual business that might be

7   relevant to both this case and the other one.

8        THE COURT:  I guess I'm more imaginative than you

9   guys.  I can immediately think of ways that post 2021

10  statements might be relevant.  The way I imagine it is

11  statements along the lines of *Oh, no, don't sell that stuff,*

12  *Mr. Holland, you're going to make a fortune on it.  Please hold*

13  *onto that because if they sell it, it's going to knock the*

14  *price down.*

15       And if there is this scam, allegedly, it would be to

16  keep that price up as long as possible, and so I could see all

17  kinds of statements being made along those lines, but that's

18  just me, a criminal defense lawyer thinking of the way things

19  might happen.  That has nothing to do with whether it actually

20  happened here, it's completely speculative at this point.

21       So, all right, very well.  Ms. Small, let me hear from

22  you.  I didn't know if you had anything you wanted to chime in

23  on on request number one if you happen to have it in front of

24  you.

25       MS. SMALL:  I do have it in front of me, Your Honor.

1    I have nothing to chime in on.

2            THE COURT:  All right, very well.  So, all right, I'm

3    going to give y'all the answers on each one of them as we go

4    through.  Of course, as you know, I'll do a written order that

5    captures the essence of my ruling and you also double-check it

6    if you need clarity.  Mr. Phillips, I see you raising your

7    hand.  I'm completely happy to hear from you.  It's your

8    motion, so I'll give you the last word, sir.

9            MR. PHILLIPS:  Oh, I just wanted to try and help and

10   narrow things if I can because the argument that this request

11   is seeking anything at all related to Mr. Paul if it has

12   nothing to do with CryptoZoo, you know, I sent a letter to

13   Mr. Sanford's firm after they served their objection saying

14   that's not what we're asking for, here is what we're asking

15   for, let's meet and confer, and I got ignored for weeks and

16   here we are.  You know, that's not what we're seeking.  And so,

17   looking at the language of that request and if it's not the

18   most ideal drafting, then I take the blame for that, but there

19   just doesn't need to be, you know, smokescreens or confusion

20   about what's at issue, we could have just talked about it, but

21   that after the word "CryptoZoo" first appears, that comma Logan

22   Paul comma, I think we could strike that and the request would

23   get to what it is that we're seeking.

24           THE COURT:  Well, thank you, Mr. Phillips.  That is --

25   you again anticipate things in the case.  That's exactly what

1    my ruling is going to be.  I am granting the motion to enforce

2    in part.  With request number one, it will be I'm going to take

3    out the language that you said, so it will be all

4    non-privileged documents and communications concerning

5    CryptoZoo and/or Logan Paul's involvement with CryptoZoo.

6         Let me be clear about this.  There may be CryptoZoo

7    statements made by Mr. Holland or communications that didn't

8    directly reference Logan Paul, it would still be relevant to

9    the Court's mind, and/or the promotion of CryptoZoo-related

10   crypto currency, tokens or non-fungible tokens, NFTs, from

11   January 1st, 2021 to December 31st, 2023.

12        The parties may by agreement decide to limit the

13   timeframe if they can get a tighter timeframe, but that's the

14   way I'm going to put it for now.  It's going to start when it

15   starts and end when it ends, so y'all may be able to tighten

16   that, but I don't think it will matter.

17        Now let's go to number three.  That is all

18   non-privileged documents and communications related to

19   purchases or sales of CryptoZoo-related crypto currency, tokens

20   or NFTs including all potential purchases or sales by you.

21   Mr. Phillips, let me hear from you.

22        MR. PHILLIPS:  Yes, Your Honor, I hope this one is

23   pretty straightforward because we've heard from Ms. Small that

24   that's exactly what they intend to ask Mr. Holland about.  As

25   it stands, he claims that he bought CryptoZoo-related

1    currencies, that he held them and, you know, sold or didn't

2    sell, but we don't have any way to corroborate or refute that.

3    We don't have documents on it and I think we're entitled to

4    that.  So, this request, to me, really just gets to the meat of

5    what it is they want to ask him about.

6         THE COURT:  All right.  Well, I just have to ask you

7    about the last part and then I'll ask Mr. Sanford.  It's the

8    including all potential purchases or sales considered by you is

9    the part that's concerning me because, in other words, if he

10   made any statements -- limited to CryptoZoo is better, but --

11   you're talking about other people's purchases or other people's

12   sales?  I'm not exactly sure what that means.  Wouldn't it be

13   his sales and purchases?

14        MR. PHILLIPS:  That's what we're intending to ask

15   about.  And yes, limited to CryptoZoo.

16        THE COURT:  All right.  Well, my instinct is to say

17   all non-privileged documents and communications related to your

18   purchases or sales of CryptoZoo and so on.  That solves the

19   biggest problem for me, but Mr. Sanford, there may be other

20   objections.  I'm happy to put the same date restriction along

21   the lines of what I described and I'm happy to hear if you had

22   any other objections.

23        MR. SANFORD:  Yeah, it's clear to me when I read this

24   that this has nothing to do with Paul v. Findeisen.  Whether or

25   not the CryptoZoo project was a scam which benefited Mr. Paul

MOTIONS HEARING                    30

1    and hurt a larger audience cannot be ascertained by whether or

2    not Holland purchased CryptoZoo tokens or products or whatever

3    the nomenclature is.  It's simply not relevant to the assertion

4    by Paul that Findeisen's statements wherein he called him

5    scammer are defamatory.  Holland has nothing to do with that.

6    The records of Holland's transaction have nothing to do with

7    that.

8            I will say that when Holland makes his case in Holland

9    v. Paul and CryptoZoo, he will need to prove that he purchased

10   items related to the CryptoZoo project, but boy, they have

11   nothing to do with Paul v. Findeisen, full stop, they just

12   don't.  It's a fishing expedition for facts related to the

13   other case.

14           If the Court disagrees with me and is inclined to

15   allow some discovery on this issue, I think it makes the most

16   sense to restrict the document production, which again would

17   not be allowed in Holland v. CryptoZoo at this time, to simply

18   documents and communications relating to Mr. Holland's purchase

19   or sale of CryptoZoo products.  Potential purchase or sale is a

20   request, as I read it, to go search all of his text messages

21   and e-mails to see if he ever told a friend that he was

22   thinking about potentially buying or potentially selling a

23   CryptoZoo product.  That has nothing to do with whether or not

24   the CryptoZoo project was a scam.

25           THE COURT:  Well, thank you, let me hear from you,

 1  Ms. Small again, I don't know if you have any comments on this

 2  one either.

 3        MS. SMALL:  Briefly, I read request number three as

 4  including documents that would -- relating to purchases or

 5  sales to me includes the decision to purchase or sale.  Those

 6  decisions may bear on the issue of reliance, which of course is

 7  an element.

 8        THE COURT:  All right.  Thank you, Ms. Small.  You

 9  guys are making all the arguments and all the rulings for me.

10  That's exactly the way I looked at it as well.  This looks like

11  it would tie into reliance issue.  There's a little bit of a

12  question as to whether the allegedly defamatory statement in

13  this case requires reliance in the same way.  Like, for

14  example, if someone tries to sell you the Brooklyn Bridge and

15  you're walking by and say, *Don't listen to that guy, he's a*

16  *scammer or he's a fraud,* the fact that you didn't rely on it --

17  I'm not a hundred percent sure how reliance fits into this, but

18  under the rules of discovery, I think it's within the realm of

19  discovery when it's ultimately admissible on a strict relevancy

20  issue as Mr. Sanford has mentioned.  I think it can be inquired

21  into, so that's what I'm going to do.  I'm going to grant this

22  one in part as well and it will be all non-privileged documents

23  and communications relating to Mr. Holland's purchases or sales

24  of CryptoZoo-related currency, tokens or NFTs from

25  December 2021 to -- I'm sorry, January 2021 to December 2023.

1          Now let's look at the last one which is number five.

2   And this is non-CryptoZoo stuff and this is the one, if I'm

3   reading it correctly, this is the one I'm most concerned about,

4   Mr. Phillips.  I've been pretty much on your side on these

5   ones, this one is where I'm starting to get concern.

6          MR. PHILLIPS:  Well, let me try to turn you around,

7   Your Honor.  This goes to again what Ms. Small stated is going

8   to be the expected topic of their testimony, that Mr. Holland

9   is a victim and that he was induced to do this.  My

10  understanding from Mr. Holland's prior statements is that he

11  actually began purchasing crypto currency products in 2016 with

12  again the CryptoZoo project starting in 2021, so it's clear

13  that he had a fair bit of experience with crypto currencies and

14  anyone with that experience would know that these things are

15  highly volatile and that, you know, throwing your money into

16  speculative crypto currencies is a dicey proposition or at

17  least an inherently risky one.  And so, our concern is that to

18  the extent defendants are going to try to portray Mr. Holland

19  as a relative babe in the woods and a victim, we think his

20  experience level with crypto currency investments is relevant

21  to showing that maybe that's not the case.

22          THE COURT:  All right.  Mr. Sanford, happy to hear

23  from you next.  As I mentioned, I was leaning more your way on

24  this issue and I want to hear your views.

25          MR. SANFORD:  Yeah, whether crypto products are

MOTIONS HEARING                                33

1   inherently speculative or volatile is irrelevant as to the

2   representations that Paul did or didn't make surrounding the

3   CryptoZoo coin and the intended game.  And whether Mr. Holland

4   is a super sophisticated purchaser of crypto products is

5   completely irrelevant to the claims asserted in Paul v.

6   Findeisen claim.  Whether they are relevant to his ability to

7   serve as a class action representative in Holland v. CryptoZoo

8   is obviously not before this Court.  Whether he's similarly

9   situated to other purchasers of the products, again not

10  relevant here, very relevant there, and I just don't think this

11  one chins the bar of touching the issues in this case.

12          THE COURT:  All right.  Thank you.  Ms. Small, let me

13  turn to you.  This one I actually want your input.  Is it your

14  intention to be asking Mr. Holland about other purchases of

15  crypto currency and related products and things like that?

16          MS. SMALL:  I mean, I don't want to hold myself to

17  anything, but I don't think so, but I'm assuming Mr. Phillips

18  might have a different answer.

19          THE COURT:  Well, like I said, I mean, part of this is

20  that whole question of examination/cross-examination that I'm

21  concerned about that I might say no, you can't have that stuff

22  and then low and behold you're spending an hour on it with

23  Mr. Holland.  That's the thing I'd be concerned about.

24          MS. SMALL:  No, Your Honor.

25          THE COURT:  All right, very well.  Mr. Phillips, happy

1    to hear back from you.  You can always get the last word if I

2    can give it to you.

3            MR. PHILLIPS:  Thank you, Your Honor, and I don't want

4    it to get lost here that, as you just mentioned, the scope of

5    discovery is broad and I don't think we need to, like, walk on

6    eggshells around that.  You know, if defendants, as it sure

7    sounds like they are, are going to try to portray Mr. Holland

8    as a victim and, you know, naivete on his part and he got

9    scammed, it is relevant to rebutting that portrayal and

10   characterization to say that, wait a minute, this guy has

11   actually got a lot of experience doing this and he knew what he

12   was getting himself into.  And so under the broad scope of

13   discovery, I think that ought to be fair game.  Whether any of

14   it is admissible at the end of the day, you know, again, we're

15   not the ones seeking this deposition.

16           THE COURT:  I understand.

17           MR. PHILLIPS:  If Mr. Sanford suddenly thinks a

18   deposition that he agreed to, not only didn't move to quash but

19   agreed to is completely irrelevant, we'd probably agree with

20   that and it would make for a good motion in limine, but right

21   now we're in discovery.

22           THE COURT:  All right.  I'm not sure it's completely

23   irrelevant, but I'm also very worried about us doing it in this

24   context, so thank you, I appreciate it.

25           On this one, this is how I'm going to rule, the motion

MOTIONS HEARING                        35

1   to compel the disclosure of those documents is denied without

2   prejudice.  I'll be very specific about that prejudice.  If

3   during the deposition we start getting into other purchases of

4   crypto currency or any sort of issue about how, as you

5   described it, Mr. Phillips, Mr. Holland is a babe in the woods

6   in the crypto currency world such that that sort of information

7   would be relevant to cross-examination, I will hear from

8   Mr. Phillips if he moves to terminate or delay the rest of that

9   deposition, stop things and start making some discovery.

10          So, Ms. Small, this is going to come back to you to be

11   careful as far as it goes.

12          Now, that being said, Mr. Phillips, I'll turn to you

13   as well.  If they just ask some general question to which a

14   general answer would give you sufficient cross-examination,

15   just do that.  There's no reason to have a giant fight over it,

16   this is not a party to this case, and to have a giant fight

17   over it, if that's all it is, just one reference and one

18   response, let's try to limit it if possible.  If there's a

19   question about this, Ms. Small and Mr. Phillips, I would

20   appreciate it if y'all are worried about how exactly to deal

21   with that problem, maybe discuss it in advance before you have

22   the deposition to see if you can keep to a line that makes

23   sense to both parties without having to get this information.

24   If y'all can't, then I'm going to come back and we'll have

25   litigation on it.  All that being said, none of these things

 1    are happening until after the September 11th.

 2           So, in summary, I'm granting in part on request number

 3    one and request number three.  I'm denying without prejudice on

 4    request number five.  And request number two and request number

 5    four are denied as moot because there are no such documents to

 6    produce.

 7           And I'll also order that any deposition be held after

 8    September 11th.  I'll ask the parties to work through the

 9    document issues as to when to produce them in light of that

10    deposition deadline and things like that.  Unless there's

11    additional matters that the parties wish me to address, I think

12    that covers everything.

13           Mr. Phillips, let me start with you again since it's

14    your motion.

15           MR. PHILLIPS:  No, Your Honor.  Thank you for your

16    time.

17           THE COURT:  All right, very well.  Mr. Sanford,

18    anything else from your perspective -- I'm sorry, from

19    Mr. Holland's perspective?

20           MR. SANFORD:  Not at all, Your Honor.

21           THE COURT:  Very well.  Ms. Small, did I miss anything

22    that you wanted me to clarify?

23           MS. SMALL:  I do have one clarification.

24           THE COURT:  Yes, ma'am.

25           MS. SMALL:  Is the ruling that the deposition should

MOTIONS HEARING                                    37

 1  not be set until after the hearing or after the ruling on the

 2  hearing?

 3          THE COURT:  Well, that's a great question.  You know

 4  my usual approach.  I try to give y'all an answer right in the

 5  courtroom almost every time, so it may be the same day, but

 6  let's make it the ruling after the hearing just to be safe.  I

 7  don't want to put you crosswise between that ruling and this

 8  deposition.

 9          I did want to mention one other matter that's not in

10  front of me, but will matter to the parties.  The parties today

11  filed a motion, a joint motion to change the trial date and

12  push it back.  I can't rule on that obviously at this time and,

13  in fact, I wouldn't even try since that's really Judge Garcia's

14  docket.  That being said, he is going to put it back.  I got a

15  note during our hearing from his staff that that motion will be

16  granted.  I do not know what the date is going to be, so you

17  should keep an eye out for that new date.

18          All right.  I'm going to try to get a written order

19  out that captures the essence of my ruling, and if there's any

20  question as to it, please reach out to the Court for

21  clarification.  We are in recess at this time and you're

22  excused.  Thank you.

23          Wait.  I see Mr. Cedillo who's joined us, waving his

24  hand.  Mr. Cedillo, are you waving or is there something you

25  wanted to add, sir?

1          MR. CEDILLO:  Just to apologize that I was late, Your

2   Honor, but obviously I wasn't needed.  I was detained,

3   circumstances beyond my control or I would have been here on

4   time.

5          THE COURT:  No problem.

6          MR. CEDILLO:  I wore a tie.

7          THE COURT:  Thank you.  I appreciate that,

8   Mr. Cedillo, it's no problem, always happy to have you, but

9   yes, I think even without your wise counsel, I was able to

10  muddle through.

11         Mr. Sanford, was there something else?  I saw your

12  hand as well, sir.

13         MR. SANFORD:  Yes, just wanted to clarify whether the

14  Court would be ruling in its written ruling that these

15  documents are due at a specific time or are they due at the

16  time of the deposition?  Just want to make clear that I'm on

17  the right track.

18         THE COURT:  No, no, that's a good question.  I

19  addressed it just very briefly.  I'm asking the parties to

20  confer on that and see if they can work it out.  If there's an

21  issue about that that y'all need my additional ruling, just

22  file a motion or seek clarification and I'll clarify, but I'm

23  not going to set any deadlines for that.  The parties are, to

24  my mind, working together, despite the dispute here, are

25  working together pretty well and I'll ask them all to confer on

1   that matter, as well as the matter I mentioned with Ms. Small,

2   to confer with Mr. Phillips as to how far into this last issue,

3   request number five, we're going to get.  Hopefully in advance

4   so that it doesn't delay or obstruct the deposition from going

5   forward.

6          That concludes this hearing and we are in recess at

7   this time.  Thank you all for your appearance and your input

8   and we're in recess.

9          *(2:26 p.m.)*

10                         *   *   *

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                        *   *   *   *   *

2              I certify that the foregoing is a correct transcript

3     from the electronic sound recording of the proceedings in the

4     above-entitled matter.

5              I further certify that the transcript fees and format

6     comply with those prescribed by the Court and the Judicial

7     Conference of the United States.

8

9

10    Date:  August 19, 2025

11

12     /s/ Angela M. Hailey

13    Official Court Reporter
      United States District Court
14    262 West Nueva Street
      San Antonio, Texas  78207
15    (210)244-5048

16

17

18

19

20

21

22

23

24

25