IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

SAN ANTONIO DIVISION

| | |
|---|---|
| LOGAN PAUL,<br><br>　　　　　　　　　*Plaintiff*,<br><br>　v.<br><br>STEPHEN FINDEISEN AND COFFEE BREAK PRODUCTIONS LLC D/B/A COFFEEZILLA,<br><br>　　　　　　　　　*Defendants*. | Civil Action No. 5:24-cv-00717 |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL**

Defendants' Motion to Compel (ECF 136) is a hodgepodge. First it attacks the sufficiency of Paul's privilege logs. Then it takes issue with Paul's withholding of certain of communications. And then it complains about the format in which Paul produced hundreds of other communications. About the only thing uniting Defendants' arguments is their lack of merit.

**I.  Paul's Privilege Logs Are Adequate.**

Defendants first assert that "Paul's Privilege Logs wholly fail to identify certain individuals or their roles or relationship to Paul." (Mot. 8.) But the logs ***do*** identify all the individuals involved in the logged communications. *See e.g.* Mot. Exhibit B (ECF 136-3).) Defendants' assertion to the contrary is not just wholly unsupported; it is actively refuted by the logs appended to the Motion, which clearly list the individuals involved in each of the logged communications.

As far as those individuals' relationship to Paul, the Motion itself includes a multi-page table listing the third-parties named in the privilege log. (Mot. 4-7.) The center column in that table is titled "Third-Party Role (if Identified by Paul)," and it is full of exactly information the

Motion asserts Paul failed to identify.  (Mot. 4 & n.3 (noting that Paul has already provided most of the information Defendants now demand).)

Even if there were some ambiguity about the roles of the third-parties listed in the logs, there is simply no requirement that a privilege log spell out every listed individual's relationship to the party asserting a privilege. On the contrary, a privilege log need only:

> identify each document and the individuals who were parties to the communications, providing sufficient detail to permit a judgment as to whether the document is at least potentially protected from disclosure. Other required information…*such as the relationship between the individuals listed in the log and the litigating parties*, the maintenance of confidentiality and the reasons for any disclosures of the document to individuals not normally within the privileged relationship, *is then typically supplied by affidavit or deposition testimony*.

*Bowne of N.Y., Inc. v. AmBase Corp.*, 150 F.R.D. 465, 474 (S.D.N.Y. 1993) (emphasis added); *see also United States v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996) (quoting *Bowne*). Defendants' own caselaw is in accord. The decision in *Hernandez v. Frazier*, for example, lists eight criteria for an optimal privilege log without ever suggesting that the party providing the log must specify his relationship to listed individuals.  *See* No. SA-11-CA-9-FB, 2012 WL 12895537, at *5 (W.D. Tex. May 11, 2012).  Defendants just recently deposed Paul and had the opportunity to ask him about his relationship to anyone listed on the privilege log, if they had wanted to.

As a final point on the privilege-logs issue: Defendants' own privilege logs contain much, much less identifying information than do Paul's. *See* ECF 133 at 1-2.  They even omit any context that might otherwise help Paul fill in the logs' many material gaps.  Under those circumstances, it is bold of Defendants to contend that Paul's more substantial privilege logs are so lacking that Paul has forfeited any claim of privilege.  For that reason, too, Defendants' assertions about the adequacy of Paul's privilege logs should be denied.

**II.  The Communications in the Privilege Logs Are Covered by the Attorney-Client Privilege.**

Next, Defendants train their sights on communications that are listed in Paul's privilege logs as involving, not just Paul and his lawyers, but various non-lawyer third parties.  According to Defendants, these "Disputed Communications" cannot be privileged because they "include third parties"—like accountants, insurance agents, and public-relations professionals—"whose presence destroys the privilege."  (Mot. 8.)

Defendants are again mistaken on the law.  They seem to think that whether a third-party's presence on a communication destroys the privilege depends entirely on the third-party's job title, or on whether the party asserting the privilege subsequently sought discovery from the third party.  In actuality, whether a third-party's presence on a communication destroys the privilege depends entirely on the purpose for which the third party was included in the communication.  Two rules along those lines are especially important here.

First, if a third-party was a co-client with the party at the time of the communication, then the third-party's presence on a communication with his and the party's lawyer does not destroy the party's ability to assert privilege over the communication.  *In re XL Specialty Ins. Co.*, 373 S.W.3d 46, 50 (Tex. 2012); *In re Alexander*, 580 S.W.3d 858, 864-65 (Tex. App. 2019).  This is the so-called "co-client doctrine."

Second, a third party's presence on a communication won't destroy privilege in the communication if, at the time of the communication, the third party was employed by the client or the lawyer to assist with obtaining or rendering professional legal services.  *See* Tex. R. Evid. 503(a)(4)(A); *Nat'l Tank Co. v. Brotherton*, 851 S.W.2d 193, 197 (Tex. 1993); *In re Stephens Inc.*, 579 S.W.3d 438, 445 (Tex. App. 2019).  To be clear: Obtaining or rendering legal services doesn't even have to be the *primary* purpose for which client or lawyer retains the third party; it is enough that obtaining or rendering legal services is at least *one* significant reason why the client or lawyer

retains the third party. *Univ. of Texas Sys. v. Franklin Ctr. for Gov. & Pub. Integrity*, 675 S.W.3d 273, 281 (Tex. 2023).

Those two rules show why Defendants are mistaken about the Disputed Communications. Defendants assert, for example, that many of the Disputed Communications cannot be privileged because they include accountants, insurance agents, and public-relations professionals as third-party senders or recipients. (Mot. 2, 8-9.) Again, though, it's not the third-party's job title that matters; it's the purpose for which the third party was included on the communications. Thus:

- Texas courts have long recognized that "an attorney may employ an accountant for the client's benefit"—or vice versa—such that communications between the client, the attorney, and the lawyer will "qualify for the attorney-client privilege." *Parker v. Carnahan*, 772 S.W.2d 151, 157 (Tex. App. 1989); *Ferko v. NASCAR, Inc.*, 218 F.R.D. 125, 134 (E.D. Tex. 2003); *see also United States v. Kovel*, 296 F.2d 918 (2d Cir. 1961) (Friendly, J.).

- Texas courts have also held that a client's communications with his insurance agent may be privileged, especially when the communications concern obtaining or facilitating legal representation for the client. *E.g.*, *In re Fontenot*, 13 S.W.3d 111, 113 (Tex. App. 2000).

- And Texas courts have likewise held that communications with public-relations professionals to be privileged, just so long as the communications are sufficiently related to a legal representation. *E.g.*, *In re Monsanto Co.*, S.W.2d 998, 932 (Tex. App. 1999).

The point is that Defendants cannot overcome a valid claim of privilege simply by pointing out that certain of the Disputed Communications included accountants, insurance agents, or public-

relations professionals.  What matters is the purpose for which those third parties were included in the Disputed Communications.

Defendants, however, say almost nothing about the purpose for which various third parties were included on the Disputed Communications.  That's so even though Paul's privilege logs are replete with examples illustrating that the third parties Defendants identify were, in fact, included on the Disputed Communications to facilitate legal representation.  (Mot. Exhibits A-B.)

To take just one random example, consider Document 247.  As described in one of Paul's privilege logs, Document 247 is an email showing "Communications with tax counsel made in confidence for the purpose of receiving legal advice re corporation formation," as well as "communication with accountants re information needed for tax attorney to provide legal advice." (Mot. Exhibit B at 2.)  The reason the communication with the accountants does not destroy the privilege is spelled out in the log: The communication involving the accountants was made to ensure that Paul's lawyers could offer him sound legal advice about forming a corporation.  And that makes the accountant communication a textbook example of a third-party communication covered by the attorney-client privilege.  *See, e.g.*, *Milburn v. United States*, 804 F. Supp. 2d 544, 548-49 (W.D. Tex. 2010) (attorney may claim privilege "for communications between an attorney and an accountant or other professional, or for documents prepared by such professional for an attorney," provided "that the professional services enabled the giving of legal advice").

Elsewhere in the Motion (chiefly in footnotes), Defendants point out that Paul sought discovery from a few individuals who, according to Paul's privilege logs, were included on some of the Disputed Communications.  (ECF 136 at 5-7 & nn.4-7.)  According to Defendants, Paul may not assert privilege over those Disputed Communications because he "cannot simultaneously

seek discovery of certain communications with a witness and attempt to shield others under a claim of privilege." (*Id.*)

Again, that argument is nonsense and an example illustrates why. Document 207 is one of the Disputed Communications that, according to Defendants, is not subject to any privilege because it includes someone—Paul's former business partner, Eddie Ibanez—from whom Paul has (unsuccessfully) sought discovery in this litigation. (ECF 136 at 6 n.6.) As Paul's privilege logs indicate, Document 207 consists of "Communications with tax counsel made in confidence for the purpose of receiving legal advice re corporate formation." (Mot. Exhibit B at 2.) All the communications come from August 2021.

Given what the record in this case shows about Paul's relationship with Ibanez, and given what Paul's privilege logs reveal about the timing and contents of Document 207, it couldn't be clearer that the co-client doctrine gives Paul a valid privilege claim in Document 207. To spell it out, though: At the time of the communications in Document 207, Paul and Ibanez were engaged in a joint venture (CryptoZoo), along with Jeffrey Levin—who is also identified in Paul's privilege logs as being on Document 207. It doesn't take a detective to figure out why, in pursuing that venture, the three of them would have emailed with a tax lawyer; why the resulting emails would be subject to a valid privilege claim by Paul; or why, in light of subsequent developments laid out in Paul's complaint, Paul might need to subpoena certain materials from Ibanez. But Paul's falling out with Ibanez does not change the fact that their communications with the tax lawyer, for their joint venture, were and are covered by the attorney-client privilege. *See In re XL Specialty Ins. Co.*, 373 S.W.3d at 50.

### III.    There is No Valid Basis for Defendants' Belated Demand that Paul Essentially Redo His Voluminous Documents Productions At this Late Stage of the Case.

Finally, Defendants assert that Paul has not produced certain communications—made via media like Discord, Signal, text message, and WhatsApp—in a "reasonably usable format" because he produced them in JSON format.[1]  (Mot. 1-2.)  There is no merit to that assertion, either.

In the first place, Defendants point to no agreement among the parties that electronic messages would be produced in any particular file-type format.  Defendants themselves have produced electronic messages in various formats, including PDFs and simple screen shots of text messages.  If Defendants wanted to reach agreement on a particular format for productions, they had ample opportunity to do that at the outset of the case—before Paul spent untold amounts of time and money on producing the huge volume of communications Defendants requested.

More importantly though, the Federal Rules of Civil Procedure expressly authorize production of electronically stored information in any form "in which it is ordinarily maintained." Fed. R. Civ. P. 34(b)(2)(E)(ii).  Discord messages are ordinarily maintained in a JSON format.[2] Signal data—including the conversation histories that are accessible only via third-party applications—is likewise most commonly provided in a JSON format.[3]  There can be no issue, therefore, with Paul producing data from media like Discord and Signal in a JSON format.

But even if that weren't the case, JSON obviously qualifies as a "reasonably usable format."    In fact, it's among the most widely used formats for producing electronic

---

[1] JSON is an open-standard-style format with human- and machine-readable text, meaning both humans and machines can read and process content in JSON-formatted materials. *See Axis Ins. Co. v. Barracuda Networks, Inc.*, 160 F.4th 1, 11 n.6 (1st Cir. 2025); *West Publ'g Corp. v. LegalEase Sols., LLC*, 2019 WL 8014512, at *5 (D. Minn. Nov. 22, 2019).

[2] *Your Discord Data Package*, Discord.com, https://support.discord.com/hc/en-us/articles/360004957991-Your-Discord-Data-Package (last visited December 23, 2025).

[3] *Requesting Your Account Data*, Signal.org, https://support.signal.org/hc/en-us/articles/5538911756954-Requesting-your-account-data (last visited December 23, 2025).

communications. *See* 1 J. Grenig and W. Gleisner, eDiscovery & Digital Evidence § 3:39 (2025-26 ed.) ("In discovery of text messages, the focus should be on obtaining messages in formats that preserve key features of the message (including emojis and media) and are easily searchable. *Appropriate formats include CSV and JSON*.") (emphasis added).  For that reason, courts routinely uphold, and sometimes even require, production of electronic communications in JSON format. *E.g.*, *Juul Labs, Inc. v. Chou*, 2022 WL 2161062, at \*5 (C.D. Cal. Apr. 19, 2022) (production of communications in JSON format was adequate, especially given "that there are a 'multitude of commonly used viewers for JSON'"); *Edwards v. Junior State of Am. Found.*, 2021 WL 2793850, at \*1 (E.D. Tex. Jan. 21, 2021) (affirming award of sanctions against plaintiff who failed to produce communications in JSON format); *SEC v. Mut. Benefits Corp.*, 2020 WL 9549546, at \*7 (S.D. Fla. Nov. 25, 2020) ("I note that JSON appears to satisfy the definition of usable, industry standard format").

To the extent there is any question that the JSON-formatted communications are usable, moreover, Defendants dispelled it just a few months ago, when they had no trouble using those communications to question Paul at his day-long deposition.  Nevertheless, Defendants now move this Court to force Paul to undergo the expense and inconvenience of redoing a significant portion of his production, to which they did not object until just a few months ago, as discovery was winding down.  Courts in this State consistently reject such belated specifications, especially when the relevant documents have already been produced in what has been shown to be a usable format. *E.g.*, *Alt Platform, Inc. v. Beckett Collectibles, LLC*, 2025 WL 836049, at \*4 (N.D. Tex. Mar. 17, 2025).

## CONCLUSION

The Court should deny Defendants' Motion to Compel.

8

December 24, 2025

*/s/ Andrew C. Phillips*

Andrew C. Phillips (*Pro Hac Vice*)
Shannon B. Timmann (*Pro Hac Vice*)
MEIER WATKINS PHILLIPS PUSCH LLP
1120 20th St NW, Suite 550
Washington, DC 20036
(202) 318-3655
Email: andy.phillips@mwpp.com
Email: shannon.timmann@mwpp.com

Jeffrey A. Neiman (*Pro Hac Vice*)
Jason L. Mays (*Pro Hac Vice*)
NEIMAN MAYS FLOCH & ALMEIDA, PLLC
100 SE 3rd Ave., Suite 805
Ft. Lauderdale, Florida 33394
Email: jneiman@nmfalawfirm.com
Email: jmays@nmfalawfirm.com

Ricardo G. Cedillo (Texas Bar No. 04043600)
DAVIS, CEDILLO & MENDOZA, INC.
755 E. Mulberry Ave., Ste. 250
San Antonio, TX 78212
(210) 822-6666
Email: rcedillo@lawdcm.com

*Counsel for Plaintiff Logan Paul*

9

## CERTIFICATE OF SERVICE

I hereby certify that, on December 24, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record who are deemed to have consented to electronic service.

*/s/ Andrew C. Phillips*