IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

SAN ANTONIO DIVISION

| | |
|---|---|
| LOGAN PAUL,<br><br>                       *Plaintiff*,<br><br>v.<br><br>STEPHEN FINDEISEN AND COFFEE BREAK PRODUCTIONS LLC D/B/A COFFEEZILLA,<br><br>                       *Defendants*. | Civil Action No. 5:24-cv-00717 |

**RENEWED MOTION AND MOTION FOR RECONSIDERATION OF PLAINTIFF LOGAN PAUL'S MOTION TO COMPEL PRODUCTION OF COMMUNICATIONS TO AND FROM HARRY BAGG AND/OR ED LESZCZYNSKI**

Pursuant to the Court's September 11, 2025 Order [Dkt. 143], Plaintiff Logan Paul hereby renews his prior motion to compel Defendants to produce any communications between themselves and Harry Bagg and/or Ed Leszczynski relating to Defendants' defamatory YouTube videos. (*See* Pl.'s Mot. to Compel Productions of Comm's to and from Harry Bagg and/or Ed Leszczynski (Aug. 6, 2025) [Dkt. 124] ("Motion to Compel" or "MTC").)[1] As set forth below, the Court's denial (without prejudice) of Paul's previous Motion to Compel was based on a misapprehension of fact concerning the scope of a third-party document review conducted by agreement of the Parties, as well as the law governing how defamation plaintiffs are entitled to prove actual malice. Because this misunderstanding was the sole reason that the Court denied

---

[1] The Court's September 11, 2025 Order denied the Motion to Compel without prejudice to being renewed "based on new information, if any, obtained since briefing was filed on the motion." Paul alternatively styles this as a motion for reconsideration of the denial of the Motion to Compel as Paul contends the Court's ruling was based on a mistake of fact.

1

Paul's Motion to Compel, the Court should grant this Renewed Motion and direct Defendants to produce the subject communications.

## BACKGROUND

Paul filed this libel action after Defendants repeatedly accused him of perpetrating a financial scam in connection with a troubled blockchain project called CryptoZoo. (Compl. at 1 (Jun. 27, 2024) (Dkt. 1).) In YouTube videos and Twitter posts, Defendants charged that Paul had scammed and swindled his own fans in connection with the project. In actuality, and as Defendants knew, Paul had been enthusiastic and deeply committed to the project's success. (*Id.* ¶¶ 2, 8, 56, 57, 100, 141, 155.) Although the venture was ultimately unsuccessful, Paul never made a dime from it. (*Id.* ¶¶ 56, 150.) In fact, he lost hundreds of thousands of dollars that he invested in it, and over a million dollars more when he voluntarily chose to commit his personal funds to a "buyback" program to make whole the purchasers of CryptoZoo NFTs. (*Id.* ¶¶ 56, 150.)

Paul's prior Motion to Compel arose from Defendants' refusal to produce certain communications between Defendants and the two men who served as the "editorial team"—along with Defendant Findeisen—for Defendants' defamatory YouTube videos: Harry Bagg (an England-based video editor) and Ed Leszczynski (a Ukraine-based computer graphics artist).[2] Defendants have acknowledged that both men possess relevant, discoverable information.[3] Paul argued that Findeisen's communications with his editorial team concerning the defamatory publications at issue in this case were highly relevant to the core issue of "actual malice"—the

---

[2] The Motion to Compel sought communications relating to the videos listed in Counts II and III of Paul's Complaint, as well as the following three videos: (1) *Investigating Logan Paul's Biggest Scam*, YouTube.com, www.youtube.com/watch?v=386p68_lDHA (Dec. 16, 2022); (2) *The Biggest Fraud in Logan Paul's Scam*, YouTube.com, www.youtube.com/watch?v=wvzyDg40-yw (Dec. 20, 2022); and (3) *Ending Logan Paul's Biggest Scam*, YouTube.com, www.youtube.com/watch?v=8-fugWMBwCg (Dec. 23, 2022).

[3] *See* Defs.' 2d Am. Disclosures (May 7, 2025) [Dkt. 124-2].

2

fault standard Paul must prove in this defamation action as as a public figure plaintiff—and that Paul was therefore able to overcome Defendants' assertion of the Texas qualified journalist's privilege codified at Tex. Civ. Prac. & Rem. Code §§ 22.023, 22.024.  (*See generally* MTC.)  In response, Defendants argued that the editoral team communications at issue were already included within a third-party review of Defendants' withheld documents that was conducted by agreement of the Parties, and therefore Paul should not be permitted to seek a "second bite at the apple" and ask the Court to order their disclosure.  (*See generally* Defs.' Resp. in Opp'n to Pl.'s Mot. to Compel (Aug. 13, 2025) [Dkt. 128] ("Defs.' MTC Resp.").)

In order to resolve (without prejudice) a prior motion to compel filed by Paul, the Parties did agree to have a third-party team conduct a review of the documents being withheld by Defendants based on the Texas qualified privilege.  Crucially, however, that review was strictly *limited* in scope by agreement, and it was never intended to identify *all* documents in Defendants' possession that are relevant to the issue of actual malice.  Instead, the agreed charge to the review team, as reflected in the Parties joint Document Review Memorandum, was to review for two specific types of materials that Defendants would then produce, to the extent they were identified within the materials Defendants were withholding:

> *(1) any communications between Findeisen and others* **in which Findeisen was told that Paul had good-faith intentions with respect to the CryptoZoo project**, *or that Paul lacked bad faith or fraudulent intentions with respect to the CryptoZoo project; and (2) any communications, documents, notes, drafts, or audio or video recordings* **in which Findeisen expressed an understanding or belief that Paul had good-faith intentions vis a vis the CryptoZoo project**, *or that Paul lacked bad faith or fraudulent intentions with respect to the CryptoZoo project.*[4]

(Document Review Memorandum [Dkt. 133-3].)

---

[4] Document Review Memorandum [Dkt. 133-3] (*emphasis added*).

3

Oral argument on Paul's Motion to Compel the editorial communications was held on September 11, 2025. (Hearing Tr. (Oct. 17, 2025) [Dkt. 146].) Ultimately, the Court denied Paul's Motion to Compel, without prejudice. (Order (Sept. 11, 2025) [Dkt. 143].) Although the Court agreed, in reference to the factors relevant to the statutory qualified privilege, that in this case, "malice and intent are going to be key, so [Paul's] got to get that evidence," the Court concluded that Paul failed to overcome one element of the statutory test—the requirement to show that "the interest of the party subpoenaing the information outweighs the public interest in gathering and dissemination of news, including the concerns of the journalist." (*See* Exhibit 1, Hearing Tr. at 59:20-63:12; Order (Sept. 11, 2025) ¶ 2; Tex. Civ. Prac. & Rem. Code § 22.024(4).) In so concluding, the Court essentially accepted Defendants' second-bite-at-the-apple argument—i.e., the notion that the earlier third-party review was designed to identify the same materials Paul now sought in his Motion to Compel—and the Court thus determined that Paul's interest was diminished because he was effectively asking the Court for a do-over because he was dissatisfied with the results of the third-party review. (*See, e.g.*, Exhibit 1 at 38:14-18 ("The more narrow point I'm concerned about because it sounds like there is some overlap between what the third-party reviewer was doing and what you're asking me to look at now…"), *id*. at 60:17-19 ("The procedural question is this, the parties attempted to address many of the issues that would be raised by way of journalistic privilege by way of third-party review.").) Because the Court viewed the third-party review as designed to identify the same materials Paul sought in his Motion to Compel, the Court denied the Motion to Compel without prejudice subject to Paul coming forward with "new information, if any, obtained since briefing was filed on the motion." (*See* Order (Sept. 11, 2025) ¶ 2.)

**ARGUMENT**

The Court's denial without prejudice of Paul's Motion to Compel was plainly based on a notion that there was something inherently inequitable about Paul asking the Court to order disclosure of Defendants' editorial communications after they were not identified as part of the third-party review of all of Defendants' withheld documents. If Paul was in fact asking for a do-over of the third-party review, that ruling would be sound. But that is simply not the case here. The third-party review was, by agreement of the Parties, far more limited in scope than the Court recognized. The reviewers were directed only to attempt to identify materials in which Findeisen was told that Paul had good-faith intentions with respect to CryptoZoo, or materials in which Findeisen himself acknowledged as much. Thus, the reviewers were charged with identifying whether Defendants were withholding any *direct* evidence of actual malice. The review was decidedly *not* an effort to identify all evidence of actual malice in Defendants' possession, because the universe of cognizable evidence of such is far broader than what the Parties agreed to have the reviewers look for. For the Court to hold that a review limited, by agreement, to identifying one particular category of actual malice evidence somehow *precludes* Paul from discovering other highly relevant types of actual malice, which were not within the scope of the review, would be a manifest injustice. The Court can and should prevent that injustice by granting Paul's Motion to Compel Defendants' editorial communications.

A.  **Cognizable Evidence of Actual Malice Is Not Limited to *Direct* Evidence.**

Because Paul is a public figure, to prevail in this action, he must show that Defendants published their false charges with actual malice—that is, with a high degree of awareness of their probable falsity. *See Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989). Evidence tending to show that a source informed Findeisen of the falsity of the statements at issue, or that Findeisen himself explicitly acknowledged the falsity of his statements, would of course be

powerful, direct evidence of actual malice. But such evidence is not the only type of evidence that can support a jury finding of actual malice.

The Supreme Court has long recognized that defamation defendants "are prone to assert their good-faith belief in the truth of their publications," so that "plaintiffs will rarely be successful in proving awareness of falsehood from the mouth of the defendant himself." *Herbert v. Lando*, 441 U.S. 153, 170 (1979). Accordingly, it is well-settled that "a plaintiff is entitled to prove the defendant's state of mind through circumstantial evidence." *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 668 (1989); *Herbert*, 441 U.S. at 164, n. 12 ("The existence of actual malice may be shown in many ways. As a general rule, any competent evidence, either direct or circumstantial, may be resorted to, and all the relevant circumstances surrounding the transaction may be shown…."). "Circumstantial evidence showing reckless disregard may derive from from the defendant's words or acts before, at, or after the time of the [publication]." *Franco v. Cronfel*, 311 S.W.3d 600, 607 (Tex. App. 2010) (quoting Clark v. Jenkins, 248 S.W.3d 418, 435 (Tex. App. 2008)).)

Courts have thus identified numerous types of circumstantial evidence that are demonstrative of actual malice, including, but not limited to, (a) possession of information contradicting the published claims;[5] (b) ill will or bias on the part of the defendant toward the

---

[5] *See Zerangue v. TSP Newspapers, Inc.*, 814 F.2d 1066, 1070 (5th Cir. 1987) (actual malice properly found where reporter "was aware of facts contradicting her story"); *Palin v. N.Y. Times Co.*, 940 F.3d 804, 813-14 (2d Cir. 2019) (allegation that defendant had knowledge contradicting published claim sufficient to allege malice); *Eramo v. Rolling Stone, LLC*, 209 F. Supp. 3d 862, 873 (W.D.Va. 2016).

6

plaintiff;[6] (c) setting out to publish with a preconceived storyline;[7] (d) failure to interview obvious sources of corroboration or refutation;[8] (e) failure to conduct a sufficient investigation in advance of publication;[9] (f) a departure from journalistic standards;[10] and (g) reliance on biased or non-credible sources.[11] Even in the absence of any direct evidence of actual malice, the accumulation of these types of circumstantial evidence can support a jury finding of actual malice on the part of a defamation defendant. *See Eramo*, 209 F. Supp. 3d at 872 ("Although failure to adequately investigate, a departure from journalistic standards, or ill will and intent to injure will not singularly provide evidence of actual malice, the court believes that proof of all three is sufficient to create a genuine issue of material fact.").

---

[6] *See Connaughton*, 491 U.S. 657, 668 (1989) ("[I]t cannot be said that evidence concerning motive or care never bears any relation to the actual malice inquiry"); *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 315 n. 10 (5th Cir. 1995) ("[E]vidence of ill will can often bolster an inference of actual malice").

[7] *See Harris v. City of Seattle*, 152 Fed. App'x 565, 568 (9th Cir. 2005) ("[E]vidence that a defendant conceived a story line in advance of an investigation and then consciously set out to make the evidence conform to the preconceived story is evidence of actual malice, and may often prove to be quite powerful evidence.") (citation omitted); *Eramo*, 209 F. Supp. 3d at 874 (allegation defendant had a "preconceived story line" supported reasonable inference of actual malice); *Palin*, 940 F.3d at 813 (allegation that defendant had a "pre-determined" defamatory narrative "paint[ed] a plausible picture" of actual malice).

[8] *See Connaughton*, 491 U.S. at 682-83 (newspaper's failure to interview an obvious source who might discredit the story was persuasive evidence of actual malice); *Quigley v. Rosenthal*, 43 F. Supp. 2d 1163, 1180 (D. Colo. 1999) ("Failure to investigate obvious sources of refutation or corroboration of statements, especially when there is no time-pressure on their publication, may indicate not only negligence, but the higher standard of actual malice.")

[9] *See Connaughton*, 491 U.S. at 667-68, 688, 692-93; *Eramo*, 209 F. Supp. 3d at 871.

[10] *Eramo*, 209 F. Supp. 3d at 871-72; *Reuber v. Food Chem. News, Inc.*, 925 F.2d 703, 712 (4th Cir. 1991).

[11] *See St. Amant v. Thompson*, 390 U.S. 727, 732 (1968) ("[R]ecklessness may be found where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports."); *Stern v. Cosby*, 645 F. Supp. 2d 258, 278 (S.D.N.Y. 2009) (reliance on "obviously biased" sources is evidence of actual malice).

**B.    The Third-Party Review Was Limited to Identifying *Direct* Evidence of Actual Malice and Was Never Intended to Encompass *All* Possible Evidence.**

The Court's belief that the third-party review was intended to identify all possible evidence of actual malice, and that Paul's Motion to Compel thus sought a second bite at the apple, was mistaken. As reflected in the Document Review Memorandum that the parties agreed to, the reviewers were charged only with identifying:

> *(1) any communications between Findeisen and others in which Findeisen was told that Paul had good-faith intentions with respect to the CryptoZoo project, or that Paul lacked bad faith or fraudulent intentions with respect to the CryptoZoo project; and (2) any communications, documents, documents, notes, drafts, or audio or video recordings in which Findeisen expressed an understanding or belief that Paul had good-faith intentions vis a vis the CryptoZoo project, or that Paul lacked bad faith or fraudulent intentions with respect to the CryptoZoo project.[12]*

(Document Review Memorandum [Dkt. 133-3].) Thus, the scope of the agreed-to review was only to identify for production communications that reflected Findeisen being told that Paul had good faith intentions (or lacked bad fath), or materials that reflected an acknowledgment by Findeisen that Paul had good faith intentions (or lacked bad faith). In other words, the review was expressly limited to attempting to identify ***direct*** evidence of actual malice.

That was a worthwhile exercise, and the Parties' cooperative effort on that front avoided the need for Paul to seek Court intervention as to a request for such materials. But there was never any agreement or understanding among the Parties—explicit or implicit—that this agreed-upon approach to attempt to distill and isolate materials constituting direct evidence of malice would somehow impact, let alone preclude, Paul's ability to in the future seek other evidence bearing on the question of malice—in particular, circumstantial evidence. Fundamentally, the Court was mistaken in its belief that the scope of the third-party review was on all fours with what Paul subsequently sought in his Motion to Compel. That could only be true if the review was intended

---

[12] Document Review Memorandum [Dkt. 133-3].

and designed to identify *all* evidence bearing on the crucial issue of actual malice. It indisputably was not. And because of that mistaken understanding, the ruling had the effect of punishing Plaintiff for having conferred and compromised on *other* discovery issues in an attempt to limit the need for Court intervention whenever possible.

C.     **Paul Is Entitled to Discover Defendants' Editorial Communications.**

Paul's Motion to Compel was directed at a very limited subset of the many thousands of documents that Defendants are withholding based on the qualified privilege: Findeisen's communications with his editorial team about their publications concerning Paul. As the Supreme Court recognized in rejecting an "editorial process privilege" that would shield the exact types of communications at issue here, discovery of communications reflecting on defamation defendants' knowledge and decision-making is critical to resolving the actual-malice issue. *Herbert*, 441 U.S. 153, 160 (1979) ("Inevitably, unless liability is to be completely foreclosed, the thoughts and editorial processes of the alleged defamer would be open to examination."). This Court recognized similarly when it observed that "if this case is going forward, malice and intent are going to be key, so [Paul's] got to get that evidence." (Hearing Tr. at 59:20-63:12.)

Because the third-party review team did not identify for production any communications between Findeisen and his editorial team, Paul accepts that the reviewers did not identify any of the withheld editorial communications as constituting direct evidence of actual malice—and Paul's Motion to Compel thus did not seek what does not exist.[13] But because the review was limited to

---

[13] At the September 11, 2025 hearing in this matter, the Court seemed to suggest that Paul's withdrawal of his earlier Motion to Compel Production of Evidence Relevant to Plaintiff's Good Faith Intentions and Actions [Dkt. 77] operated as a sort of waiver, like an admission that the third-party document review resolved all the issues raised in that earlier Motion. (*E.g.*, Exhibit 1, Hearing Tr. at 61:7-10.) But Paul withdrew his earlier Motion, not because the third-party document review resolved *all* the issues the Motion presented, but because it addressed *some* of those issues. The third-party document review thus rendered the earlier Motion substantially overbroad, such that addressing it would have meant wasting judicial and party resources. *That* is

9

materials reflecting Findeisen being told, or admitting, that his statements about Paul were false, it was never intended to identify, and did not attempt to identify, communications among the editorial team that constitute *circumstantial evidence* of malice. Thus, the review team was not looking for documents and communications reflecting Findeisen and his editorial team's receipt of factual information that contradicted the claims they published, the timing of their receipt of certain information that (allegedly) informed Findeisen's characterization of Paul as a scammer,[14] their bias and ill will towards Paul, their efforts to advance a preconceived storyline about Paul, their failure to interview obvious sources, their failure to sufficiently investigate the truth of their claims before publishing, their departures from journalistic standards, and their reliance on biased or non-credible sources. Nevertheless, even though such evidence of malice *was not even within the scope of the third-party review*, even though Defendants have not (and cannot) represent that such evidence does not exist, and even though Defendants would not be burdened or prejudiced in any way by having to produce this limited subset of communications, this Court effectively ruled that Paul is precluded from seeking such evidence based on the third-party review. That decision would represent an uncalled for protective windfall for Defendants and, ultimately, a miscarriage of justice.

---

why Paul withdrew his earlier Motion—not because the third-party document review resolved every concern addressed in the Motion. Thus, to the extent the Court treated Paul's withdrawal of his earlier Motion as somehow waiving his subsequent Motion to Compel Production fo Communications To and From Harry Bagg and/or Ed Leszczynski [Dkt. 124], that was error.

[14] As just one example, in his filings, Findeisen has claimed to have had an evolution in his perception of Paul's intent, as he supposedly had been willing to give Paul "the benefit of the doubt" prior to receiving CryptoZoo-related messages from a confidential source between October 25-27, 2022—six weeks or so before he published his YouTube series. (*See* Dkt 102 at 3 (top bullet).) But Plaintiff has been deprived of any contemporaneous evidence that bears on this supposed evolution in Findeisen's understanding.

## **CONCLUSION**

This Court should reconsider its decision as to Paul's Motion to Compel seeking Defendants' editorial communications, and it should compel Defendants to promptly produce those communications.

January 9, 2026

*/s/ Andrew C. Phillips*
Andrew C. Phillips (*Pro Hac Vice*)
Shannon B. Timmann (*Pro Hac Vice*)
MEIER WATKINS PHILLIPS PUSCH LLP
1120 20th St NW, Suite 550
Washington, DC 20036
(202) 318-3655
Email: andy.phillips@mwpp.com
Email: shannon.timmann@mwpp.com

Jeffrey A. Neiman (*Pro Hac Vice*)
Jason L. Mays (*Pro Hac Vice*)
NEIMAN MAYS FLOCH & ALMEIDA PLLC
100 SE 3rd Ave., Suite 805
Ft. Lauderdale, Florida 33394
Email: jneiman@nmfalawfirm.com
Email: jmays@nmfalawfirm.com

Ricardo Cedillo (Texas Bar No. 04043600)
DAVIS, CEDILLO & MENDOZA
755 E. Mulberry Ave., Ste. 250
San Antonio, TX 78212
(210) 822-6666
Email: rcedillo@lawdcm.com
*Counsel for Plaintiff Logan Paul*

**CERTIFICATE OF SERVICE**

  I hereby certify that, on January 9, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record who are deemed to have consented to electronic service.

                 */s/ Andrew C. Phillips*