IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

SAN ANTONIO DIVISION

| | |
|---|---|
| LOGAN PAUL,<br><br>                              *Plaintiff*,<br>    v.<br><br>STEPHEN FINDEISEN AND COFFEE BREAK PRODUCTIONS LLC D/B/A COFFEEZILLA,<br><br>                              *Defendants*. | Civil Action No. 5:24-cv-00717 |

## MOTION TO PRECLUDE DEFENDANTS' RELIANCE ON JOURNALIST'S PRIVILEGE

Throughout this litigation Defendants Stephen Findeisen—a YouTube personality—and his production company Coffee Break Productions LLC have insisted that they are, in fact, journalists within the meaning of Texas's qualified journalist's privilege. In hundreds upon hundreds of instances, Defendants have asserted the qualified journalist's privilege as justification for not complying with even the most fundamental and straightforward discovery requests.[1] Their reflexive assertion of the privilege has made discovery in this case an inequitable, time-consuming, and expensive slog, as Plaintiff Logan Paul has been forced to file piecemeal motions to compel.

For most of this litigation, Paul has responded to Defendants' assertion of the privilege by pointing out that, even if the qualified privilege applied, Paul overcomes it as to many of the documents Defendants have withheld. But Defendants' persistent invocation of the privilege—in response to nearly every discovery request in this litigation—makes it untenable to continue with that approach. The reality is that Defendants are not entitled to invoke the protections of Texas's

---

[1] Defendants' privilege logs indicate they are withholding more than 16,000 documents based on an assertion of journalist privilege.

1

journalist privilege statute *at all* because, as detailed below, Findeisen's well-documented animus toward Paul, his conflicts of interest, and his desire to profit off his "reporting" as a supposed "whistleblower," together undermine any serious notion that he qualifies as a "journalist" within the meaning of the statute.

## ARGUMENT

As the name suggests, Texas's qualified journalist's privilege only applies to "journalists." The statute codifying the privilege defines a "journalist" as someone who "for a substantial portion of the person's livelihood or for substantial financial gain, gathers, compiles, prepares, collects, photographs, records, writes, edits, reports, investigates, processes, or publishes news or information that is disseminated by a news medium or communication service provider." Tex. Civ. Prac. & Rem. Code Ann. § 22.021(2). The statute doesn't define "news or information," but it's clear that the terms can't have unconstrained, broad meanings, or else the term "journalist" would have no real meaning. A social media influencer posting footage of his trip to a local bar would be a journalist. So would employees at public-relations firms whose jobs revolve around disseminating material bolstering clients' public images. And so would a press-hungry politician who spends the bulk of her time sending out mass communications to constituents.

That people in those professions—influencers, public-relations agents, and politicians—are so obviously not the sort that Texas's legislature contemplated in enacting the journalist privilege statute reveals something about the statute; namely, that the statute's definition of "journalist" rests on certain implied, background principles. Any other reading would leave the statute to sweep so broadly as to produce patently absurd results, like designating U.S. Senator Ted Cruz a "journalist" because he tweets frequently and hosts a podcast from which he earns income. And, indeed, Texas's Supreme Court has repeatedly admonished that courts should depart from even the seemingly plain meaning of a statute when the departure is warranted in light of the

statute's context, or when applying the plain meaning would yield absurd results. *See, e.g., Presidio Indep. Sch. Dist. v. Scott*, 309 S.W.3d 927, 930 (Tex. 2010); *Gonzalez v. Guilbot*, 315 S.W.3d 533, 540 (Tex. 2010).

The background principles through which Texas's journalist's privilege statute must be understood are ones that have long been fundamental to journalism. What distinguishes the social media influencer, the public-relations advisor, and the politician from someone recognizable as a "journalist" is that, among other things, journalists are expected to adhere to well-established ethical principles in their work. Media organizations have spent generations defining and refining those principles and courts routinely rely on them in determining the press's rights and responsibilities in this country.[2] Among those core principles are tenets like: (1) avoiding conflicts of interest and disclosing to the audience potential conflicts; (2) reporting objectively and setting aside personal animus; and (3) being transparent and truthful with sources and with the audience.

Discovery in this case has revealed that in his "reporting" on Paul and CryptoZoo, Findeisen, a YouTuber, has not just ignored, but actively scorned the very principles that must be followed in order for one to be fairly considered a "journalist" under any common-sense definition of the term. And that is why this Court should hold that Findeisen—along with his co-defendant production company, Coffee Break Productions—are not "journalists," and that they are not entitled to continue to use Texas's statutory privilege as a shield to avoid meaningfully participating in discovery in this case.

---

[2] *E.g.*, *United States v. Holmes*, 572 F. Supp. 3d 831, 836 n.2 (N.D Cal. 2021) (restricting media's use of juror information by reference to Society of Professional Journalists' Code of Ethics).

### 1. Defendants have ignored glaring conflicts of interest.

Journalism as a profession recognizes that conflicts of interest should be assiduously avoided to preserve the press's integrity.[3] Federal and state courts—including in Texas—have thus repeatedly conditioned entitlement to claim journalistic privileges on evidence that the purported journalist was sufficiently independent and free of outside conflicts.[4] Avoidance of such conflicts is, in other words, a major underlying component of what makes someone a "journalist."

Here, Findeisen hasn't just failed to avoid conflicts of interest; he's actively courted them. For example, Paul learned in discovery in this case that in January 2023, Findeisen was secretly retained as an expert witness by lawyers who were suing Paul in a lawsuit concerning CryptoZoo. (Decl. of Stephen Findeisen (Feb. 14, 2025) Dkt. 62-1 at 9(F).) This retention predated the so-called "reporting" at issue in this case, including the YouTube videos that Findeisen released about Paul and CryptoZoo in June 2023 and January 2024. The conflict created by Findeisen secretly working in cahoots with, and on behalf of, attorneys actively adverse to Paul in ongoing legal proceedings is obvious and unavoidable: Findeisen of course had every incentive in his "reporting" to portray Paul as culpable and blameworthy when it came to the demise of CryptoZoo; conversely,

---

[3] *See SPJ Code of Ethics*, Society of Professional Journalists, www.spj.org/ethicscode.asp (last accessed January 7, 2025) ("Journalists should [a]void conflicts of interest, real or perceived," and also avoid "other activities that may compromise integrity or impartiality, or may damage credibility"); *Avoiding Conflict of Interest*, Radio Television Digital News Ass'n, https://www.rtdna.org/avoiding-conflict-of-interest (last accessed Oct. 30, 2025) ("Electronic journalists have an obligation to carry out their jobs—and their private lives—with no real or apparent conflicts of interest.").

[4] *E.g.*, *In re KVIA-Channel 7*, 2024 WL 4333180, at *2 (Tex. App. Sept. 27, 2024) (recounting trial court's determination that news station waived journalist's privilege by indulging "a clear conflict of interest"); *Chevron Corp. v. Berlinger*, 629 F.3d 297, 309 (2d Cir. 2011) (journalist must establish entitlement to privilege by showing sufficient independence from outside sources); *Too Much Media, LLC v. Hale*, 413 N.J. Super. 135, 158 (2010) (denying journalist privilege where, among other things, defendant had not "demonstrated adherence to any standard of professional responsibility regulating institutional journalism, such as editing, fact-checking or disclosure of conflicts of interest").

he was equally disincentivized from portraying Paul as having acted in good-faith, as that would have undercut the position of the lawyers and litigants he was secretly working for. *See Berlinger*, 629 F.3d at 308–10 (district court acted within its discretion in denying the privilege where the "journalist" invoking the privilege had been retained by the lead counsel in a high-profile class action, and explaining that "[t]hose who do not retain independence as to what they will publish but are subservient to the objectives of others who have a stake in what will be published have either a weaker privilege or none at all."); *see also Las Vegas Sun, Inc. v. Adelson*, No. 3:21-MC-000017, 2021 WL 6621290, *2 (D. Conn. Sept. 2, 2021) (denying invocation of journalist's privilege where "sufficient threshold facts" overcame the supposed journalist's claim of independence, including the fact that they were acting as an undisclosed consultant at the time of publication).

Yet despite acknowledging that journalist ethics require disclosure of relationships that could create a conflict of interest or the perception of one,[5] at no time in his "reporting" on Paul and CryptoZoo did Findeisen disclose this clear conflict of interest to his audience. Indeed, he took active steps to conceal it. In a recorded April 2023 telephone call with a source for his "reporting" on CryptoZoo, Findeisen was captured courting that source to speak with the class-action lawyers suing Paul over CryptoZoo. (*See* Exhibit 1, L. Schipelliti Dep. Tr. at 43:2-49:1.) Yet Findeisen never revealed that he was involved in that lawsuit; instead, Findeisen falsely claimed to his own source that the lawyer was just a "friend," and he insisted he had no "stake" in the lawsuit and was not involved in it in any "official capacity." (*Id*. at 48:23-50:6.) Confronted with the reality that at the time of that conversation Findeisen had been officially retained as an

---

[5] S. Findeisen Dep. Tr. at 195:6-22 (Exhibit 2.)

expert by the class action lawyers months earlier, Findeisen's source expressed "surprise" at the revelation, and agreed that Findeisen has been "dishonest" with him. (*Id*. at 53:8-22.)

Of course, under standard ethical principles, real journalists are not supposed to lie to their own sources.[6] Findeisen's willingness to do so—in an effort to conceal another blatant violation of journalistic ethics—again illustrates why he cannot fairly be said to have acted as a "journalist" when he targeted Paul in his YouTube videos.

### 2. Findeisen has abdicated any pretense of impartiality and detachment in his "reporting" on Paul.

Another bedrock principle of journalism is that journalists should maintain an objective and dispassionate attitude, presenting information without emotional involvement.[7] Or, as the Ethical Journalism Network puts it, "Fairness is never guaranteed, but journalists need to avoid blatant bias."[8] On that account, too, Findeisen's conduct throughout his history of "reporting" on Paul is not recognizable as journalism. It is, rather, pure advocacy.[9]

Over the course of years, Findeisen has made no effort to conceal his bias towards Paul. That has manifested most obviously in childish and petty name-calling. For example, in a July 11,

---

[6] *See Is It Ever OK for Journalists to Lie to Get a Story?*, Global Investigative Journalism Network, https://gijn.org/stories/is-it-ever-ok-for-journalists-to-lie-to-get-a-story/ (last accessed January 7, 2026); *SPJ Code of Ethics*, Society of Professional Journalists, https://www.spj.org/spj-code-of-ethics/ (last accessed January 7, 2026) (identifying, as a core journalistic principle, that journalists must "Be Accountable and Transparent").
[7] *E.g.*, *Code of Ethics*, Associated Press Managing Editors, https://aceproject.org/main/english/ei/eix_o062.htm (last accessed January 7, 2026) ("The news organization should guard against … bias or distortion through emphasis, omission or technological manipulation.").
[8] *Ethical Journalism in Action: Combating Bias and Discrimination*, Ethical Journalism Network, https://ethicaljournalismnetwork.org/ethical-journalism-in-action-combating-bias-and-discrimination (last accessed January 7, 2026).
[9] *SPJ Code of Ethics*, Society of Professional Journalists, https://www.spj.org/spj-code-of-ethics/ (last accessed January 7, 2026) (admonishing journalists to "Label advocacy and commentary," as distinguished from reporting).

2021 video that predated the whole CryptoZoo saga, Findeisen called Paul a "piece of trash."[10] In another, from November 24, 2021, Findeisen called Paul a "dick."[11] Not surprisingly, then, the record of this case shows that Findeisen approached his "reporting" on CryptoZoo with the preconceived narrative that the project was a "scam" perpetrated by Paul. Indeed, in a video he published just days after the official launch of the CryptoZoo project, Findeisen openly referred to his "preconceived notions" about Paul, and stated that given Paul's association, the project had a "scammy vibe."[12] Just weeks later, he released another video in which he included CryptoZoo among a list of 2021 "Crypto Scams."[13] These videos, released more than a year-before his three-part series on the CryptoZoo project, demonstrate that Findeisen had already determined from the outset—without any basis—that the project was conceived of as a scam. Findeisen's blatant bias in his "reporting" on Paul is, again, entirely inconsistent with any notion of real journalism.

### 3. Findeisen has secretly attempted to have Paul arrested and charged and sought to profit off his reporting as a supposed "whistleblower."

Findeisen's extreme bias and animus towards Paul has manifested itself in other ways. Unbeknownst to his audience—because he never disclosed it—Findeisen has spent years secretly providing information about Paul to federal authorities in the hope that Paul would be arrested and charged with a crime. Findeisen's efforts have come to naught because Paul is not a criminal. But Findeisen's actions again demonstrate that he is anything but an objective and impartial journalist.

---

[10] Coffeezilla, *Logan Paul's New Crypto Coin is an Embarrassment*, YouTube https://www.youtube.com/watch?v=5mrT3UT9xIM (last accessed January 7, 2026).
[11] Coffeezilla, *The Crypto Brothers Are Back At It Again*, YouTube https://www.youtube.com/watch?v=kyoic1NF-_o (last accessed January 7, 2026).
[12] Coffeezilla, *Exposing Logan Paul's New Crypto Art*, YouTube (Sept. 10, 2021) https://www.youtube.com/watch?v=ZqyofWFNss8.
[13] Coffeezilla, *Youtube Rewind 2021: Crypto Scams*, YouTube (Dec. 5, 2021) https://www.youtube.com/watch?v=aHhIDuIn_nE.

Discovery has revealed that as early as June 2022, Findeisen began secretly communicating with the FBI in an effort to share what he had supposedly learned about Paul and CryptoZoo. (*See* Exhibit 3 at D 005108.) But his efforts were not limited to CryptoZoo. For some reason, Findeisen thought it appropriate to send to the FBI any "rumors" he heard about Paul's involvement with any cryptocurrencies, as he did in a June 2023 email to an FBI agent. (*See* Exhibit 4 at D 004121.) These efforts continued for years, with Findeisen constantly hurling accusations about Paul to federal authorities—obviously in the hope that he could claim credit for Paul being arrested or charged with a crime.

Additionally, Findeisen sought to profit from these activities. On October 23, 2022, Findeisen submitted a complaint to the SEC concerning Paul and the CryptoZoo project. (*See* Exhibit 5 at D 049520-530.) As part of that complaint, Findeisen identified himself not as a journalist reporting on Paul and CryptoZoo, but as a supposed "whistleblower." He then answered "yes" to a prompt asking if he was seeking to be eligible for a financial whistleblower award, meaning he affirmatively claimed an entitlement of 10-30% of whatever monetary sanctions the SEC might recover were it to bring an enforcement against Paul based on Findeisen's complaint.[14] This despite the familiar rule that real journalists should refuse payment or special treatment as a reward for specific "coverage."[15] And the reason for that ethical rule is obvious—it creates an incurable conflict of interest for a "journalist" to have a financial stake in his reporting reaching particular conclusions or in portraying a story subject in a particularly negative or positive way. Here, Findeisen's claim to be a whistleblower entitled to a financial award for his "reporting" on

---

[14] https://www.sec.gov/enforcement-litigation/whistleblower-program/whistleblower-frequently-asked-questions#faq-1.
[15] *SPJ Code of Ethics*, Society of Professional Journalists, https://www.spj.org/spj-code-of-ethics/ (last accessed Oct. 30, 2025).

Paul and CryptoZoo created obvious incentives for Findeisen to portray Paul as negatively as possible and, indeed, as a criminal, in order to increase the likelihood that the SEC might bring an action that would result in a monetary benefit to Findeisen.

Real journalists are not whistleblowers, nor are they prosecutors. They undertake investigations to provide accurate information to the public. They report on their story subjects with impartiality and fairness. They do not affirmatively attempt to visit negative consequences on the subjects of their reporting—like desperately trying to have them thrown in jail—nor do they seek to be financially rewarded for visiting negative consequences on their subjects.

## CONCLUSION

In order for the Texas statutory journalist privilege to serve its purpose of balancing the need for journalistic breathing room against the countervailing need for the fair administration of justice in civil and criminal cases, the term "journalist" necessarily has to be interpreted in a way that does not allow anyone who publishes anything online to claim the mantle of journalism and thus the protections of the statute. That the legislature did not intend for such an absurd result is inherent in the decision to confine the scope of the statute's protections only to "journalists."

While they do distribute content via YouTube for profit, Defendants can no more fairly be called "journalists" than can social-media influencers, advertising agencies, public-relations agents, and politicians. This is evidenced by the fact that they have no regard whatsoever for core ethical principles that are universally understood to apply to those who claim to be journalists. Because Defendants do not meet the commonsense definition of "journalist" that is inherent in the text and structure of Texas's qualified journalist privilege statute, this Court should hold that Defendants are not entitled to its protections, and that they must immediately produce all discovery materials that have been withheld based on a claim of journalist privilege.

| | |
|---|---|
| January 9, 2026 | */s/ Andrew C. Phillips* |

                                          Andrew C. Phillips (*Pro Hac Vice*)
Shannon B. Timmann (*Pro Hac Vice*)
MEIER WATKINS PHILLIPS PUSCH LLP
1120 20th St NW, Suite 550
Washington, DC 20036
(202) 318-3655
Email: andy.phillips@mwpp.com
Email: shannon.timmann@mwpp.com


Jeffrey A. Neiman (*Pro Hac Vice*)
Jason L. Mays (*Pro Hac Vice*)
NEIMAN MAYS FLOCH & ALMEIDA PLLC
100 SE 3rd Ave., Suite 805
Ft. Lauderdale, Florida 33394
Email: jneiman@nmfalawfirm.com
Email: jmays@nmfalawfirm.com

Ricardo G. Cedillo (Texas Bar No. 04043600)
DAVIS, CEDILLO & MENDOZA, INC.
755 E. Mulberry Ave., Ste. 250
San Antonio, TX 78212
(210) 822-6666
Email: rcedillo@lawdcm.com

*Counsel for Plaintiff Logan Paul*

## **CERTIFICATE OF SERVICE**

       I hereby certify that, on the 9th of January 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record who are deemed to have consented to electronic service.

                                                                   */s/ Andrew C. Phillips*