IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| **LOGAN PAUL,**<br><br>*Plaintiff,*<br><br>v.<br><br>**STEPHEN FINDEISEN AND COFFEE BREAK PRODUCTIONS, LLC d/b/a COFFEEZILLA,**<br><br>*Defendants.* | Civil Action No.: 5:24-cv-00717 |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO COMPEL**

TO THE HONORABLE COURT:

Defendants Stephen Findeisen and Coffee Break Productions, LLC d/b/a Coffeezilla's (jointly, "Coffeezilla") submit this Reply in Support of their Motion to Compel Documents (ECF No. 136, the "Motion"), and in support respectfully show:

**OVERVIEW**

Coffeezilla's Motion articulates two straightforward, well-reasoned requests for relief: (1) to overrule Plaintiff Logan Paul's improper privilege claims and (2) to compel the re-production of certain communications in a reasonably usable format. *See* ECF No. 136.

Rather than engage Coffeezilla's privilege-based arguments directly or even attempt to meet his burden to show the challenged documents are privileged, Paul tries to shift the burden to Coffeezilla to show the documents are not privileged while offering only scant information, and no evidence, about what those documents contain or why he designated them as privileged. *See* ECF No. 156.

1

Paul's Response falls far short of meeting his burden to "state specific and precise reasons," supported by evidence, for his over 200 privilege claims challenged in the Motion. *Jolivet v. Compass Grp. USA, Inc.*, 340 F.R.D. 7, 21 (N.D. Tex. Sept. 14, 2021); *see also CBX Res. LLC v. ACE Am. Ins. Co.,* No. SA-17-CV-0017-DAE, 2018 WL 9868579, at *5 (W.D. Tex. May 10, 2018) (Bemporad, M.J.) ("The burden is on the party asserting the privilege to demonstrate how each document or communication satisfies these elements."); *City of San Antonio v. Hotels.com*, No. SA-06-CA-381-OG, 2009 WL 10670130, at *1 (W.D. Tex. Aug. 5, 2009) (Garcia, J.) ("The proponent must provide sufficient facts by way of detailed affidavits or other evidence to enable the Court to determine whether the privilege exists."). As a result, the Court should find Paul waived or has otherwise not substantiated his privilege claims. *See e.g. EEOC v. BDO USA, L.L.P.*, 876 F.3d 690, 696 (5th Cir. 2017).

Paul further offers no explanation why producing the communications Coffeezilla requests in a reasonably usable format would be unduly burdensome when he has produced other communications in the requested format, and the requested communications represent only a fraction of the overall documents produced.

The Court should grant Coffeezilla's Motion in its entirety.

## ARGUMENT AND AUTHORITIES

### I. Paul's privilege logs are deficient.

Paul attempts to overcome Coffeezilla's challenge to the sufficiency of his privilege logs by completely misrepresenting both the privilege logs and the Motion.

Paul misquotes Coffeezilla's Motion as saying Paul provided "most" of the information Coffeezilla requested regarding the privileged documents. ECF No. 156 at 2. That is not accurate. The Motion actually states Paul provided "some, but not all," of the

requested information, which is one of the reasons why Coffeezilla was forced to seek the Court's intervention. *See* ECF No. 136 at 4 n.3.

Paul points to a table in Coffeezilla's Motion as identifying "all the individuals involved in the logged communications." ECF No. 156 at 1. In fact, eight of the individuals in the table are listed as "unidentified" because Paul failed to provide information about his relationship to them, and one of those individuals is not even named. ECF No. 136 at 3–7. More importantly, simply identifying a person as, for example, a "Public Relations Specialist," "Business Partner" or "Insurance Broker" does little to aid Coffeezilla, or this Court, in an assessment of Paul's privilege claims, particularly where the subject matter of each entry in the log is described as a communication "made for the purpose of receiving legal advice."

These deficiencies are simply a demonstration of how Paul's privilege logs fall far short of Rule 26's requirement to describe the nature of the information withheld in a manner that will enable Coffeezilla and the Court to assess the claim. FED. R. CIV. P. 26(b)(5)(A). Paul's failure to serve a compliant privilege log waives his claims of confidentiality. *Mayfield v. Safeco Ins. Co. of Ind.*, No. 5-20-CV-00210-XR, 2021 WL 8441780, at *1 (W.D. Tex. May 27, 2021).

## II.    Paul hasn't shown the privilege applies.

Paul suggests Coffeezilla "cannot overcome" Paul's privilege claims while completely ignoring that the law imposes the burden on *Paul*, as the party asserting the privilege, to prove the privilege applies. *See* ECF No. 156 at 4. Paul offers nothing more than two "random" examples, *see id.* at 5, of why the privilege may apply rather than the "specific and precise" reasons, supported by evidence, for each of the claims of privilege that the law requires. *Jolivet*, 340 F.R.D. at 21.

3

### A. Paul has the burden of proving a privilege applies.

"The burden does not lie with the challenging party to 'prove that [the withholding party] improperly asserted the attorney-client privilege as to its withheld documents.'" *Id*. at 19–20 (quoting *BDO*, 876 F.3d at 696). Determining the applicability of the privilege is a "highly fact-specific" inquiry, and the party asserting the privilege bears the burden of proof. *Id*. (citing *Stoffels v. SBC Commc'ns, Inc.*, 263 F.R.D. 406, 411 (W.D. Tex. 2009); *United States v. Kelly*, 569 F.2d 928, 938 (5th Cir. 1978)). Furthermore, any "[a]mbiguities as to whether the elements of a privilege claim have been met are construed against the proponent." *Id*. (citation omitted). Because the attorney-client privilege "has the effect of withholding relevant information from the fact-finder," it is interpreted narrowly to "appl[y] only where necessary to achieve its purpose." *Id*. (quoting *Fisher v. United States*, 425 U.S. 391, 403 (1976)).

A party asserting attorney-client privilege "must provide a detailed description of the materials in dispute and state *specific and precise reasons* for their claim of protection from disclosure, including submitting *detailed affidavits and other evidence* to the extent possible." *Jolivet*, 340 F.R.D. at 21 (emphases added). Paul does not even attempt to meet these requirements for the more than 200 claims of privileged challenged by the Motion.

### B. Paul did not meet his burden.

As an initial matter, Paul offers no affidavit or other evidence to support his claim that the attorney-client privilege applies to the documents and communications he seeks to protect.[1] Paul's own authority recognizes the importance of supporting a privilege claim with

---

[1] Tellingly, although Paul has offered his own affidavit as evidence in support of other motions, *see, e.g.,* ECF No. 42-1, Paul offers no such evidence here. In contrast, Coffeezilla's privilege log, which Paul has not challenged, is supported by an affidavit, which is on file at ECF No. 62-1.

4

an "affidavit or deposition testimony," yet he fails to do so. *See* ECF No. 156 at 2 (quoting *Bowne of N.Y., Inc. v. AmBase Corp.*, 150 F.R.D. 465, 474 (S.D.N.Y. 1993)).

Paul suggests Coffeezilla's counsel could have questioned Paul about the privilege logs in his deposition, *see id.* at 2, but, as the caselaw clearly establishes, Coffeezilla does not have a burden to *disprove* Paul's claims for protection. *Jolivet*, 340 F.R.D. at 19–20 (quoting *BDO*, 876 F.3 at 696). Nor should Coffeezilla be required to waste time in a deposition addressing Paul's voluminous and unfounded assertions of privilege.

Rather than providing the required "specific and precise reasons" for his claims, Paul cherry picks two examples from the privilege logs, highlighting the information he did provide, while not even attempting to address the deficiencies Coffeezilla identified in the Motion or provide explanations for the over 200 other privilege claims. *Id.* at 21; *see also* ECF No. 156 at 1–3.

Paul suggests his privilege logs are "replete with examples" of why the attorney-client privilege applies, *see* ECF No. 156 at 5, but examples are not evidence. *City of San Antonio*, 2009 WL 10670130, at *1. Paul has yet to provide the detailed information necessary to support his privilege claims, and his response to Coffeezilla's Motion does nothing to move the ball forward.

III.     **Paul fails to show his third-party communications are protected.**

Paul suggests the Court should infer, based on his word alone, that his third-party communications are protected because they are subject to an exception to the general rule that disclosure to a third party destroys the attorney-client privilege. But contrary to Paul's suggestion that Coffeezilla is "mistaken on the law," *see* ECF No. 156 at 3, it is black-letter law that disclosure of privileged communications or documents to a third party waives the

5

attorney-client privilege. *See* TEX. R. EVID. 511(1); *see also In re XL Specialty Ins. Co.*, 373 S.W.3d 46, 49–50 (Tex. 2012).

"When a communication between attorney and client occurs in the presence of a third party who is not the attorney's client, the communication generally is not confidential, and the privilege is waived." *See United States v. Pipkins*, 528 F.2d 559, 563 (5th Cir. 1976). "Because the privilege protects only confidential communications, the presence of a third person while such communications are made or the disclosure of an otherwise privileged communication to a third person eliminates the intent for confidentiality on which the privilege rests." *Hodges, Grant & Kaufmann v. United States*, 768 F.2d 719, 721 (5th Cir. 1985).

Here, Paul suggests his third-party communications are protected because the "co-client" exception to the rule applies. ECF No. 156 at 3. The "co-client" exception applies when "a privileged communication is shared with a third person who has a common legal interest with respect to the subject matter of the communication." *Hodges, Grant & Kaufmann*, at 721. This is known as the "common legal interest" or "joint defense" privilege. *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710–12 (5th Cir. 2001). The common legal interest privilege arises in narrow circumstances, which include (1) communications between co-defendants in actual litigation and their counsel; and (2) communications between *potential* co-defendants and their counsel." *Id.* at 710 (citations omitted).

Paul offers absolutely no evidence to support his contention that the third-party communications for which he claims protection were with co-defendants or potential co-defendants. ECF No. 156 at 5. Paul suggests the Court should infer, from the paltry information contained in his privilege logs, that the exception applies and offers one "random example" (Paul's words) involving communications with tax counsel for why it does. *Id.*

6

Paul fails to explain, for example, how communications with his public relations team are protected when the authority cited in Coffeezilla's Motion clearly demonstrates that courts routinely deny protection to those communications. ECF No. 136 at 9 (collecting cases). Rather than address Coffeezilla's argument head on, Paul relies on his deficient privilege logs, which simply say the communications are protected because they were made "in confidence for the purpose of receiving legal advice." *See* ECF No. 136-3 at 9. These conclusory statements are not enough to show the privilege applies. *CBX Res. LLC*, 2018 WL 9868579, at *5.

The Court should decline Paul's invitation to take his word for it that *all* his communications with third parties are protected. Even if Texas law has exceptions to the general rule that communications with third parties are not privileged, Paul has brought forth no facts or evidence to which the Court could apply that law or test the privilege claims. Having failed to do so, Paul has failed to meet his burden. *See* TEX. R. EVID. 511(1); *City of San Antonio*, 2009 WL 10670130, at *1.

### IV. Paul fails to show he is not using an impermissible "sword and shield" approach.

Paul dismisses as "nonsense" Coffeezilla's argument that he cannot claim privilege as both "sword and shield" with respect to communications with individuals who he subpoenaed in this litigation without addressing the specific communications in question. ECF No. 156 at 6.

The Fifth Circuit has explained: "Because the attorney-client privilege 'has the effect of withholding relevant information from the fact-finder,' it is interpreted narrowly so as to 'appl[y] only where necessary to achieve its purpose.'" *BDO*, 876 F.3 at 695. Courts recognize a privilege cannot be used simultaneously as both a sword and a shield. *See, e.g., Willy v.*

7

*Admin. Rev. Bd.*, 423 F.3d 483, 497 (5th Cir. 2005) (under doctrine of implied waiver, "a party may not use privileged information both offensively and defensively at the same time").

Here again, Paul uses one communication, with Eddie Ibanez, as an example of how the privilege may apply to parties he subpoenaed, without offering any specific details or evidence showing why the other 200+ challenged communications are subject to the privilege. *See* ECF No. 156 at 6. This is insufficient to overcome Coffeezilla's challenge on this basis. *City of San Antonio*, 2009 WL 10670130, at *1.

Paul *says* he withheld communications with Ibanez because the two men were seeking tax advice for their joint venture CryptoZoo but offers no evidence of that. Given that CryptoZoo is the subject of this lawsuit, and Ibanez is a potential responsible third party, those communications are clearly relevant. FED. R. EVID. 401. While Paul's explanation offers more detail than the conclusory statement in his privilege log that the communications were made "for the purpose of receiving legal advice," *see* ECF No. 136-3 at 2, Paul still fails to demonstrate with any evidence that the common legal interest privilege applies to these communications. Paul does not argue, for example, that Ibanez was a co-defendant or potential co-defendant in any lawsuit. *In re Santa Fe*, 272 F.3d at 710–12. Beyond that, Paul offers absolutely no explanation for why he withheld communications with Daniel Budzinski, Michael Majlak, and Ophir Bentov, all of whom he also subpoenaed.

Even if the one example Paul addresses is sufficient to establish privilege for that communication, Paul has left unaddressed the other 200+ communications. Without any

8

evidence, Paul's privilege claims must be overruled.[2] *CBX Res. LLC*, 2018 WL 9868579, at *5.

### V. The Court should compel Paul to reproduce messages in a reasonably accessible format.

Paul objects to Coffeezilla's request for communications to be produced in reasonably accessible format because Paul thinks the format he used is good enough. ECF No. 156 at 8. But, as demonstrated by the screenshots in Coffeezilla's Motion, the challenged communications are barely readable and are missing key contextual information like emojis and media. ECF No. 136 at 11–15.

Rule 34 requires parties to produce electronically stored information in a "reasonably usable" format. FED. R. CIV. P. 34(b)(2)(E)(ii); *see also Dizdar v. State Farm Lloyds*, No. 7:14–CV–402, 2015 WL 12780640, at *10 (S.D. Tex. Jan. 21, 2015). "[T]he option to produce in a reasonably usable form does not mean that a responding party is free to convert electronically stored information from the form in which it is ordinarily maintained to a different form that makes it more difficult or burdensome for the requesting party to use the information efficiently in litigation." FED. R. CIV. P. 34 advisory committee's note to 2006 amendment.

Moreover, as Paul acknowledges in his own response, when it comes to electronic communications, "the focus should be on obtaining messages in formats that preserve key features of the message (including emojis and media) and are easily searchable." *See* ECF No. 156 at 8 (quoting 1 J. GRENIG AND W. GLEISNER, eDISCOVERY & DIGITAL EVIDENCE § 3:39 (2025–26 ed.)).

---

[2] Paul does not request an *in camera* inspection of the 200+ communications, but even if he did, such relief is precluded in light of his failure to submit affidavits or other evidence. *See City of San Antonio*, 2009 WL 10670130, at *1 ("An *in camera* review is appropriate only after the proponent of the privilege has submitted affidavits or other evidence to the extent possible.").

9

In this case, Paul produced approximately 230 files in a virtually unreadable ".json" format for no reason other than to make it difficult for Coffeezilla to use the information efficiently. Paul suggests Coffeezilla had "no trouble" using the challenged communications in his deposition, *see* ECF No. 156 at 8, but the deposition transcript reveals otherwise. At multiple times during Paul's deposition, Coffeezilla's attorney referred to how difficult it was to read exhibits produced by Paul. *See* L. Paul Dep. Tr. at 188:13–16; 189:1–3; 365:1–3.[3]

In reality, Paul—a tech savvy professional "vlogger"—chose to produce these particular communications in a format that would be the most difficult for the jury to digest because he knew they contain harmful evidence against him. The .json files are clunky, cumbersome to read, and are missing key contextual information like emojis and other media. Moreover, the approximately 230 .json files in question represent fewer than 5% of the more than 5,000 files produced by Paul in this case, which would not be a significant burden to convert.[4]

Paul argues "there can be no issue" with his production of the .json format for certain messaging platforms like Signal by claiming the .json is the form "in which it is ordinarily maintained" on these platforms. Paul misleads the Court. Signal does not "ordinarily" maintain user messages in any format. Paul's own source reads: "the Signal Service never has access to any of your messages or attachments."[5] Furthermore, for the account data Signal

---

[3] Coffeezilla cannot include specific quotes from the transcript because Paul designated the transcript as confidential, over Coffeezilla's objection. *See* ECF No. 155. Coffeezilla will provide the Court a copy of the transcript at the hearing on this Motion.

[4] Although Paul did not present any evidence of undue burden, Coffeezilla is willing to undertake the file retrieval process for Paul so he does not have to do it himself.

[5] https://support.signal.org/hc/en-us/articles/5538911756954-Requesting-your-account-data.

does maintain, the platform offers two options: an "Easy-to-read text file" *or* a "Machine-readable [.json] file:"



By the Signal Service's own characterization, Paul elected the format that is *not* "easy-to-read."

Though Paul attempts to explain why he produced certain Signal or Discord messages in the .json "machine-readable" format, he does not explain why he produced ordinary text messages in the .json format, which constitute the bulk of the dispute. Over 80% of the text messages that Paul produced in .json format (191 files) are from Apple's standard messaging platform ("iMessgae"), and Paul has already demonstrated he can produce that type of document in a standard, human-readable format. For example, Paul produced the following text messages in PDF format while retaining emojis, attachments and metadata:





All Coffeezilla asks is that Paul do the same for the 230 .json files. The Court should compel Paul to do so, in keeping with the spirit and the letter of Rule 34.

## PRAYER

For these reasons, Coffeezilla respectfully requests that the Court (1) grant Coffeezilla's Motion to Compel (ECF No. 136); (2) overrule Paul's privilege claim as to the Disputed Communications identified therein; (3) compel Paul to produce the same; (4) compel Paul to produce the documents listed in Exhibit H of the Motion in a searchable PDF, including the multimedia files identified by which communication they accompany; and (5) award Coffeezilla all other relief at law or in equity which they are entitled.

Dated: January 9, 2026.

        Respectfully submitted,

        **DAVIS & SANTOS, PLLC**

By:   /s/ *Caroline Newman Small*
       Jason M. Davis
       Texas State Bar No. 00793592
       Email: *jdavis@dslawpc.com*
       Caroline Newman Small
       Texas State Bar No. 24056037
       Email: *csmall@dslawpc.com*
       Rachel Garza
       Texas State Bar No. 24125240
       Email: *rgarza@dslawpc.com*
       719 S. Flores Street
       San Antonio, Texas 78204
       Tel: (210) 853-5882
       Fax: (210) 200-8395

*Attorneys for Defendants Stephen Findeisen and Coffee Break Productions, LLC d/b/a Coffeezilla*

## CERTIFICATE OF SERVICE

I certify that on January 9, 2026, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system and all counsel of record will receive an electronic copy via the Court's CM/ECF system.

By: <u>*/s/Caroline Newman Small*</u>
      Caroline Newman Small