IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| LOGAN PAUL, <br><br> *Plaintiff*, <br><br> v. <br><br> STEPHEN FINDEISEN AND <br> COFFEE BREAK PRODUCTIONS, LLC <br> d/b/a COFFEEZILLA, <br><br> *Defendants.* | Civil Action No.:  5:24-cv-00717 |

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO PRECLUDE DEFENDANTS' RELIANCE ON JOURNALIST'S PRIVILEGE**

TO THE HONORABLE COURT:

Defendants Stephen Findeisen and Coffee Break Productions, LLC d/b/a Coffeezilla submit this Response in Opposition to Plaintiff Logan Paul's Motion to Preclude Defendants' Reliance on Journalist's Privilege (ECF No. 162), and in support respectfully show:

**OVERVIEW**

This Court found Findeisen is a journalist under the Texas Free Flow of Information Act, TEX. CIV. PRAC. & REM. CODE § 22.021(2) (the "Texas Act"). *See* ECF Nos. 143, 146 at 61:18–19 ("I believe Mr. Findeisen is a journalist in this context, including his team."). Paul did not appeal or seek reconsideration of that finding.[1]

---

[1] Paul did file a motion to reconsider the ruling on other grounds (*i.e.*, that the issue had been resolved by the parties' agreement), but he did not challenge the Court's ruling as to Findeisen's status as a journalist. *See* ECF No. 160.

1

Now, months later, Paul effectively asks the Court to revisit its ruling by compelling the production of over 16,000 documents, e-mails, and audio and video files withheld for journalistic privilege. Not because the law has changed or some intervening authority compels a different result. And not because the relevant facts of the case have changed. Paul simply does not like the Court's decision.

Tellingly, though, Paul does not address that decision head-on or ask the Court to reconsider it under the relevant legal standards. Paul instead makes up a new standard, mischaracterizes the evidence, and then applies that mischaracterized evidence to his made-up standard. Paul is simply wasting the Court's time, and the Court should deny his baseless Motion.

## ARGUMENT AND AUTHORITIES

**I.    The correct legal standard is whether the Court's prior decision is the law of the case—it is.**

The Court correctly determined Findeisen is a journalist on September 11, 2025. *See* ECF No. 146 at 61:18–19. Under the law-of-the-case doctrine, the Court's determination should be the end of the matter.

"[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Shaw v. Karnes County, Texas*, No. SA-16-CA-203-FB(HJB), 2020 WL 13280705, at *3 (W.D. Tex. Jan. 13, 2020) (Bemporad, M.J.), *report and recommendation adopted*, 2020 WL 13280796 (W.D. Tex. Jan. 31, 2020). This rule promotes judicial efficiency by preventing courts from having to continually reexamine the same issues in the same case. The only time the doctrine would not apply is when (1) the evidence has substantially changed, (2) some controlling intervening authority compels a

different result, or (3) the prior decision was "'clearly erroneous and would work manifest injustice.'" *Id.* (quoting *Winfrey v. Rogers*, 901 F.3d 483, 491 (5th Cir. 2018)).

Tellingly, Paul does not even mention the law-of-the-case doctrine or attempt to apply its factors. Had he done so, it would be evident that there is simply no good faith basis for his Motion.[2] Since Paul does not identify any changed facts or law, he could only be relying on the third exception to the doctrine—that the Court's prior decision was "clearly erroneous" and "manifestly unjust." It's not.

## II. The Court's prior decision was correct and just because Findeisen is a journalist.

Under the Texas Act, which controls here, a "journalist" entitled to privilege is a person "who for a substantial portion of the person's livelihood or for substantial financial gain, . . . *reports, investigates*, . . . or publishes news or information that is disseminated by a news medium or communication service provider." TEX. CIV. PRAC. & REM. CODE § 22.021(2) (emphases added). Paul might not like that Findeisen reports on and investigates online scammers (like Paul) for a living, but that's precisely what he does. ECF Nos. 32-1, 62-1.

Paul, notably, does not dispute that Findeisen meets the statutory definition.[3] He instead invites the Court to create new law based on "principles" of journalism that *have nothing to do with* the Texas Act. Paul's only justification is his claim that the Texas Supreme

---

[2] To the extent that Paul is attempting to bring a Rule 60 motion for relief from a judgment or order, the Court should deny the motion because Paul makes no attempt to establish he meets any of the grounds for relief under that rule. *See* FED. R. CIV. P. 60(b).

[3] The Court's prior ruling was sound based on, among other things: (1) Stephen Findeisen's uncontested testimony (see ECF Nos. 32-1, 62-1) that he earns his living by reporting, investigating, and publishing news or information that is disseminated by a news medium or communication service provider (*i.e.*, YouTube); and (2) traditional news media outlets' recognition of Findeisen as a journalist (*see* ECF No. 62-1 ¶ 5 (*Washington Post*), *id.* ¶ 4 (*The New Yorker*)).

3

Court has held "courts should depart from the seemingly plain meaning of a statute when the departure is warranted in light of the statute's context." *See* ECF No. 162 at 2–3. But the case Paul cites says the opposite: "If the statutory language is unambiguous, the judge's inquiry is at an end." *Gonzalez v. Guilbot*, 315 S.W.3d 533, 540 (Tex. 2010).[4]

It is immaterial whether Findeisen recognizes and abides by Paul's "principles" of a journalist. It's also immaterial whether Paul or anyone else thinks Findeisen is a "good," ethical, or unbiased journalist. Plenty of Americans would question the journalistic ethics of either Fox News or the New York Times (or both) and yet both are unquestionably journalistic outlets. Paul's Motion is not premised on the rule of any law but rather only the law according to Paul. The Court should deny it for that reason alone.

### A. Bias is not the test for whether the journalist's privilege applies.

Paul suggests Findeisen's purported bias against him is "inconsistent with any notion of real journalism," *see* ECF No. 162 at 7, but Texas courts disagree, finding bias is "not the test" of whether the journalist's privilege applies. *Abraham v. Greer*, 509 S.W.3d 609, 613 (Tex. App.—Amarillo 2016, pet. denied).

Findeisen is not biased simply because he sincerely believes in his reporting and wants to help Paul's victims. Nor is any other reporter biased because they believe their reporting, repeatedly report on the same person, or use harsh words in their reporting.[5] Regardless, whether Findeisen is biased is irrelevant because "[b]ias and selectivity in reporting is not the

---

[4] Paul also relies on absurd examples—no one is suggesting Senator Ted Cruz or an influencer posting about a local bar fits the definition of a "journalist," either statutorily or by any ordinary person's understanding.

[5] That Findeisen may have used indecent language to describe Paul in the past is consistent with his transition, as *The New Yorker* magazine recognized, from "a snarky YouTube critic to something more akin to an investigative journalist." *See* ECF No. 32-1 ¶ 4; "Coffeezilla, the YouTuber Exposing Crypto Scams," *The New Yorker*, May 14, 2022, https://www.newyorker.com/news/letter-from-the-southwest/coffeezilla-the-youtuber-exposing-crypto-scams.

4

test" for privilege. *Id.* at 613. The reasoning is obvious. If "the lack of bias were the true barometer for whether an entity or individual was a 'news medium' or 'journalist,' then few businesses historically deemed to be part of the news media would qualify as journalists or news media." *Id*. Newspapers, for example, commonly endorse particular candidates running for elected office, which "certainly shows a bias. Yet it cannot be denied that they nonetheless engage in journalistic activities." *Id.*

In other words, bias is not inconsistent with journalism. The Court should decline to write a requirement into the Texas Act that a journalist be "free of bias" to invoke the privilege.

> **B.    Whether a journalist is also an unpaid expert is not the test for whether the journalist's privilege applies.**

Paul suggests Findeisen's role as an unpaid retained expert in a lawsuit concerning CryptoZoo is a conflict of interest undermining his independence as a journalist. ECF No. 162 at 4–6. This is factually and legally incorrect.

The timeline refutes Paul's theory of bias. Findeisen did not, as Paul suggests, start reporting on CryptoZoo after he was retained as an expert. *See* Declaration of Stephen Findeisen, attached hereto as Exhibit 1, ¶ 6. On the contrary, Findeisen investigated CryptoZoo and determined it was a scam—Logan Paul's scam specifically—in late 2022, before the class-action lawsuit was even filed. *Id*. Based on those public findings, class-action counsel approached Findeisen. *Id*. Post-retention, Findeisen continued to report the same findings he had previously. *Id*. The retention did not shape the reporting; the independent reporting precipitated the retention. *Id*.

Paul's attempt to portray Findeisen as conflicted in his reporting simply is not borne out by the facts. Beyond that, Findeisen's expert role presents no conflict and is entirely consistent with his role as a journalist.

Paul quotes Findeisen stating he had no "stake" in the lawsuit, suggesting that was false when, in fact, it was the literal truth. Findeisen is not paid for his work on the lawsuit, and the CryptoZoo attorneys have no control over the content of Findeisen's reporting. *See* Ex. 1 ¶ 6; *see also* excerpts from Findeisen deposition transcript, attached hereto as Exhibit 2, at 192:11–12. As a journalist and as a retained expert, Findeisen's stated goal has been to see to it that Paul's victims are made whole. Ex. 1 ¶ 7. The facts simply do not bear out Paul's theory.

Neither does the law. Paul cites four cases for the premise that Findeisen's work as an unpaid consulting expert precludes him from claiming the journalist's privilege, none of which are controlling. *See* ECF No. 162 at 4–5. In the only Texas case Paul cites, the court of appeals declined to decide whether the privilege applied because the issue was not raised in the mandamus petition at issue. *In re KVIA-Channel 7*, No. 08-24-00330-CV, 2024 WL 4333180, at *3 (Tex. App.—El Paso Sept. 27, 2024, no pet.).

The second case Paul cites involved a blogger whom the court found was not a journalist *under New Jersey law* because she had no intent to publish. *Too Much Media, LLC v. Hale*, 993 A.2d 845, 860 (N.J. App. 2010), *aff'd as modified*, 20 A.3d 364 (N.J. 2011). Paul's other two cases are factually distinguishable and apply out-of-circuit common law in which *paid consultants* of counsel who published content *funded by counsel* and *at counsel's behest* were not subject to the journalist's privilege. *Chevron Corp. v. Berlinger*, 629 F.3d 297, 305 (2d Cir.

6

2011); *Las Vegas Sun, Inc. v. Adelson*, No. 3:21-MC-17 (SDV), 2021 WL 6621290, at *2 (D. Conn. Sept. 2, 2021).

Here, in contrast, counsel in the CryptoZoo matter does not pay for Findeisen's expert consulting services or Findeisen's reporting, and Findeisen operates completely independently of influence by counsel in the CryptoZoo matter. Ex. 1 ¶¶ 3, 5. CryptoZoo counsel never edited or controlled Findeisen's content. *Id*. At his deposition, Findeisen consistently said he did not see it as conflicting with his role as a journalist. *See* Ex. 2 at 191:25; 193:8–24; 195:13–15; 197:1–3.

Paul also mischaracterizes the testimony of Luciano Schipelliti, whom discovery in this case revealed as one of Findeisen's sources. *See* ECF No. 162 at 5–6. Paul quotes Schipelliti as saying it came as a "surprise" that Findeisen was a retained expert and Findeisen was "dishonest" with him about that—but Paul's attorney, not Schipelliti, said those quoted words. *See* ECF No. 162-1 at 51:7–22. Paul's attorney misled Schipelliti by asking if he was surprised to learn Findeisen "was actually working for Attorney Tom Kherker" without mentioning that Findeisen was unpaid and independent. *Id*. at 57:10–11. This is not the "smoking gun" that Paul suggests. Ex. 1 ¶ 6.

The Texas Act does not preclude a journalist from serving as a consulting expert to invoke the privilege, and Paul cites no authority to the contrary. The Court should reject this basis for reconsideration of its prior ruling.

      **C.    Whether the journalist is also a whistleblower is not the test for whether the journalist's privilege applies.**

Paul next argues, with no authority, that a journalist cannot act as a whistleblower in a federal investigation. This argument relies on the false premise that a journalist cannot simultaneously investigate and report a subject and alert authorities to potential criminal

7

conduct discovered during that investigation. If Paul were right, no journalist could report a crime they discovered to the proper authorities without abandoning their own statutory protections.

Journalists and law enforcement have a long history of cooperation, including, for example, Bob Woodward's and Carl Bernstein's cooperation with the FBI's Watergate investigation. In all those years, no laws have been passed making journalists ineligible for whistleblower awards.[6] Indeed, the U.S. Government has publicly acknowledged issuing whistleblower awards to journalists. *See, e.g., In re Sealed Case*, 152 F.4th 205, 208–09 (D.C. Cir. 2025) (in which an IRS whistleblower "worked as a journalist to make the withholding issues public knowledge," and was awarded 30% of proceeds recovered by the Whistleblower Office, the maximum award available).

Paul further claims Findeisen is "anything but an objective . . . journalist" and suggests Findeisen "sought to profit" by reporting Paul to the government. Once again, this is baseless. As an initial matter, any actions by Findeisen to report Paul to the FBI were done without the expectation of financial reward, as the FBI does not have a financial award program. Ex. 1 ¶ 7.

Nevertheless, Paul tries to impute improper motives to Findeisen providing assistance to the FBI by claiming without basis that Findeisen wanted "credit" for Paul's arrest. Contradicting himself, Paul later admits Findeisen did not publicly talk about the FBI's investigation and describes Findeisen as "secretly communicating with the FBI." Paul is apparently confounded that Findeisen would report a crime without a profit motive and

---

[6] Paul suggests the SPJ Code of Ethics admonishes such action. It does not. Instead, it says "Journalists should refuse gifts, favors, fees, free travel and special treatment, and avoid political and other outside activities that may compromise integrity or impartiality, or may damage credibility." *See* https://www.spj.org/spj-code-of-ethics/. A whistleblower reward is not a gift, favor, fee, or special treatment.

8

without openly bragging about it. But the explanation is simple: if one discovers evidence of a crime, there is a civic obligation to report it.

Regarding the SEC, Paul relies on the existence of a whistleblower reward program to argue Findeisen cannot be a "real" journalist because he would stand to profit if the SEC successfully pursued a case against Paul. This logic is flawed. The SEC does not pay rewards unless the whistleblower's claims are true—or, to put it another way, borne out by the facts.[7] It is only upon a successful enforcement action that Findeisen could ever receive a penny. Findeisen's only "interest," therefore, was in being honest, truthful, and sticking to facts that would withstand the scrutiny of the justice system. Findeisen knew this and had a positive reputation as a whistleblower who puts together "very helpful and well done" reports. *See* ECF No. 102-13 (email from the SEC to Findeisen stating: "Personally, I have found your reports in the other matter very helpful and well done, and this [the CryptoZoo Whistleblower Report] appears to be from the same mold.").

All these activities— Findeisen's investigative journalism, Findeisen's unpaid work as a retained expert, and Findeisen's whistleblower status—are entirely consistent and undertaken in pursuit of the same objective: uncovering the truth and holding Paul accountable for the harm he caused his victims. Ex. 1 ¶ 7. Nothing about these activities calls into question Findeisen's legitimate claim to the journalist's privilege under the Texas Act.

## PRAYER

For these reasons, Findeisen respectfully requests that the Court deny Paul's Motion in its entirety and award Findeisen all other relief at law or in equity which they are entitled.

---

[7] The SEC is authorized to provide monetary awards to eligible individuals who come forward with high-quality original information that leads to an SEC enforcement action in which over $1 million in sanctions is ordered. 15 U.S.C. § 78a *et seq*.

Dated: January 23, 2026.

                        Respectfully submitted,

                        **DAVIS & SANTOS, PLLC**

                By:   */s/ Caroline Newman Small*
                        Jason M. Davis
                        Texas State Bar No. 00793592
                        Email: *jdavis@dslawpc.com*
                        Caroline Newman Small
                        Texas State Bar No. 24056037
                        Email: *csmall@dslawpc.com*
                        Rachel Garza
                        Texas State Bar No. 24125240
                        Email: *rgarza@dslawpc.com*
                        719 S. Flores Street
                        San Antonio, Texas 78204
                        Tel: (210) 853-5882
                        Fax: (210) 200-8395

                        ***Attorneys for Defendants Stephen Findeisen and Coffee Break Productions, LLC d/b/a Coffeezilla***

## **CERTIFICATE OF SERVICE**

      I certify that on January 23, 2026, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system and all counsel of record will receive an electronic copy via the Court's CM/ECF system.

                                                  */s/ Caroline Newman Small*
                                                  Caroline Newman Small