IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

SAN ANTONIO DIVISION

| | |
|---|---|
| LOGAN PAUL,<br><br>           *Plaintiff*,<br><br>v.<br><br>STEPHEN FINDEISEN AND COFFEE BREAK PRODUCTIONS LLC D/B/A COFFEEZILLA,<br><br>           *Defendants*. | Civil Action No. 5:24-cv-00717 |

**REPLY IN SUPPORT OF PLAINTIFF'S RENEWED MOTION AND MOTION FOR RECONSIDERATION OF PLAINTIFF LOGAN PAUL'S MOTION TO COMPEL PRODUCTION OF COMMUNICATIONS TO AND FROM HARRY BAGG AND/OR ED LESZCZYNSKI**

Resolution of Plaintiff's Motion to compel hinges on a single question: Are Defendants correct that the third-party document review the parties agreed to encompassed every type of actual malice evidence that Paul is entitled to? (*See* Resp. at 1 [Dkt. 168]) ("In a negotiated compromise, the parties agreed to a third-party review of all [of] Coffeezilla's privilege material to identify any evidence of actual malice.").) The answer is "no." Because this Court's previous denial of the instant Motion rested on the erroneous premise underpinning Defendants' Response, and because Paul's acute need for circumstantial evidence of actual malice outweighs any interests served by Defendants' invocation of Texas's qualified journalist's privilege, Paul's Motion should be granted.

**A. The third-party document review did not cover the documents that Paul is seeking in this Motion.**

Defendants agree that Paul can use circumstantial evidence to prove actual malice. (*See* Resp. at 8.) But they argue that the parties' joint memorandum governing the third-party document

1

review delineated all of the circumstantial evidence Paul is now seeking here. (*See id.* at 3-6.) The plain language of the memorandum belies Defendants' claim.

As Paul has demonstrated, the memorandum was carefully circumscribed to only cover "two specific types of materials": (1) "communications in which Findeisen was told that Paul had good-faith intentions with respect to the CrpytoZoo project"; and (2) documents "in which Findeisen expressed an understanding or belief that Paul had good-faith intentions vis a vis the CryptoZoo project." (*See* Mot. at 3; Dkt. 133-3 at 2.) The screenshots from the memorandum that Defendants rely on, (*see* Resp. at 4), only underscore this point, as they conclusively demonstrate that the review was confined to documents expressly bearing on "Paul's good-faith intentions, or lack of bad-faith intentions[.]" (*Id.*; Dkt. 133-3 at 2.) And the memorandum's "sum and substance" clause, (*see* Resp. at 5-6), was similarly limited to documents "convey[ing] … that there was a lack of bad faith … on the part of Paul" "in sum and substance." (Dkt. 133-3 at 3.) Defendants' expansive interpretation of the memorandum is thus wholly unsupported.

Defendants are on no firmer ground in complaining that the third-party document review was designed to resolve a previous motion to compel that Paul filed. (Resp. at 6-7.) The title of that motion, "Paul's Motion to Compel Production ***of Evidence Relevant to Plaintiff's Good Faith Intentions and Actions***," (*id.* at 3 (emphasis added)), says it all: Paul sought a discrete subset of documents relevant to the issue of actual malice—defined as the "Malice Evidence," (Dkt. 77 at 1)—and the parties tailored the third-party document review accordingly. Defendants are thus wrong to accuse Paul of wasting judicial resources because, according to them, the "point of the review was to provide a definitive answer regarding the existence of *any* malice evidence within the privileged corpus." (Resp. at 7 (emphasis added).) That was decidedly *not* the point of the review, and the parties' decision to resolve one area of disagreement without judicial intervention

furthered judicial economy without stripping Paul of the ability to seek additional evidence of actual malice that is necessary for him to prove his case.

Defendants' position is not only wrong, but would, if accepted, unduly prejudice Paul. Defendants do not dispute—nor could they—that evidence such as bias or "ill will" on the part of the defendant toward the plaintiff, *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 315 n.10 (5th Cir. 1995), and whether the defendant set out to publish with a "preconceived narrative," *Butowsky v. Folkenflik*, No. 4:18CV442, 2019 WL 2518833, at *44 (E.D. Tex. Apr. 17, 2019), is probative of actual malice. (*See* Mot. at 6-7). So if Defendants had a preexisting negative view of Paul that they communicated among the editorial team to slant their coverage of Paul in furtherance of that view, that would be powerful evidence of actual malice. Yet, despite the fact that the third-party document review plainly did not look for such evidence, Defendants maintain that Paul should be deprived of the opportunity to seek it. That makes no sense.

In sum, this Court should reject Defendants' anomalous suggestion that by agreeing to a third-party review for one specific type of actual malice, Paul forfeited his ability to seek any other malice evidence—evidence that the Court has recognized Paul needs. (*See* Ex. 1, Hearing Tr. (Sept. 11, 2025) [Dkt. 146] at 62:24-63:2 ("[M]alice and intent are going to be key, so he's got to get that evidence[.]").)

**B.     Paul was not required to identify new evidence in order to seek reconsideration of this Court's denial of his Motion without prejudice.**

Defendants contend that Paul needed to identify "new evidence" for the Court in order to obtain the relief that he seeks. (Resp. at 3.) They gloss over the fact that Paul's motion is both a renewed motion—since the denial of the motion to compel was "without prejudice," (Ex. 1, Hearing Tr. at 61:7-10)—and, alternatively, a "motion for reconsideration" "based on a mistake of fact." (Mot. at 1 n.1.) That is significant because "[u]nder Rule 54(b), the trial court is free to

3

reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017); *Rivas v. Greyhound Lines, Inc.*, No. EP-14-CV-166-DB, 2016 WL 11164796, at *9 (W.D. Tex. Jan. 11, 2016) (granting motion for court to reconsider sanctions order because the moving party "demonstrated that several of the Court's miscalculations made the total amount of sanctions unjust"); (*see* Ex. 1, Hearing Tr. at 60:25-61:3 (noting that request for reconsideration would be considered under Rule 54).)

Accordingly, new evidence is not a prerequisite for this Court to reconsider its denial of Paul's motion so long as there is a sufficient "basis" to do so. (*Id.* at 61:3-7.) Here, that basis is the fact that the Court's denial of Paul's Motion was predicated on its mistaken view that there was "some overlap between what the third-party reviewer was doing" and the materials that Paul is now seeking. (*Id.* at 38:14-18; *id.* at 60:17-19 (similar).) That error seeped into the Court's analysis of the applicability of the journalist's privilege, as the Court relied extensively on the fact that the third-party review occurred to conclude that Paul's communications with his editorial team were privileged, given that the parties "did not really argue a lot about the law [o]n this issue." (*Id.* at 60:2-4.) Because Paul has demonstrated that this reliance was misplaced, he did not need to identify new evidence in order for the Court to revisit the "unjust" result created by its previous denial of his Motion. *Rivas*, 2016 WL 11164796, at *9.

C. **The interests served by the statutory qualified privilege are not implicated by Paul's request for communications between Defendants and their editorial team.**

Defendants finally retreat back to the journalist's privilege, arguing that the communications Paul is seeking are privileged and his motion should be denied "for this reason alone." (Resp. at 10.) Paul has already articulated why his need for circumstantial evidence of actual malice trumps Defendants' assertion that their communications with their editorial team are

4

shielded. (*See* Dkt. 124 at 8-10.) Additionally, however, the core purpose animating that privilege is inapplicable here.

"Recogniz[ing] the important role sources and informants play in the news gathering and reporting process," Texas's statute codifying the journalist's privilege "protect[s] the relationship between reporters and confidential sources" to, like other "state's shield laws," "maintain the integrity of the news gathering process." *In re Daniel J. Edelman, Inc.*, No. 05-21-00085-CV, 2021 WL 837337, at *2 (Tex. Ct. App. Mar. 5, 2021) (Schenck, J., concurring in part). In enacting the statute, Texas recognized that "the ready disclosure of confidential sources would have a chilling, perhaps freezing effect on the free flow of truthful information" because "[s]ources who require anonymity" "would be afraid that their identity would be revealed, should a defamation suit be instituted." *Mize v. McGraw-Hill, Inc.*, 86 F.R.D. 1, 3 (S.D. Tex. 1980). Yet, that rationale does not support keeping "the editorial process" confidential as the "disclosure of the editorial process"—which is what Paul is seeking here—"aid[s] in the free flow of truthful information" "because editors would decide against publishing material they knew to be false, if they anticipated that their conversations concerning the material might be disclosed in the course of a lawsuit." *Id.*

Because Defendants do not claim that producing their editorial communications will force them to reveal sources, insulating those communications from disclosure would be inconsistent with the purpose of the qualified privilege, while hamstringing Paul's ability to prove a critical element of his case.

## **CONCLUSION**

Throughout this case, Defendants have utilized the statutory privilege to avoid producing any contemporaneous documents and communications reflecting on their reporting on Paul. Paul's Motion seeks only a small subset of those materials that are crucial to Paul's case and which would not be unduly burdensome for Defendants to produce. Paul's Motion should be granted.

5

| | |
|---|---|
| January 30, 2026 | */s/ Andrew C. Phillips*<br>Andrew C. Phillips (*Pro Hac Vice*)<br>Shannon B. Timmann (*Pro Hac Vice*)<br>MEIER WATKINS PHILLIPS PUSCH LLP<br>1120 20th St NW, Suite 550<br>Washington, DC 20036<br>(202) 318-3655<br>Email: andy.phillips@mwpp.com<br>Email: shannon.timmann@mwpp.com<br><br>Jeffrey A. Neiman (*Pro Hac Vice*)<br>Jason L. Mays (*Pro Hac Vice*)<br>NEIMAN MAYS FLOCH & ALMEIDA PLLC<br>100 SE 3rd Ave., Suite 805<br>Ft. Lauderdale, Florida 33394<br>Email: jneiman@nmfalawfirm.com<br>Email: jmays@nmfalawfirm.com<br><br>Ricardo Cedillo (Texas Bar No. 04043600)<br>DAVIS, CEDILLO & MENDOZA<br>755 E. Mulberry Ave., Ste. 250<br>San Antonio, TX 78212<br>(210) 822-6666<br>Email: rcedillo@lawdcm.com<br><br>*Counsel for Plaintiff Logan Paul* |

## **CERTIFICATE OF SERVICE**

I hereby certify that, on January 30, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record who are deemed to have consented to electronic service.

*/s/ Andrew C. Phillips*
