IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

SAN ANTONIO DIVISION

| | |
|---|---|
| LOGAN PAUL,<br><br>                          *Plaintiff*,<br><br>   v.<br><br>STEPHEN FINDEISEN AND COFFEE BREAK PRODUCTIONS LLC D/B/A COFFEEZILLA,<br><br>                          *Defendants*. | Civil Action No. 5:24-cv-00717 |

**REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO PRECLUDE DEFENDANTS' RELIANCE ON JOURNALIST'S PRIVILEGE**

If a social media influencer publishes material, not for its news value, but to antagonize a celebrity and profit from the attention the antagonism garners, is that person a journalist publishing "news or information" within the meaning of Texas's journalist's privilege statute? *See* Tex. Civ. Prac. & Rem. § 22.021(2). The answer is no, and Defendants' Opposition to Paul's Motion to Preclude Defendants' Reliance on Journalist's Privilege supplies no basis for concluding otherwise.

    **1.**    **There's no law-of-the-case issue here.**

In their Opposition, Defendants first fault Paul for "not even mention[ing] the law-of-the-case doctrine or attempt[ing] to apply its factors." [Dkt. 169 at 3.] But the law-of-the-case doctrine only applies to issues of fact or law **decided on appeal**. *Fuhrman v. Dretke*, 442 F.3d 893, 896 (5th Cir. 2006); *Loram Maintenance of Way, Inc. v. Ianni*, 210 S.W.3d 593, 596 (Tex. 2006). What Defendants probably mean to argue is that this Court has already held that they are journalists for purposes of Texas's journalist's privilege. [Dkt. 169 at 2-3.] Even if that were true (it's not), "A court has the power to revisit prior decisions of its own … in any circumstance." *Christanson v.*

*Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988); *see also Zarnow v. City of Wichita Falls*, 614 F.3d 161, 171 (5th Cir. 2010) ("the law-of-the-case doctrine does not operate to prevent a district court from reconsidering prior rulings"). Besides, this Court has never held that Defendants are journalists for purposes of Texas's statute. Neither docket entry Defendants cite for that proposition says otherwise. The Court's order denying Paul's first Motion to Compel Production of Communications to and from Harry Bagg and/or Ed Leszczynski, for example, never expressed any conclusion as to whether Defendants are journalists; it simply assumed the answer without deciding. [*See* Dkt. 143.] That was of course the correct approach because, as Defendants themselves acknowledged at the hearing on that motion, Paul didn't even raise the issue in that motion. *See* Ex. 1 [Dkt. 146 at 51:4-6.]

### 2. Defendants are confused about Paul's argument regarding statutory interpretation.

Defendants next charge Paul with trying to impermissibly rewrite Texas's journalist's privilege statute, since Paul "does not dispute that Findeisen meets the statutory definition" of a journalist. [Dkt. 169 at 3.] But Paul *does* dispute that Findeisen meets the statutory definition of a journalist; it's why he filed this Motion. As he has explained at length, Defendants do not meet the statutory definition of a journalist because they don't publish "news or information" as the statute uses those terms. [Dkt. 162 at 2.] The statute doesn't define "news or information," even though those terms are extraordinarily vague. This Court must therefore construe the terms using ordinary tools of construction, including the rules that statutes should not be construed to yield absurd results and that vague terms in a statute should be construed in light of the statute's broad context. *See Matter of Amberson*, 54 F.4th 240, 252 (5th Cir. 2022); *Paxton v. Tex. Health & Human Servs. Comm'n*, 550 S.W.3d 207, 211 (Tex. App. 2017).

Paul's Motion explains why, applying those tools, Defendants' maximalist reading of "news or information" is untenable. [Dkt. 162 at 2-3.] It would, for instance, transform social-media influencers, PR professionals, and Senator Ted Cruz into "journalists." [*Id.*] Defendants don't explain why their reading wouldn't compel that conclusion, even as they acknowledge it is an "absurd" result that no one would think is the law. [Dkt. 169 at 4 n.4.] But that acknowledgment gives away the game, because once one acknowledges the need for some implied limits on the scope of "news or information," it becomes necessary to specify a source for those limits. Paul's Motion explains why it's appropriate to consider well-established journalistic principles as a source of those limits. [Dkt. 162 at 3.] Defendants never propose an alternative.

### 3. Defendants misunderstand the significance of the journalistic principles described in Paul's Motion.

Paul's Motion highlights three established journalistic principles—impartiality, avoidance of conflicts, and not making oneself part of the news being reported. [*Id.* at 4-9.] Defendants insist Paul is wrong that any one of those three principles should be the test for whether the journalist's privilege applies. Again, though, that's not Paul's argument. His argument is that those three principles, taken together, suffice to show why Defendants can't fairly be said to be journalists in the business of providing "news or information." Rather than addressing that totality-of-circumstances argument, Defendants try picking at each principle in isolation. First, they cite *Abraham v. Greer*, 509 S.W.3d 609, 613 (Tex. App. 2016), for the proposition that bias "is not the test" of whether the journalist's privilege applies. [Dkt. 169 at 4.] But that doesn't make bias irrelevant. An assessment of bias is plainly relevant in determining whether the publisher published material for its public value as "news or information" or, instead, for some other reason—like personal antipathy toward the subject of the material. This consideration is part of what distinguishes a journalist from a public-relations consultant—both publish "information" (in the

3

term's broadest sense) for a living, but one does so with an unmistakable bias. [*See* Dkt. 162 at 2.] Defendants also assert that Findeisen isn't biased, just passionate about reporting and eager to help "Paul's victims." [Dkt. 169 at 4-5.] But other evidence—like Findeisen's profane language about Paul, his seeking a bounty for reporting Paul to the SEC, and his repeated attempts to make himself the basis for an FBI investigation into Paul—belies that self-serving narrative.

Defendants next try arguing that Findeisen's work as an expert in the class action lawsuit against Paul is irrelevant to whether the material he publishes about Paul qualifies as "news or information." They point out that Findeisen didn't formally step into an expert role until after publishing some of his false reports about Paul. [Dkt. 169 at 5-6.] But that's hardly dispositive. The decision in *Las Vegas Sun, Inc. v. Adelson*—holding that the **defendant's work as an expert precluded assertion of the journalist's privilege**—was based in part on the fact that the defendant accepted a job that was offered to him ***after*** (and apparently because of) the defamatory material he published. *See* 2021 WL 6621290, at *2 (D. Conn. Sept. 2, 2021). Same goes here.

Alternatively, Defendants contend that Findeisen's work as an expert adverse to Paul can't count against his status as a journalist because he is not being paid. [Dkt. 169 at 6-7.] But being able to tout oneself as an expert in high-profile litigation carries its own rewards. *E.g.*, Note, *Reliable Evaluation of Expert Testimony* 116 Harv. L. Rev. 2142, 2153 n.59 (2003) (describing "the aura of prestige surrounding an expert witness"). The fact that Findeisen isn't getting paid for his work on behalf of the class-action plaintiffs doesn't mean he derives no benefit from it. His work in the class action is thus best understood as evidence of a motive not to produce "news or information" for public benefit, but simply to profit (financially or reputationally) from attacking Paul.[1]

---

[1] Defendants accuse Paul of having "mischaracterized the testimony of Luciano Schipelliti" by writing that Schipelliti testified that it came as a "surprise" to him that Findeisen had been retained as an expert and that he believed Findeisen

Finally, Defendants assert that it is irrelevant whether they repeatedly tried to gin up federal charges against Paul and sought a reward for any penalty the Federal Government assessed against him. According to Defendants, there's nothing inconsistent about reporting on a subject and reporting the subject to law enforcement. [Dkt. 169 at 7-8.] That again misstates Paul's argument. It's not just that Defendants have reported Paul to law enforcement; it's that they did so, first, to prompt a federal investigation for which they could claim credit and on which they could report (and thereby further profit from association with Paul), and then to collect money in case their allegations led to a successful enforcement action. At every step, they were motivated, not by a desire to inform the public, but by a desire to profit from destroying Paul.

Instead of disputing that, Defendants assert that it's customary for journalists to seek "whistleblower" awards. As proof, they cite just one decision, *In re Sealed Case*, 152 F.4th 205 (D.C. Cir. 2025), which they say involved "an IRS whistleblower [who] 'worked as a journalist'" before being "awarded 30% of proceeds recovered by the Whistleblower Office." [Dkt. 169 at 8.] But Defendants misquote *Sealed Case* and thereby materially misstate its import. As the D.C. Circuit itself explained, *Sealed Case* wasn't about a whistleblower who worked *as* a journalist; it was about a whistleblower who "worked *with* a journalist," and it was the whistleblower, not the journalist, who received a whistleblower award. 152 F.4th at 209. *Sealed Case* provides no support for Defendants' contention that journalists regularly seek whistleblower awards.

Defendants also contend that Findeisen's repeated attempts to get the FBI to initiate an investigation of Paul do not show an improper motive because Findeisen didn't seek public credit for those efforts. [Dkt. 169 at 8-9.] That contention is perplexing. It's not clear why Findeisen would seek credit for an investigation that never got off the ground. The more reasonable approach

---

had been "dishonest" with him about that. [Dkt. 169 at 7.] Schipelliti in fact agreed to exactly those propositions at his deposition. [Dkt. 162-1 at 51:7-22.]

in those circumstances is exactly what Findeisen chose: staying quiet and refraining from claiming credit until there's an actual arrest or charge. So, it's far from "confound[ing]" that Findeisen didn't publicly tout his repeated (failed) efforts to get Paul arrested or charged. [Dkt. 169 at 8.]

That leaves Findeisen's efforts to get a whistleblower award from the SEC by reporting Paul. Findeisen doesn't deny seeking an award. In fact, he argues that his reporting on Paul was part of that effort—even though, again, the government ultimately rejected his entreaties. [Dkt. 169 at 9.] Crucially, Findeisen submitted his whistleblower complaint to the SEC—in which he sought a financial windfall should the government assess any fines against Paul—in secret on October 2022, months ***before*** he went public with his three-part YouTube series on Paul and CryptoZoo.[2] Findeisen's subsequent public denunciations of Paul as a scammer thus served as very public pressure on the SEC to bring an enforcement action against Paul, which would have greatly benefited Findeisen financially. Inarguably, Findeisen had an obvious, and undisclosed, financial stake in his "reporting" on Paul, which cannot be squared with fundamental precepts that journalists must avoid conflicts of interest, disclose unavoidable conflicts, and refuse any financial benefits that "may compromise integrity or impartiality."[3] Findeisen's secret and obvious financial incentive to harm Paul and negatively shade his "reporting" thus made him unlike an impartial "journalist" publishing "news and information" for the benefit of the public, and far more akin to a self-interested short seller disparaging a company in the hope that he will profit if its stock price falls. It would be a "nonsensical result[]" for the latter to be categorized as a "journalist" within the meaning of the Texas statute. *See Amberson*, 54 F.4th at 252.

## CONCLUSION

---

[2] Mot. at Ex. 5 (whistleblower complaint submitted on Oct. 23, 2022); "Investigating Logan Paul's Biggest Scam," YouTube.com (Dec. 16, 2022), https://www.youtube.com/watch?v=386p68_lDHA.
[3] *SPJ Code of Ethics*, Society of Professional Journalists, https://www.spj.org/spj-code-of-ethics/ (last accessed Jan. 30, 2026).

Findeisen's thesis is that everything he did is consistent with "uncovering the truth and holding Paul accountable for the harm he caused his victims." [Dkt. 169 at 9.] That simply isn't true. Persistently aiming profanities at Paul (something Findeisen completely ignores in the body of his brief), seeking a monetary reward for ginning up a government investigation, and obsessively attacking a particular individual with baseless claims of fraud is the sort of conduct one expects from an online influencer or attention farmer, not a journalist. Like Defendants, influencers and attention farmers publish information online. Sometimes the information is even about notable events. But that doesn't make the influencers or attention farmers "journalists" who can claim Texas's journalist's privilege. The reason the influencers aren't journalists is that the information they publish plainly isn't "news or information" of the sort any ordinary person would understand as journalism. The same is true of Defendants, which is why the Court should grant Paul's Motion.

January 30, 2026

/s/ *Andrew C. Phillips*
Andrew C. Phillips (*Pro Hac Vice*)
Shannon B. Timmann (*Pro Hac Vice*)
MEIER WATKINS PHILLIPS PUSCH LLP
1120 20th St NW, Suite 550
Washington, DC 20036
(202) 318-3655
Email: andy.phillips@mwpp.com
Email: shannon.timmann@mwpp.com

Jeffrey A. Neiman (*Pro Hac Vice*)
Jason L. Mays (*Pro Hac Vice*)
NEIMAN MAYS FLOCH & ALMEIDA PLLC
100 SE 3rd Ave., Suite 805
Ft. Lauderdale, Florida 33394
Email: jneiman@nmfalawfirm.com
Email: jmays@nmfalawfirm.com

Ricardo G. Cedillo (Texas Bar No. 04043600)

Davis, Cedillo & Mendoza, Inc.
755 E. Mulberry Ave., Ste. 250
San Antonio, TX 78212
(210) 822-6666
Email: rcedillo@lawdcm.com

*Counsel for Plaintiff Logan Paul*

## **CERTIFICATE OF SERVICE**

      I hereby certify that, on the 30th of January 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record who are deemed to have consented to electronic service.

      */s/ Andrew C. Phillips*