# Exhibit A

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

LOGAN PAUL,                    *
                               *
PLAINTIFF,                     *
                               *
VS.                            * CASE NO.: 5:24-CV-00717
                               *
STEPHEN FINDEISEN AND          *
COFFEE BREAK PRODUCTIONS,*
LLC D/B/A COFFEEZILLA,         *
                               *
DEFENDANTS.                    *

            *****************************************
                 ORAL AND VIDEOTAPED DEPOSITION OF
                        JAMES C. SPINDLER
                        FEBRUARY 13, 2026
                        (REPORTED REMOTELY)
            *****************************************

            ORAL AND VIDEOTAPED DEPOSITION OF JAMES C.
SPINDLER, produced as a witness at the instance of
the PLAINTIFF(S), and duly sworn, was taken in the
above-styled and numbered cause on FEBRUARY 13,
2026, from 8:04 A.M. to 2:49 P.M., before AMY
PRIGMORE, CSR, in and for the State of Texas,
reported by stenographic means, at the offices of
the WITNESS, Austin, Texas, pursuant to the Federal
Rules of Civil Procedure, and the provisions stated
on the record or attached hereto.

Page 2

A P P E A R A N C E S

FOR THE PLAINTIFF(S):
(REMOTELY)
      Jason L. Mays
      Christopher Joyce
      NEIMAN MAYS FLOCH & ALMEIDA, PLLC
      100 SE 3rd Avenue, Suite 805
      Fort Lauderdale FL 33394
      jmays@nmfalawfirm.com
      cjoyce@nmfalawfirm.com

      Andy Phillips
      MEIER WATKINS PHILLIPS PUSCH
      1120 20th Street NW, Suite 550
      Washington DC 20036
      andy.phillips@mwpp.com
      202-318-3655

FOR THE DEFENDANT(S):
(REMOTELY)
      Caroline Newman Small
      DAVIS & SANTOS
      719 S Flores Street
      San Antonio TX 78204
      csmall@dslawpc.com
      210-210-2100

ALSO PRESENT (REMOTELY):
      Don Harris, Videographer

Page 3

INDEX

PAGE

APPEARANCES .................................   2
STIPULATIONS ................................   1
SIGNATURE AND CHANGES .......................   227
REPORTER'S CERTIFICATE......................   229


E X A M I N A T I O N S

JAMES C. SPINDLER                           PAGE
EXAMINATION                                   5
BY MR. MAYS


E X H I B I T S

EXHIBIT          DESCRIPTION                PAGE
EXHIBIT 1        EXPERT REPORT OF JAMES        8
                 C. SPINDLER
EXHIBIT 2        AMENDED MATERIALS LIST       42
EXHIBIT 3        EXPERT REPORT OF CHRIS       109
                 DAVIS
EXHIBIT 4        WHITE PAPER, BEGINNING       114
                 BATES LABEL D 050971
EXHIBIT 5        NOTES, BEGINNING BATES       139
                 LABEL D 004049

So this would apply regardless of the securities status.

As to the 10b5, you know, 10b5 has its own particular elements. I haven't -- you know, it's some -- it's a issue I've written on in my professional research. It's not something I've included in my report, so I'm not really talking about the elements of 10b5 here.

Q. As you defined manipulative trading activity, when you say that the CryptoZoo founders engaged in -- in that activity, is that conduct -- does that conduct constitute securities fraud, in your opinion?

A. This conduct, I'm not offering that opinion. I'm saying that it is designed to manipulate. It would certainly -- it appears to be -- it appears to be intended to be -- to manipulate the price. That definitely can lead to legal liability of various sorts.

Q. You say here in the -- in -- in the second sentence, this first paragraph on page 8 of your report: As also discussed above, Paul and the CryptoZoo insiders discussed ways in which to trade and to coordinate their trading in order to profit from their $ZOO token holdings and to conceal their

Page 213

the portions you selected:  The participants actually utilized this terminology in the exchange studied above.

Right?

A.  I guess they're pump-and-dump experts.

Q.  Well, you -- you -- you -- you say that they talk about the fact that they're engaging in a pump and dump, is what you claim here.

So I guess I'm trying to understand what expertise is required to interpret it as you have done, if you're saying that they -- they're saying what they did?

MS. SMALL:  Objection; form.

A.  Well, if somebody says the term, pump and dump, and you're -- you're a layman on a jury that has no experience with financial markets whatsoever, I'm not sure you would understand what a pump and dump is.  And I don't know that you would understand the mechanics of how it's supposed to work or the markets in which these things are known to be, you know, predatory, right.

What markets are -- are susceptible to this?  Why would you do this on something like $FUCKELON or SFI, as opposed to -- why wouldn't you try and do it on, you know, IBM, right.  Like, so

Page 215

And that's -- I think that is a -- I think that is the reasonable interpretation to draw from the set of text messages.

Q.   After $FUCKELON, you discuss SFI and you say:  Additionally, I have reviewed a text chain in which Paul appears to have participated in a pump-and-dump scheme targeting Saffron Finance, referred to as SFI.

Same question as with the "F" Elon stuff. How did you bring your expertise to bear on interpreting the message that you've excerpted here?

A.   Well, much of the same answer is that if you are a layperson that does not understand how financial markets work and you've never heard of a -- you don't understand what a pump and dump is, which I think is possibly a lot of Americans, then you would find this -- you would find my expertise helpful.

So, again, I think to say that there's nothing -- nothing involved in understanding this is pretty clearly incorrect.  It requires an understanding of how markets work, how a thinly traded security, or thinly traded token, like SFI would be susceptible to this type of thing, just

Page 216

like this is why these things occur in penny stocks, and the -- the -- the mechanics of it as well.

Q.   Did you assess Mr. Paul's trading history with either of these tokens?

A.   I did see, again, in those demonstratives, I know there was data about his buy-in and then his subsequent sales.

Q.   Okay.  You mentioned that a -- a pump and dump involves -- I think -- I think I wrote this down correctly, dumping the stock after it's been pumped in order to make a profit.

Is that right?

A.   Correct.

Q.   Does that -- am I reading it correctly that that suggests that the person who was engaging in the pump and dump actually sold and made a profit?

Am I -- is that -- is that a true statement?

A.   So I'm sorry.  Could you -- could you repeat that?  I didn't quite understand.

Q.   In order to engage in a pump and dump, you actually have to dump and make a profit?

A.   Well, you could screw it up, right.  It

Page 229

COUNTY OF HARRIS

STATE OF TEXAS


REPORTER'S CERTIFICATE


I, AMY PRIGMORE, Certified Shorthand Reporter in and for the State of Texas, hereby certify that this transcript is a true record of the testimony given remotely by the witness named herein, after said witness was duly sworn remotely by me.

I further certify that the deposition transcript was submitted on _____, _____ to the witness or to the attorney for the witness for examination, signature, and return to me by _____, _____.

I further certify the amount of time used by each party at the deposition is as follows:

Jason L. Mays - (05h28m)

Caroline Newman Small - (00h00m)


I further certify that I am neither attorney nor counsel for, related to, nor employed by any of the parties to the action in which this testimony was taken.  Further, I am not a relative or employee of any attorney of record in this

Page 230

cause, nor do I have a financial interest in the action.

SUBSCRIBED AND SWORN TO by the undersigned on this the ____ day of _____, _____.

AMY PRIGMORE, Texas, CSR, RPR

Expiration Date:  4/30/2027

Firm Registration: 571

Veritext Legal Solutions

300 Throckmorton Street, Suite 1600

Fort Worth, Texas 76102

Phone. 817-336-3042