**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**

**SAN ANTONIO DIVISION**

LOGAN PAUL,

                            *Plaintiff,*

    v.

STEPHEN FINDEISEN AND COFFEE BREAK
PRODUCTIONS LLC D/B/A COFFEEZILLA,

                          *Defendants.*

Civil Action No. 5:24-cv-00717

## PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO EXCLUDE TESTIMONY OF JAMES C. SPINDLER

This case concerns allegations that Plaintiff Logan Paul "scammed" investors with his CryptoZoo project—"in other words, that [he] committed fraud." [Dkt. 74 at 11; Dkt. 106 at 2.] Defendants have set out to prove that Paul did, in fact, commit fraud—securities fraud, in particular. That is why they have offered securities-law Professor James Spindler as an expert: to tell jurors, in the guise of an expert opinion, that Paul violated federal securities laws and thus perpetrated precisely the type of "scam" Defendants alleged (the "Securities-Fraud Defense"). This notwithstanding that the Securities and Exchange Commission declined to take any enforcement action against Paul relating to CryptoZoo and that the SEC recently affirmed that the types of NFTs and tokens associated with CryptoZoo are not, in fact, securities.[1]

As Paul previously explained, Professor Spindler's testimony must be excluded because it (1) impermissibly offers legal conclusions, (2) opines on facts within the jury's common

---

[1] *See* 17 CFR 231, 234, "Application of the Federal Securities Laws to Certain Types of Crypto Assets and Certain Transactions Involving Crypto Assets," (Mar. 23, 2026) at 9-20.

1

understanding, and (3) ventures opinions that do not draw on his specialized knowledge. [Dkt. 172.] Defendants' Opposition barely addresses the second reason for excluding Professor Spindler's testimony and completely ignores the third. Instead, the bulk of the Opposition contends that there is nothing wrong with Professor Spindler offering legal conclusions. But established Fifth Circuit precedent refutes that contention. [Dkt. 172 at 2 & n.3 (collecting cases).] So do Defendants' own authorities. Simply put, the flawed rationales Defendants offer for allowing Professor Spindler's testimony are unsupported and unsupportable.

### *Flawed Rationale No. 1*

#### *"Coffeezilla is entitled to put on evidence, including expert testimony, negating falsity and in support of his defenses of truth and substantial truth."*

Defendants' first argument in their Opposition is that "Paul invites the Court to chip away at Coffeezilla's evidence of his defenses." [Dkt. 177 at 4.] In a word: Yes, at least insofar as Defendants' proffered evidence runs afoul of well-established evidentiary rules. That is the point of evidentiary rules: to circumscribe how parties can make their cases.

Defendants themselves acknowledge "the general rule" that "experts cannot offer conclusions of law." [Dkt 177 at 4.] That rule may well "chip away" at Defendants' ability to present defenses exactly as they would like, but that is no excuse or justification for ignoring it. If Defendants want to prove the truth of their allegations, they can do so in a way that comports with federal evidentiary rules, just like every other defamation defendant in federal courts across the country.

### *Flawed Rationale No. 2*

#### *Spindler should be allowed to testify because he would not "merely instruct the jury what result to reach."*

Defendants also assert that:

2

> "The policy behind the rule prohibiting expert witnesses from rendering conclusions of law is 'because doing so usurps the role of the trial judge in instructing the jury on the law.' Where this concern is not at play, and where the expert is not 'merely instruct[ing] the jury what result to reach,' the rule does not apply."

[Dkt. 177 at 3; *see also id.* at 5 (same point).] The rule set out in the second sentence of that assertion is made up. Indeed, Paul is unaware of any case anywhere in which a court has held that the prohibition on expert witnesses rendering legal conclusions applies only if the expert instructs the jury on what result to reach. Not only do Defendants' authorities not support that proposition, but they also expressly adopt and apply exactly the rule Defendants seek to evade.

- In *Southwest Airlines Co. v. Liberty Insurance Underwriters Inc.*, No. 3:19-CV-2218-E, 2025 WL 3456286, at *2 (N.D. Tex. Dec. 2, 2024), the Court stated that "neither Rule 702 nor Rule 704 permits an expert witness to offer legal conclusions."

- In *#1 Fan Co. v. Pepco Licensed Products, Inc.*, No. SA-09-CA-1029-FB, 2011 WL 13269153, at *5 (W.D. Tex. Apr. 8, 2011), the Court observed that, "To the extent [the expert] offers a legal opinion on the applicable law, it is true that such opinion is inadmissible."

- In *McGowan v. Southern Methodist University*, No. 3:18-CV-00141-N, 2024 WL 946954, at *5 (N.D. Tex. Mar. 4, 2024), the court explained that the expert would not "be permitted to testify to the legal requirements of Title IX or render legal conclusions at trial."

- And in *America Can! v. Arch Insurance Co.*, 597 F. Supp. 3d 1038, 1046 (N.D. Tex. 2022)—the only decision Defendants cite in arguing that an expert may testify about the law if he refrains "from telling the jury 'how its verdict should read'" [Dkt. 177 at 5]—the court clearly stated that:

> [Experts] may never render conclusions of law. This is because our legal system reserves to the trial judge the role of deciding the law for the benefit of the jury. Allowing an expert to give his opinion on the legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant.

Defendants claimed loophole to the prohibition on experts testifying about legal conclusions—that an expert can do so as long as he does not tell the jury it should agree with him—is a self-serving fabrication. No Fifth Circuit case law supports it, and that includes the very authorities Defendants rely upon in their Opposition.

### *Flawed Rationale No. 3*

### *Professor Spindler's testimony would not "invade the court's province" because the jury "will not be asked … whether Paul committed securities fraud."*

Defendants' most baffling contention is that "the jury will not be asked whether CryptoZoo was a security, whether Paul committed securities fraud, or whether Paul manipulated the market. Instead the jury will be asked whether the statements made were false at the time they were made." [Dkt. 177 at 6.] One reason that argument surprises is that Defendants are the ones proffering a securities-law expert at trial. If the jury will not be asked anything about securities law (as Defendants insist), then Professor Spindler's opinion's—about whether CryptoZoo products constitute securities and about whether Paul committed securities fraud and manipulated securities markets—are irrelevant and thus fail the helpfulness requirement of Rule 702(a).

The truth, as Defendants well know, is that the entire purpose of their Securities-Fraud Defense is to make Paul's compliance with federal securities laws a potentially dispositive issue in this case. Defendants want the jury to apply federal securities laws to conclude that Paul perpetrated a "scam." But the law could not be clearer: Only a court may instruct a jury on the applicable law; experts are categorically forbidden from doing so. *See Goodman v. Harris Cnty.*, 571 F.3d 388, 399 (5th Cir. 2009) ("an expert may never render conclusions of law"); *Roundout*

*Valley Cent. Sch. Dist. v. Coneco Corp.*, 321 F. Supp. 2d 469, 480 (N.D.N.Y. 2004) ("to make it abundantly clear [], it is axiomatic that an expert is not permitted to provide legal opinions, legal conclusions, or interpret legal terms; those roles fall solely within the province of the court").

Contra Defendants [Dkt. 177 at 5-7], it makes absolutely no difference that this is a defamation case rather than a securities case. To the extent the jury may be invited to apply federal securities laws to reach a verdict—which, again, is precisely the point of Defendants' Securities-Fraud Defense—only the Court may instruct the jury about the law it should apply. The decision in *DiBella v. Hopkins*, 403 F.3d 102 (2d Cir. 2005), illustrates the point. In *DiBella*, the plaintiff sued for libel after the defendant accused him of bribery. The defendant argued that the charge was true because the plaintiff had committed the crime of extortion, which is a type of bribery. The defendant proffered an expert to opine that DiBella's actions met the legal standard for extortion, but the district court (and then the Second Circuit) refused to allow the expert to testify, on the ground that he "inappropriately drew a legal conclusion by opining that [the plaintiff's] actions amounted to extortion."

The exact same principle applies here. If Defendants believe the jury may need to apply federal securities law to decide this case, the proper course is for them to propose a jury instruction on the subject at the appropriate time (recognizing that Defendants and the Court will have to grapple with the fact that the agency tasked with oversight of securities has definitely concluded that the type of offerings associated with CryptoZoo were not securities). What Defendants ***may not do*** is attempt to utilize a paid expert to (inaccurately) tell the jury what the law is and how they should apply it.

### *Flawed Rationale No. 4*

### *Law professors can permissibly opine about the Howey Test.*

Defendants next argue that part of Professor Spindler's report concerns the *Howey* test, and that, because "[t]he *Howey* test is a mixed question of law and fact," it is "appropriate for experts to opine on." [Dkt. 177 at 6-7.] Here, too, though, Defendants' argument runs headlong into their own caselaw.

Defendants cite several cases for the proposition that "courts routinely rely on experts in analyzing the *Howey* test." None of those cases involved an expert being allowed to testify about the *Howey* test, though. For example, the expert report in *SEC v. Grybiak*, No. 1:20-cv-327, 2024 WL 4287222 (E.D.N.Y. Sept. 24, 2024), did not so much as mention, let alone purport to apply, the *Howey* test. *See id.*, Dkt. 54-10, Expert Report of Patrick B. Doody (Mar. 22, 2022). That report—by a forensic data analyst, not a law professor—was limited to highly technical questions of fact regarding market conditions, fundamentals of digital asset trading technology and platforms, and the manner in which a particular cryptocurrency coin had been developed and promoted. *Id.* at 2-3. Similarly, the report Defendants cite from *SEC v. Terraform Labs Pte. Ltd.*, 708 F. Supp. 3d 450, 463, 473 (S.D.N.Y. 2023), was also not about the *Howey* test. Rather, it was a technical analysis, by an economics professor, calculating the price impact of specific securities trades using an established scholarly method. *Id.* at 473. In both cases, the courts cited the relevant expert reports for the facts the reports established, not as any sort of guide about how the *Howey* test should be applied to already-established facts.

The same holds for every case that Defendants cite to show that "courts routinely rely on experts in analyzing the *Howey* test." In one after the other, it turns out that the expert reports at issue said nothing about the *Howey* test or how it ought to apply. So those cases do not support Defendants' contention that experts may testify about how to apply the *Howey* test. By contrast, there are reams of cases rejecting expert reports about how to apply the *Howey* test, precisely

because such testimony is "improperly legal in nature." *In re Ripple Labs, Inc. Litig.*, No.18-cv-06753-PJH, 2024 WL 4583525, at *8 (N.D. Cal. Oct. 24, 2024); *see also, e.g.*, *Anderson v. Boyne USA, Inc.*, No. CV 21-95-BU-BMM, 2025 WL 1475529, at *3 (D. Mont. Feb. 11, 2025) ("Mirkin walks through the application of the *Howey* test concerning Plaintiff's claims. Such a determination constitutes a legal issue for the Court."). The caselaw is clear, therefore, that Professor Spindler's opinion purporting to instruct this Court and the jury on how to apply the *Howey* test must be excluded.

### *Flawed Rationale No. 5*

### *Courts "routinely permit experts to explain complex legal issues or regulatory schemes to a jury."*

Elsewhere in their Opposition, Defendants assert that "[t]he concepts underlying this case are complex and need expert explanation." [Dkt. 177 at 3, 7-8.] To that end, they tell the Court that "experts routinely testify regarding market manipulation schemes, cryptocurrency, and blockchain technology." [Dkt. 177 at 8.] Defendants omit mentioning, however, that the experts in the cases they reference were obviously and materially different from Professor Spindler.

Professor Spindler's testimony is limited to declaring what he thinks the law is and then how the law should be applied to facts he has already been given. The reports in the cases Defendants cite, by contrast, all involved technical experts whose testimony introduced new facts about things like the mechanics of cryptocurrency transactions, the ways market participants typically react to specific signals, and the forensic data behind a stolen bitcoin. *See BP Am., Inc. v. FERC*, 52 F.4th 204, 220 (5th Cir. 2022) (testimony about market participants' customary reactions); *SEC v. Balina*, No. 1-22-CV-00950-DEA, 2023 WL 8040767, at *3-*5 (W.D. Tex. Nov. 20, 2023) (mechanics of cryptocurrency transactions); *Ramirez v. Def. "1"*, No. 25-cv-

01576, 2025 WL 3567183, at *1-2 (E.D. La. Aug. 28, 2025) (forensic data analysis of stolen bitcoin).

Defendants may wish they had retained such a technical expert, but instead they retained a law professor who is decidedly not an expert in the technical aspects of cryptocurrency and blockchain technology. And Defendants' own cases do not contain a single instance of a law professor like Professor Spindler being allowed to testify about the scope of potentially applicable law and how that law might operate on the facts of a given case. To the extent that federal securities law is intricate and full of "complex legal issues" that would benefit from presentation by an expert in the law, each courtroom already comes equipped with a legal expert, called a judge. *Burkhart v. Washington Metro. Area Trans. Auth.*, 112 F.3d 1207, 1213 (D.C. Cir. 1997). Defendants do not get to have their expert supplant the Court just because they believe that potentially applicable law may be complex.

### *Flawed Rationale No. 6*

### *Paul's conduct and statements in this litigation show why Professor Spindler's testimony should be admitted.*

Near the end of their Opposition, Defendants twice try pointing at Paul to justify admitting Professor Spindler's testimony. Neither attempt withstands even cursory inspection.

First, Defendants note that Paul has retained an expert on cryptocurrency offerings to testify about the mechanics of Paul's CryptoZoo buyback program, and also to testify that such buyback programs are, in practice, exceedingly rare. [Dkt. 177 at 8-9.] Defendants seem to think— or at least want the Court to think—that, because Paul has retained an expert to offer *admissible* expert testimony on industry patterns (a classic subject of expert testimony), that somehow justifies Defendants' offering *inadmissible* expert testimony on the meaning and application of federal

securities laws. [Dkt. 177 at 9.] But they cite no caselaw to support that position, because no such caselaw exists.

Defendants' other argument about Paul is not even an argument; it is merely an observation that "Paul himself has acknowledged—multiple times in this proceeding—that even he is not sophisticated enough to understand crypto." [Dkt. 177 at 9.] But Paul's acknowledgments have all concerned the technical aspects of cryptocurrencies, about which Professor Spindler's report says nothing. Paul's acknowledgment of his lack of technical expertise does not establish any need for Professor Spindler's testimony on a materially different topic.

### *Flawed Rationale No. 7*

### *The fact that Professor Spindler's report is replete with impermissible legal conclusions is not a basis for excluding all of Professor Spindler's testimony.*

In a last-ditch attempt to salvage something from Professor Spindler's testimony, Defendants argue that the Court should merely limit, not exclude, the testimony, on the premise that "[t]he presence of impermissible legal conclusions in an expert's report is not a sufficient basis to strike the entirety of his testimony." [Dkt. 177 at 9.] That premise is true so far as it goes, but it doesn't justify letting Professor Spindler testify, for at least two reasons.

First, Professor Spindler's report doesn't just contain the occasional legal conclusion; it's shot through with them. The report contains so many legal conclusions that Defendants don't even bother addressing most of the ones Plaintiff specifically addressed in his opening brief. *See United States v. Reagan*, 596 F.3d 251, 254-55 (5th Cir. 2010) ("failure to brief an argument in the district court waives that argument in that court"). Indeed, nearly every section heading in the report states a legal conclusion, although Defendants assiduously omit mentioning them. [*E.g.*, Dkt. 172-1 at 2 ("The Crypto Zoo offering by Paul and others constituted an illegal offering of unregistered securities"); *id.* at 4 ("The Crypto Zoo tokens are securities, which Paul offered to the public in

violation of U.S. securities law"); *id.* at 7 ("Conversations between Paul and other CryptZoo insiders indicate manipulative trading activity"); *id.* at 11 ("Paul's offer of rescission would not obviate his misdeeds or potential legal exposure").] This is not a case, then, where the Court can simply cross out one or two points in a lengthy expert report. Professor Spindler's entire report rests on legal conclusions and so all of his testimony must be excluded.

A second problem is that Professor Spindler's testimony is inadmissible for reasons besides the fact that his report is suffused with legal conclusions. His second and third opinions, for example, have no basis in his purported expertise, concern facts clearly within the jury's common knowledge, and impermissibly speculate about Paul's state of mind, including what he supposedly knew, intended, or planned. [Dkt. 172 at 5-8.] And Professor Spindler's fourth opinion is inadmissible, not just because it states a pure legal conclusion, but because it simply rehashes evidence and then argues about what the evidence shows, all without any meaningful reliance on Professor Spindler's purported expertise. [Dkt. 172 at 8-9.] Because Defendants never address any of Paul's arguments along any of those lines, they have forfeited the issues, which is an independent basis for excluding the underlying opinions. *See Reagan*, 596 F.3d at 254-55; *Heath v. TFS Dining, LLC*, No. A-20-CV-00890, 2022 WL 827654, at *7 (W.D. Tex. Mar. 18, 2022).

## CONCLUSION

The Court should exclude the entirety of Professor Spindler's testimony.

April 3, 2026

*/s/ Andrew C. Phillips*
Andrew C. Phillips (*Pro Hac Vice*)
Mark Thomson (*Pro Hac Vice*)
Shannon B. Timmann (*Pro Hac Vice*)
MEIER WATKINS PHILLIPS PUSCH LLP
1120 20th Street NW, Suite 550
Washington, DC 20036
(202) 318-3655
Email: andy.phillips@mwpp.com

10

Email: shannon.timmann@mwpp.com

Jeffrey A. Neiman (*Pro Hac Vice*)
Jason L. Mays (*Pro Hac Vice*)
NEIMAN MAYS FLOCH & ALMEIDA PLLC
100 SE 3rd Ave., Suite 805
Ft. Lauderdale, Florida 33394
Email: jneiman@nmfalawfirm.com
Email: jmays@nmfalawfirm.com

Ricardo G. Cedillo (Texas Bar No. 04043600)
DAVIS, CEDILLO & MENDOZA, INC.
755 E. Mulberry Ave., Ste. 250
San Antonio, TX 78212
(210) 822-6666
Email: rcedillo@lawdcm.com

*Counsel for Plaintiff Logan Paul*

**CERTIFICATE OF SERVICE**

I hereby certify that, on April 3, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record who are deemed to have consented to electronic service.

*/s/ Andrew C. Phillips*